**F I L E D**
CLERK, U.S. DISTRICT COURT

08/07/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ IGU _____ DEPUTY

PAID

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTY BUTTON AND MITCHELL TAYLOR BUTTON | Case No:   8:24-cv-01730-JVS-DFMx |
| PLAINTIFFS, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| V. | |
| MICAH HUMPHRIES, MICHAEL HUMPHRIES, KATHRYNE MEYER AND HANNAH STOLROW | |
| DEFENDANTS. | |

Plaintiffs Dusty Button and Mitchell Taylor Button file this Complaint and sue Defendants Michael Humphries, Micah Humphries, Kathryne Meyer and Hannah Stolrow and allege as follows:

1
COMPLAINT AND DEMAND FOR JURY TRIAL

## STATEMENTS OF FACTS

1. "*It's me. I don't know what to do. **Need help**. I have been put in therapy. Its crazy.*" **– May 28th, 2017.**

2. "*It's just an interesting phenomenon when **the people around you try to convince you** to not be in love.*" **– June 30th, 2017.**

3. "*Tay**, my parents are freaking out**. They heard my song and immediately jumped to the conclusion we have been communicating. They want to take away everything from me again. **I am distraught**. **They cannot take away my feelings for you and dusty**, so just always know that. This is the worst day, after the best day of my life. Somehow **my parents know exactly how to crush anything I build up. I am not a child, and ultimately I will do what I want**.*" **– July 7th, 2017.**

4. "***Come get me**. Save me.*" **– July 8th, 2017.**

5. "*I am the girl who **is in trouble for loving people***." **– July 8th, 2017.**

6. "***My parents** wanted me to call you today and end our relationship. They are not going to pay for my flight to Boston unless I do that so I'm warning you now because **you know what I want**. I may have to leave a fake voicemail on your phone. Is that ok with you? Because **it will work** and **we can be together once I'm back**. **I just need to make them think I'm ending it**. [...] It will be a call from my phone, let it go to voicemail. **Don't believe a word I say. Delete it**.*" **– July 10th, 2017.**

COMPLAINT AND DEMAND FOR JURY TRIAL

7.  "***I want you and dusty***. *This might be my only chance I get to warn you so I had
    to take it.* ***They just need confirmation so I can leave****. [...]* ***They want me out of
    the threesome****.*" – **July 10th, 2017**.

8.  "*I had to go to therapy. They had me talk to this lawyer and I got really upset and
    left.*" – **July 14th, 2017.**

9.  Those are the words written to Plaintiffs by Sage Humphries, daughter of
    Defendants Micah and Michael Humphries (together, "The Humphries"), client of
    Defendant and therapist Kathryne Meyer and, best friend of Defendant Hannah
    Stolrow, in the summer of 2017.

10. At nineteen years and six months of age, Sage Humphries was in an open
    consensual dating relationship ("the relationship") with Plaintiffs, from the
    approximate dates of April 16th, 2017 until July 18th, 2017.

11. From the 25th of May, 2017 until July 18th, 2017, the relationship with Sage
    Humphries was through various forms of electronic communications including
    Snapchat and text messages as she used her younger brother's cell phone after
    Defendants Micah and Michael Humphries, literally and admittedly[1], forcibly
    kidnapped their own daughter from Massachusetts and trafficked her back to
    California against her will, stealing her driver's license, cell phone, bank funds
    and car keys to imprison her in their home in Los Alamitos, California as they
    forced her into exorcisms and therapy against her will.

---

[1] https://www.bostonmagazine.com/news/2022/08/02/ballet-scandal-boston/

COMPLAINT AND DEMAND FOR JURY TRIAL

12. The Humphries made up false and harrowing stories about Plaintiffs to convince

their daughter of a narrative which would convert her to realign her views with

their own and ultimately, though unbelievably so, succumb to her parents

'ultimatum to regain her freedom; "*to either end the relationship or [...], continue*

*with it and risk [her] job, family friends, everything that [she] ever knew*".

13. The events described herein have taken place from the summer of 2017 until now

and show the strategic manipulation the Humphries, Kathryne Meyer, Hannah

Stolrow and the adult daughter of The Humphries, Sage, as they conspired to

create a heinous and preposterous story of abuse as the Humphries forced their

daughter's hand in acquiescing the false narrative for her own personal gain,

using Plaintiffs as scapegoats and destroying everything they have ever worked

for.

14. Plaintiffs have been tortured by the Humphries for over seven years.

15. The Humphries have filed over seven false police reports against Plaintiffs, (all of

which were unfounded and/or dismissed by law enforcement and the District

Attorney of Somerville, MA), whom Plaintiffs have contacted on their own merit,

including by subpoenaing each department for documents which were otherwise

withheld by Defendants and Sage Humphries to conspire and defraud law

enforcement and other federal agencies to preserve their false narrative against

Plaintiffs.

COMPLAINT AND DEMAND FOR JURY TRIAL

16. Defendants have continuously and egregiously contacted every business affiliate and employer of Plaintiffs from 2017 until now, resulting in Plaintiffs' loss of reputation, careers and any and all business for the foreseeable future, rendering them unemployed and unable to work due to public ridicule, defamation and the public media harassment and bullying campaign waged against them for over seven years.

17. This case is about the relationship between Sage Humphries and Plaintiffs which began with Sage Humphries infiltrating Plaintiffs marriage in 2017, but which developed into a conspiracy by the Humphries to force their daughter out of that relationship but which would, (four years later), be used as the catalyst for Sage Humphries to file a one hundred and thirty million dollar lawsuit against Plaintiffs to cover up her illegal prostitution with billionaire Daryl Katz, (owner of the NHL team, the Edmonton Oilers), as the only evidence of her sexual proclivities with Mr. Katz was in Plaintiffs' hands which she uploaded onto their computer four years prior.

18. This case is about two parents who calculated a plan and scouted Plaintiffs, who were at the peak of their careers, and used them to gain an advantage for their adult daughter in her own career as they had done so many times before with others only this time, their daughter strayed from their plan and began to have her own views; views which did not align with their own.

19. While Plaintiffs admit that the relationship with Sage Humphries was unorthodox and unconventional, there was no such abuse of any kind toward Sage during the course of their relationship which is the false narrative the Humphries created and spread to millions of people until the Humphries' false and defamatory story of abuse was on the cover of the New York Times, on July 28th, 2021.

20. Plaintiffs admit they should have never allowed Sage Humphries to infiltrate their marriage, as they live a conservative lifestyle and have never had an open relationship or otherwise, prior to or after Sage Humphries and never would do so again however; the culmination of the events described herein certainly do not justify the harassment, defamation, threat and abuse Plaintiffs have received over the years due to Defendants' conduct and hatred for the relationship their daughter was in or their failure to retrieve data that incriminates them in assisting the prostitution of their own daughter for personal gain; in fact, the events described herein only prove that the Humphries, including their daughter, should be in jail for the crimes they have committed against Plaintiffs.

21. The allegations described further herein, **prove** beyond a reasonable doubt that the Humphries' pattern was part a of a much larger scheme; a path of complete destruction that included leading millions of people to believe Plaintiffs had committed crimes of abuse against children, were dangerous people and were going to prison… none of which were ever true however; in the eras of Me Too, cancel culture and lack of fact-checking, Plaintiffs livelihoods and careers were

COMPLAINT AND DEMAND FOR JURY TRIAL

completely disseminated, leaving them to defend themselves against anyone and everyone who learned of this fictitious story of abuse.

22. As explained further herein, the Humphries colluded, conspired and coerced others to join their efforts in further destruction of Plaintiffs' lives, as five others, (including a mentally unstable woman Plaintiffs have never met, conspired and joined forces with Sage Humphries to file vexatious, **civil** lawsuits against Plaintiffs in the District Court of Nevada, which Plaintiffs have now been involved in for over three years and which is pending their motion to dismiss and counterclaim.

23. The plot created by the women against Plaintiffs was perfectly initiated, planned and executed by the Humphries, represented by one of the most powerful law firms in the US, Boies Schiller & Flexner, and their famed attorney, Sigrid McCawley, who represented none other than Virginia Giuffre in the Epstein case.

24. Ms. McCawley[2], in collaboration with the Humphries was far too eager to spread this false and defamatory narrative to every media outlet she could control convoluting the litigation in Nevada with mass media attention as she compared Plaintiffs to the disgraceful couple, Epstein and Maxwell however; she later discovered the catalyst to the narrative the Humphries led her to believe, was entirely and utterly false.

---

[2] Plaintiffs have filed suit against Ms. McCawley in the Southern District Court of Florida for defamation regarding statements made to the media about Plaintiffs which were not privileged – case 0:24-cv-60911-DSL.

COMPLAINT AND DEMAND FOR JURY TRIAL

25. This case is about the *egregious* criminal acts which were and are continuously being committed by Defendants Michael and Micah Humphries, Kathryne Meyer and Hannah Stolrow whereas, Defendants have *knowingly* and *intentionally* lied to law enforcement including by filing false police reports about Plaintiffs to *over seven different police departments*, all of whom Plaintiffs have been in contact as Plaintiffs continue to work with law enforcement seeking the proper consequences against them.

26. Defendants have *knowingly* and *intentionally* concealed fraud to obtain an abuse prevention order under false pretenses against Plaintiffs, assisting their **adult** daughter **who has since admitted**, (seven years later), that the abuse prevention order was not even written by her as she was forced only to sign it, verifying precisely what she told Plaintiffs would occur in the summer of 2017, and that the written abuse prevention order is not her handwriting.

27. Defendant Kathryne Meyer assisted the Humphries in concealing fraud against Plaintiffs, conspired with Sage Humphries against her parents and later while knowing the false, defamatory and egregious allegations made by the Humphries were false, colluded with them to withhold information on multiple occasions regarding the fraud committed.

28. Defendants fabricated allegations of sexual assault against Plaintiffs Dusty and Taylor Button, pursued spurious criminal and civil actions against them, made

false and malicious statements about them, and generated a **media blitz** based on

their lies.

29. Defendants' motives for making their false claims and statements are now clear.

Defendants wanted to intentionally destroy the Buttons' reputations and careers,

garner attention for themselves, and extract millions of dollars from Plaintiffs in a

civil litigation filed four years after receiving a permanent abuse prevention order

in 2018, where Sage Humphries waived monetary damages, to conceal illegal

prostitution and evidence of those illegal acts.

30. Defendants were aided in those efforts by her their daughter, Sage Humphries,

Defendant Hannah Stolrow and Defendant Kathryne Meyer.

31. Although on *at least seven separate occasions,* law enforcement **rejected** the

Humphries' false allegations including that the District Attorney of Somerville,

MA, found her false allegations to be entirely false and did not pursue criminal

charges based on the evidence against her.

32. The damage to Plaintiffs livelihoods and reputations is *irreparable*; and they have

been prevented at every turn by Defendants, their agents, affiliates and third-

parties from seeking legal recourse until now.

33.  As seen further herein, Defendants' conduct beginning in 2017 and which

continues today will only cease when there is consequence to their actions.

COMPLAINT AND DEMAND FOR JURY TRIAL

### THE PARTIES

34. Plaintiff Dusty Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina; Ms. Button is the wife of Plaintiff Taylor Button.

35. Plaintiff Taylor Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina; Mr. Button is the husband of Plaintiff Dusty Button.

36. Upon information and belief, Defendant Michael Humphries is an individual who resides and is domiciled in Los Alamitos, CA.

37. Upon information and belief, Defendant Micah Humphries is an individual who resides and is domiciled in Los Alamitos, CA.

38. Upon information and belief, Defendant Kathryne Meyer is an individual who resides and is domiciled in Garden Grove, CA.

39. Upon information and belief, Defendant Hannah Stolrow is an individual who resides and is domiciled in Hartland, VT.

### JURISDICTION AND VENUE

40. Plaintiffs are citizens of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C § 1332.

41. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

COMPLAINT AND DEMAND FOR JURY TRIAL

42.  Defendants Michael Humphries, Micah Humphries and Kathryne Meyer are
citizens of the State of California for purposes of diversity jurisdiction under 28
U.S.C. § 1332.

43. Pursuant to the Federal Rules of Civil Procedure 4(k), this Court may exercise
personal jurisdiction over Defendant Hannah Stolrow as the Defendant has
minimum contacts with the forum state.

44. Pursuant to 28 U.S.C § 1391(b), venue is proper in this Court because the
Defendants reside in this district.

45.  The Court has general jurisdiction over Defendants Michael and Micah
Humphries and Kathryne Meyer as they are residents of this State.

46. This Court possesses personal jurisdiction over Defendants on the grounds that
Defendants Michael Humphries, Micah Humphries, Kathryne Meyer and Hannah
Stolrow committed a tortious act such as injurious falsehood in this state, (as
alleged in this Complaint), and on the grounds that Defendants caused injury to
Plaintiffs within the state arising out of an act or omission by Defendants outside
of this state, while at or about the time of the injury, products, materials, or things
processed, serviced, or manufactured by Defendants were used or consumed
within this state in the ordinary course of commerce, trade, or use.

47. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3)
because a substantial part of the events or omissions giving rise to Plaintiffs'
claims occurred in this district by virtue of the transmission and publication of the

11
COMPLAINT AND DEMAND FOR JURY TRIAL

false and defamatory statements in this district (and elsewhere) and also because Defendants are subject to this Court's personal jurisdiction with respect to this action and the events which took place.

## **FACTUAL BACKGROUND**

48. Plaintiff Dusty Button was a *world-renowned* ballerina who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City.

49. In 2007, she joined the Royal Ballet School in London and in 2008 she joined Birmingham Royal Ballet in England.

50. In 2011, Ms. Button danced with American Ballet Theatre.

51. Ms. Button is best known for her work with the Boston Ballet, which she joined in 2012 and was promoted to their highest position of principal ballerina in 2014.

52. Ms. Button was Red Bull's first and only ballet athlete and has been published in media publications across the globe and has positively influenced hundreds of thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States.

53. Plaintiff Dusty Button's Instagram account, @dusty_button, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

12
COMPLAINT AND DEMAND FOR JURY TRIAL

54.  Ms. Button deleted her Instagram account in 2021 after succumbing to trauma
from *severe* cyber bullying and harassment which Plaintiff endured as a direct
result of Defendants' conduct and scheme to defame Plaintiffs.

55.  Plaintiff Mitchell Taylor Button, ("Taylor Button"), was one of the world's *most
influential* custom Ferrari and military vehicle designers and builders for seven
years, approximately from 2014 – 2021, with his work having been published in
media publications across the globe for his automotive design, builds and work in
the industry.

56.  Plaintiff has positively influenced hundreds of thousands of people nationally and
internationally and has been procured from global organizations for speaking
engagements and commissions that continue to live on with his legacy today
despite the destruction of his life's work by Defendants.

57.  Plaintiff Taylor Button's Instagram account, @button_built, at the time of the
events described herein, amassed nearly half of a million followers and
subscribers.

58.  Plaintiff Taylor Button deleted his Instagram account in 2021 after succumbing to
trauma from *severe* cyber bullying and harassment which Plaintiff endured as a
direct result of Defendants' conduct and scheme to defame Plaintiffs.

59.  As explained further herein, Plaintiffs' names and likeness *was* their business and
generated one hundred percent of their yearly revenue whereas, Plaintiffs,
themselves and what they provided to their respective industries was *solely* based

on what they provided as their name brands, known as Dusty Button, Taylor

Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button

Built, Button Brand, Bravado by Dusty Button, Meisturwerk and Meisturwerk

Machinen.

60.  Plaintiffs' established businesses, goods and services were *directly sourced* and

provided from their good names, talent, expertise, reputations, skills,

manufacturing and marketing capabilities, which were **completely destroyed** by

Defendants.

61. At the time of the events described herein, Michael Humphries was a licensed

practicing attorney and is still a licensed practicing attorney in Seal Beach, CA[3].

62. At the time of the events described herein and upon belief, Micah Humphries was

a self-acclaimed model and actress.

63. At the time of the events described herein, and upon belief, Kathryne Meyer was a

licensed therapist.

64. At the time of the events described herein, Defendant Hannah Stolrow was a

ballerina with the Colorado Ballet.

65. Plaintiffs have suffered *unimaginable* loss to their businesses, careers, reputations,

finances, mental health, and overall livelihood and will continue to suffer as a

---

[3] The Law Offices of Michael Humphries is located in Seal Beach, CA. Michael Humphries' bar number is
#182407.

direct and proximate result of Defendants' false allegations and outrageous

conduct for the painfully foreseeable future.

66.  Plaintiffs are currently enrolled into government assisted programs in South

Carolina, such as SNAP for food and Medicaid, as Plaintiffs are expecting their

first child the first week of August, 2024.

67.  Plaintiffs have had absolutely *no income* and have had no ability to generate

income due to Defendants' **fraud, manipulation** and ***egregious*** conduct resulting

in Sage Humphries' confidence in pursuing Plaintiffs and the outrageous, false

allegations attached to their names resulting in being prevented from being able to

generate *any income* as a direct and proximate result of Defendants' *intentional*

*infliction of emotional distress* and *harm* on Plaintiffs, which took away

**everything** that they have ever worked for and very nearly, their lives.

68.  As explained in detail further herein, Defendants **intentionally, willfully** and

**maliciously destroyed** Plaintiffs' livelihoods, businesses and future ability to

generate work or income in both of their respective industries for the foreseeable

future; as their names, likeness and reputations were their careers, which were

*obliterated* as a direct result of Defendants' fraudulent acts, defamatory

statements and the *many* egregious, criminal acts committed against them.


### STATEMENT OF FACTS

### A.  Sage Humphries' Relationship with Plaintiffs

69. In 2012, Plaintiffs moved to Massachusetts as Dusty Button became a company member of the Boston Ballet.

70. In 2014, Dusty was promoted to Boston Ballet's highest position in the company as Principal ballerina.

**The events described in further detail herein are from the moment Sage Humphries, daughter of Defendants Micah and Michael Humphries, introduced herself to Plaintiffs until the current date in which this complaint is filed.**

71. In December of 2016, Sage Humphries, (who was also a member of Boston Ballet), introduced herself to Dusty and stated that she and her mother followed both Plaintiffs on Instagram, that her mother wanted her to meet, and be friends with Plaintiffs.

72. In February of 2017, Sage Humphries told Plaintiffs her boyfriend at the time, Anthony Giovanni Deane was forty-years old and that her mother did not approve of her relationship with him because of their age difference.

73. In February of 2017, Sage Humphries also told Plaintiffs the following:

- Her mother forced her to be in an Abercrombie advertisement at the age of fifteen where she was partially nude with a man who was twenty-four years old and she was partially nude, and never prevented her from being in compromising positions with older men.

- Her mother dropped her off to a dinner with a much older man who she claimed she was a Nigerian prince where she over consumed alcohol before

COMPLAINT AND DEMAND FOR JURY TRIAL

accompanying him back to his hotel where Sage claimed he sexually assaulted her and attempted to rape her before she struck him and escaped his hotel room.

- Her mother persuaded and/or urged her to attend parties with older, wealthy men who had influence in the industries that her mother wanted her to be successful in; including but not limited to the modeling and acting industries.

- Her mother persuaded her to go to a Wild Fox party where she modeled underage in Los Angeles for a group of celebrities where she stated she was again, sexually assaulted but her parents neglected to report it.

- Her mother forced her to have an inappropriate sexual relationship with billionaire and owner of the NHL team Edmonton Oilers, Daryl Katz, in exchange for at least $75,000.00 which was transferred into an off-shore account and that her ex-boyfriend Anthony never knew about it but that in fact, her mother had personally trafficked her to Mr. Katz's Malibu home and left her there alone, who had previously arranged the date.

- Her family arranged multiple attempted interventions with people from their church in an attempt to shame Sage for her for her relationship with Anthony at the time.

- Her mother controlled every aspect of her life including what she ate, what medication she was on, how many times and what she should post on social

17
COMPLAINT AND DEMAND FOR JURY TRIAL

media and who she should be seeking out to gain an advantage from in her career.

74. Micah and Michael Humphries' never protected their daughter and instead, used manipulation and deceit to paint a fraudulent picture of an "overprotective parent", neglecting their duties to protect their child and intentionally making her fearful of their disapproval of the choices she made as an adult, resulting in ultimatums, which would later harm Plaintiffs as a direct and proximate cause of their neglect.

75. Later in February of 2017, Sage Humphries began spending more time with Plaintiffs at their home and at places her mother encouraged, such as dinners and events with Plaintiffs including events with Red Bull and other various companies where her mother saw opportunity.

76. After spending more time with Plaintiffs, Sage Humphries told Plaintiff Taylor Button, "*I wish Dusty would want to have a threesome*".

77. Days later and following that statement, Plaintiff Sage Humphries initiated the first sexual encounter with Plaintiff Taylor Button by following him to the basement of a Japanese restaurant where Plaintiff when to use the restroom; on his way back from the basement, Sage Humphries passed Plaintiff on the stairs, grabbed his face and kissed him stating, "*I've been wanting to do that for so long, I just couldn't wait any longer*".

78. In the following days, Sage Humphries began spending more time with Plaintiffs, making it a habit of sleeping over at Plaintiffs home and eventually, sleeping in their bed.

79. In March of 2017, Sage Humphries began bringing her belongings daily to Plaintiffs' apartment including but not limited to her clothes, piano, and bongs which she used for marijuana prior to meeting Plaintiffs, as Plaintiffs did not use marijuana or any recreational drugs.

80. In March of 2017, Micah Humphries initiated a "group text", messaging Plaintiffs about numerous topics including but not limited to requesting Plaintiffs' help with her management of Sage's career, social media, website, vocal recordings and music videos, stating she wanted her daughter to be as successful as Plaintiffs.

81. In the following days, Micah Humphries invited Plaintiffs to California to celebrate Easter and to celebrate Plaintiff Taylor Button's birthday which is on April 16th.

82. On March 21st, 2017, Micah Humphries sent a flight itinerary for Sage, and for Plaintiffs, confirming their trip to the Humphries' home in California on the weekend of April 14th – 17th, 2017.

83. On or around April 1st, 2017, Micah Humphries called her daughter as she was furious that she had not yet returned her iPhone in the mail pending an upgrade, resulting in Micah Humphries' account being charged $1100.00 due to the late fee incurred; Sage panicked and stated to Plaintiffs she desperately **needed** to upload

19
COMPLAINT AND DEMAND FOR JURY TRIAL

all of her photos in order to erase her phone before sending it back to the service provider and requested to upload her camera roll from her phone onto Plaintiffs' hard drive to save all of her photos prior to returning it; Plaintiffs' obliged and Sage uploaded her photos in order to prevent losing her camera roll.

84. Plaintiffs later mailed Sage's iPhone back for her via USPS, on request and called the service provider to receive a full refund for Micah Humphries, easing her frustration with her daughter.

85. In April of 2017, Sage received over twenty phone calls in a row from her brother Michael who continuously and repetitively called her because she would not answer his calls, as she was doing college courses and preparing for school; Michael accused her then of being controlled by Plaintiffs and being "ungodly", not "fulfilling Gods plan for herself", and stating she was "lost".

86. In the following days, Micah Humphries requested to Plaintiffs that Sage become a part of Plaintiffs' iCloud family plan in order to avoid issues with Sage and her brother Michael, who were arguing over iTunes when trying to play music at the same time; Plaintiffs obliged and added Sage to their iCloud family plan.

87. On April 14th, 2017, Plaintiffs and Sage Humphries arrived in California and went to dinner with the Humphries' family where Micah and Michael Humphries ordered drinks for everyone, including their daughter, Sage, who was not yet twenty-one.

COMPLAINT AND DEMAND FOR JURY TRIAL

88. On the night of April 15th, rather than sleeping at Sage Humphries' parents' house for the second night, Sage insisted the they all go to her parents' "beach house", which doubled as a "law office" for Defendant, Michael Humphries.

89. Micah and Michael Humphries had stocked the fridge inside with alcohol for everyone including their daughter.

90. Sage stated to Plaintiffs that she had a "surprise" for Taylor's birthday, whereas, she initiated the first three-way sexual and emotional encounter that evening as a proverbial "birthday gift" for Plaintiffs Taylor Button and Dusty Button, thus blurring the lines between friendship and relationship.

91. On the morning of April 17th, 2017, Sage's father walked in on the three, nude together in bed, and while making unbroken eye contact simply reminded Sage Humphries of her dentist appointment that morning and left, later directing Plaintiffs where the best coffee place in town was and carried on for the rest of the trip as if nothing happened.

92. Sage then sent a message to Plaintiffs stating, "Hey guys, all good?". Plaintiffs replied, "Yea we were going to pick your family up a gift but we talked to your dad and he seemed completely normal so I think it's okay", to which Sage replied, "It's an Easter miracle".

93. Michael and Micah Humphries had *actual knowledge* of Sage Humphries' relations with Plaintiffs, and said nothing until Sage Humphries' views and decisions as an adult began differing from her parents'.

COMPLAINT AND DEMAND FOR JURY TRIAL

94. Following the intimate relations which took place on April 16th, 2017, Sage
Humphries and Plaintiffs decided to continue their relationship, ultimately
labeling each other as "boyfriend" and "girlfriend" and spending most of their
time together as Sage Humphries asked Plaintiffs if she could continue to stay at
their apartment.

95. Following the April trip to California, Micah Humphries initiated another "group
text" with her daughter and Plaintiffs which was then regularly used as an open
line of communication.

96. Micah Humphries' messages increased, regularly sending Plaintiffs requests for
her daughter's career including by asking if Plaintiff Taylor Button could again,
help with managing Sage's website, social media and music career, asking if he
could purchase certain equipment for vocal recordings and photography.

97. Micah Humphries continuously stated that Plaintiffs were the best thing to ever
happen to her daughter and thanked them for being such a great influence on her
as she could notice a difference in her behavior, confidence and work ethic
because of Plaintiffs' influence.

98. There were innumerable occasions where Micah Humphries addressed her
gratitude for Plaintiffs being in her daughter's life via the "group text" initiated by
Micah Humphries to Plaintiffs and Sage Humphries including but certainly not
limited to the following message from Micah on May 9th, 2017:

COMPLAINT AND DEMAND FOR JURY TRIAL

- "*All three of you have welcomed each other into one another's life with open
arms... mike and I feel that you are A huge blessing in each other's life.*"

99. Later in May of 2017, Ms. Humphries' parents again, invited Plaintiff Taylor
Button to their home on two occasions while he was there for work, in which he
obliged.

100.     On one such occasions in April when Plaintiff Taylor Button was invited
to the Humphries' home, Micah and Michael Humphries shockingly, asked
Taylor to help carry Micah's deceased grandmother's body in a plywood box
from the back of a pickup truck into their garage, as they did not want to pay for
cold storage; Micah then proceeded to video tape the incident from her bra while
Taylor, who was on Facetime video with his wife, Dusty and Sage, found it odd
and uncomfortable and the rest of the Humphries' family laughed about the
incident.

101.     At the end of April, 2017, Ms. Humphries' parents made it clear that they
knew she was in a dating relationship with both Plaintiffs whereas, at first, Ms.
Humphries' parents accepted the relationship by facetiming Plaintiffs and asking
if she could move in with them permanently to save money and that they knew
Sage's desire was to move in with them and wanted to make sure it was okay with
Plaintiffs, additionally discussing storing Sage' furniture so they could use it for
her brother, who was attending school in Boston, MA the following year.

102.     The following message was sent by Micah Humphries to the "group text":



103.    In May of 2017, Micah Humphries visited Plaintiffs' home in Somerville, MA and stayed over for one night during her visit as she asked Plaintiffs if she could stay to avoid paying for a hotel and knew that Sage was staying at Plaintiffs' home the majority of the time.

COMPLAINT AND DEMAND FOR JURY TRIAL

104.    During her visit, she made various comments on Plaintiffs collections of luxury items which were on display in their home including but not limited to their collection of Louis Vuitton bags, bicycles, shoes, furniture and the display of airsoft toy guns which were used as props in multiple marketing and campaign photo shoots for various brands and sponsors of Plaintiffs on social media, none of which were real firearms; Micah Humphries and Sage Humphries both knew this to be true as seen in two of the many photos below:



105.    In or around the beginning of May, Micah Humphries reminded Sage to get her passport renewed for a trip to Europe which followed a planned visit to Scotland for a family member's wedding.

106.    On May 9th, 2017, Micah Humphries sent a text message on the "group text" stating that it has been a difficult year for their family and that Sage is

adding to their difficult year by not being responsible i.e., paying for her own bills, getting her passport on time and stating that the year was already difficult for them because Sage was previously in a relationship with Anthony, who was old enough to be Sage's father and that it took a toll on them.

107.     In May of 2017, Sage's parents sent the summer itinerary they planned for her, giving her dates in which she was allowed to make her own plans for the summer on the dates they did not already have booked for her, though she was an adult, whereas; Sage Humphries made it clear that she already made plans with Plaintiffs to travel to Australia but would adjust her schedule to also fit in what her parents scheduled for her.

- The following text was sent to Plaintiffs and Sage Humphries on a group text from Micah Humphries:

COMPLAINT AND DEMAND FOR JURY TRIAL

1



13

14      108.     Plaintiffs were invited to teach and photograph in Australia as Plaintiff

15      Dusty Button was a scheduled teacher for the International Ballet Workshops

16      which toured Australia for nearly two months.

17      109.     Sage Humphries asked if she could assist Dusty in her classes in Australia

18      to make a summer trip out of Plaintiffs travels.

19      110.     Sage then made the decision to travel to Australia with Plaintiffs,

20      informing her mother that she would be traveling with them to Australia and

21      would then visit her family in California and travelling with them to Europe,

22      altering her parents' plan they planned for her.

23

24

25

26                                      27
                       COMPLAINT AND DEMAND FOR JURY TRIAL
27

111.     On or around May 14th, 2017, Sage Humphries called her best friend and Defendant in this action, Hannah Stolrow, telling her that she is "in love" with both Dusty and Taylor.

112.     Ms. Stolrow supported Sage's decision and later told Dusty and Taylor that she has never seen her best friend so happy.

113.     On May 17th, 2017, Micah Humphries texted her daughter with a warning that if she did not end her relationship with Plaintiffs, she would fly to Boston from California with her husband and forcibly remove Sage and "come to take her things".

114.     Sage ignored her mother's threatening message and instead, continued her relationship with Plaintiffs as she expressed that was her desire.

115.     Later that day, Micah Humphries' sent another text message to Sage, this time she was furious, forgetting that Sage previously told her she was going to Australia and stating that a family friend, Dr. Kesten, had informed her that her daughter was going to Australia with Plaintiffs.

116.     Following this message, there was a complete and drastic turn of events as Sage Humphries was persistent telling her mother that she wanted to make her own decisions. The following conversation was the result of Sage Humphries telling her mother she wanted to make her own decision regarding her summer plans with Plaintiffs: (These texts are provided in Exhibit A, attached to Plaintiffs' complaint).

28
COMPLAINT AND DEMAND FOR JURY TRIAL

- **Micah Humphries to Sage**: "They are not your masters. I don't know what control. I'm pretty sure this is a threesome and I'm completely weirded out by all of it. You've known them 3 months. I love you sage but this situation is destructive to you and not healthy."

- **Sage Humphries responded to her mother**: 1) "Dusty is texting you regarding what you said about her to dr k. 2) you are paranoid and sound crazy regarding this relationship.

- **Micah Humphries replied:** "It is weird Sage".

- **Sage Humphries replied**: 3) "this is my choice".

- **Micah Humphries**: "Sage".

- **Sage Humphries**: "my life my summer".

- **Micah Humphries**: "I love you with all my heart".

- **Sage Humphries**: "Nobody is controlling my life. You are the only person trying to do so".

117.     Following the argument between Sage and her mother, it was then made abundantly clear that Micah and Michael Humphries had a new plan to regain the control of their daughter, as Sage was making her own decisions which did not align with their own.

29
COMPLAINT AND DEMAND FOR JURY TRIAL

118.     Following the conversation, Sage Humphries told Plaintiffs that her parents would no longer pay for the renewal of her passport in order to go to Europe because she had made the decision to go to Australia.

119.     Sage asked if Plaintiffs would pay for her passport renewal so that she could go to Australia with them and that she would pay them back for the renewal.

120.     Plaintiffs immediately went to USPS with Sage and paid to rush her passport renewal for the summer travels.

121.     On May 18th, 2017, Micah Humphries sent a text message to the "group text", responding to the earlier conversation:

- "*I talked to Dr k yesterday and told her everything that has Been going on in our family over the past three months with papa, nana and Mike's grandma and I also told her about Anthony. When I found out, from her, that you all had been planning to go to Australia July 16th, instead of sages grandmas funeral, I was upset! You all have known how we feel about this time with us, and how important it is to Mike and his family. Dr Kesten is extremely close to our family. She is our dear friend and she sage doesn't respond to her, she texts me… Anything I have to say to you or Taylor, I will say. I can't be more honest then I have been with you and What we discuss openly is between us. And btw.. Dr Kesten knows Sage*"

COMPLAINT AND DEMAND FOR JURY TRIAL

*smokes weed. She helped her with that when she came back from New York and was a mess!"*

122.    Micah Humphries had never planned a funeral on June 16th but instead, used the date of June 16th after finding out her daughter's desire was to go to Australia.

123.    On May 21st, 2017, neither Plaintiffs or Sage Humphries heard from her mother following Sage Humphries' decision to go to Australia which she did not alter following the conversation with her mother.

124.    On May 22nd, 2017, to Plaintiffs' shock, Plaintiff Dusty Button's contract with the Boston Ballet was abruptly and prematurely terminated for "just cause", with no explanation as to why she was terminated, banning Dusty and Taylor from the premises of the Boston Ballet and Boston Opera House (now, Citizen's Bank Opera House), where the Boston Ballet performances were held and in fact, would not allow Dusty in either building to collect her belongings.

125.    Plaintiff Dusty Button **has never received a reason or cause for her termination from Boston Ballet** nor was a reason named in the official documentation however, Plaintiffs now know, Micah and Michael Humphries conspired with Boston Ballet to prematurely terminate Dusty Button's very financially lucrative and prestigious contract as explained further herein.

126.    On May 24th, 2017, without any prior notice, Sage Humphries' parents sent her a text message that they were in Boston, MA, ordering her to attend

COMPLAINT AND DEMAND FOR JURY TRIAL

dinner and falsifying that Ms. Humphries' grandfather was "dying"; he was not. In fact, Defendants later admitted they created that lie to entice Sage to come back to California with them.

127.     On May 25th, 2017, Sage Humphries went to see a movie with Plaintiff Taylor Button prior to her performance with Boston Ballet as Plaintiff Dusty Button was teaching about forty-five minutes away.

128.     Following the movie, Plaintiff Taylor Button walked with Sage Humphries to the Boston Opera House and the two parted ways.

### B. The May 25th Events and the Summer of 2017

129.     On May 25th, 2017, after weeks of harassing their daughter regarding the disapproval of the relationship with Plaintiffs, Micah and Michael Humphries took a flight from California to Massachusetts, kidnapped their **adult daughter** under false pretenses, stole her phone, driver's license and funds from her bank account, forced her onto a plane back to California, "into exorcisms" and into therapy because they did not approve of her choice to be in a relationship with Plaintiffs.

The following events described herein took place:

130.     On May 25th, 2017, Plaintiff Taylor Button received a text message from Sage Humphries stating:

- "*I'm hysterical. Tony literally escorted me out. I'm getting on a flight*".

COMPLAINT AND DEMAND FOR JURY TRIAL

131.    Sage Humphries was immediately escorted out of the Opera House by Boston Ballet faculty, Tony Randazzo, and **forcibly removed** by her own parents who were waiting for her at the Opera House.

132.    Sage Humphries called Plaintiffs **screaming** for help as she was forced by her parents into a taxi, through tsa at the airport and onto a plane and forced back to Defendants' residence in California to be reset and manipulated by her parents.

133.    Micah and Michael Humphries (admittedly) stripped their daughter of her drivers' license, cell phone, car keys and finances to prevent her from leaving their home or contacting Plaintiffs or any other third party for help as they forced her into therapy and exorcisms, which they funded with her own money, stolen from her bank account.

134.    On May 27th, 2017, Defendant Hannah Stolrow sent a text message to Sage Humphries asking if she "went away" because she was not responding to her and she had not heard from her in a couple of days.

135.    Defendant Stolrow contacted Plaintiffs to ask if they had heard from Sage and Plaintiffs immediately told Defendant Stolrow of the events which took place leading up to and on May 25th, 2017.

136.    Defendant Stolrow replied to Plaintiffs by saying, "Oh my God, Micah is doing it again; this is what Micah does, she destroys all of Sage's relationships that make her happy."

137.    After hearing what happened, Defendant Stolrow offered to drive to the Humphries' home in Los Alamitos, CA to check on Sage as she, too, was concerned.

138.    As stated further herein, and as Plaintiffs discovered through a legally recorded phone call with Defendant Stolrow's ex-boyfriend, Bryce Jackson Lee, and in fact, through admittance by Sage Humphries herself via deposition; Ms. Stolrow **never saw Sage Humphries that day** and instead, Micah Humphries intervened and did not allow Sage Humphries to leave the house to see Hannah as she kidnapped, threatened and imprisoned her own adult daughter, creating a false narrative which never occurred.

139.    Defendant Micah Humphries told Ms. Stolrow that Plaintiffs had drugged her daughter, forced her to be in sexual relations with them, and forced her to live with them, manipulating and lying to Ms. Stolrow and leading her to message Plaintiffs a follow up text that said she did not the "know the full story".

140.    At the time, Plaintiffs did not understand what Ms. Stolrow was referring to and in fact, did not receive any information until 2023 regarding the conspiracy between the Humphries and Hannah Stolrow, which is now proven through numerous messages and recorded phone calls as they colluded to create and maintain a false narrative of abuse that never existed.

141.    Plaintiffs were never aware that Ms. Stolrow spoke to Micah Humphries or of what was said to Ms. Stolrow until 2023 when Plaintiffs received discovery

COMPLAINT AND DEMAND FOR JURY TRIAL

material showing the text messages between Defendants Stolrow and Micah Humphries.

142.    Upon Ms. Stolrow discovering Micah Humphries' lies, Ms. Stolrow had a duty to disclose the truth to Plaintiffs but instead, Defendant *shockingly* assisted the Humphries' fraud and further defamed Plaintiffs including by conspiring with her best friend Madison Breshears[4] in 2021 to create a false and defamatory online harassment and bullying campaign against Plaintiffs; as explained further herein.

143.    Plaintiffs never heard from Ms. Stolrow again following her text message after her visit to the Humphries' home in May and because of Defendants' collusion with Micah Humphries, Plaintiffs blocked Ms. Stolrow from their social media accounts only to receive a message from Ms. Stolrow's ex-boyfriend which stated:

"You guys can go ahead and block Hannah and I but that is literally proving your guilt in this. #lawyerup #cantwaittomeetyou"

---

[4] Plaintiffs have filed a lawsuit against Ms. Breshears, naming Ms. Stolrow as a third-party co-conspirator in the Southern District Court of New York – case 1:24-cv-03757-MKV Button et al v. Breshears et al.

COMPLAINT AND DEMAND FOR JURY TRIAL

144.     As stated, *supra*, it was **years later** that Plaintiffs were made aware of and *actually discovered* the fraudulent scheme that was calculated, created and committed by Defendants who intentionally destroyed two innocent lives, creating what is now known as the sole catalyst of the events which have taken place for over seven years.

   *C.  The Aftermath of the May 25th, 2017 Events*

145.    On May 27th, 2017, Sage Humphries' parents sent a text message to

Plaintiffs as seen below:



146.    Defendants Micah and Michael Humphries had not yet filed any police

report with any law enforcement as seen on the time stamped data of the reports

provided however, the text message which states they "*notified the Boston police*"

and "*local authorities here in Orange County*", was just a precursor of their

fraudulent and criminal actions to come, just one day later as they filed their first

series of false police reports against Plaintiffs.

147.        On May 28th, 2017, Michael Humphries *knowingly* filed **two false police reports** against Plaintiffs, one with the Orange County Sheriff's Department in California falsely claiming Plaintiffs had boarded a flight to California and were going to kidnap his daughter and harm their family and another with the Somerville Police Department in Massachusetts, falsely stating Plaintiffs had **over fifty automatic weapons, hand grenades and land mines** in their Somerville home, while he illegally used an address of a Somerville resident who was friends with Sage Humphries and who lived in the same apartment complex as Plaintiffs while making the call from California to file the false report.

148.        Both reports were filed consecutively, **within one minute of each other**, as seen below.

149.        The Somerville Police Department raided Plaintiffs home while they were away on a "staycation" to get away from the trauma that had occurred, as Plaintiffs went to stay at a hotel nearby, as they did not want to be at their apartment; Plaintiffs' dog walker at the time let the police into Plaintiffs' apartment.

150.        The raid lasted for five minutes as authorities instantly recognized on inspection that there were no firearms, hand grenades or landmines in the Buttons' home; the Somerville Police Department instantly stated in their report that the home was clear, as the claim was false.

COMPLAINT AND DEMAND FOR JURY TRIAL

151.    The Buttons were informed the following day by the department that the

phone call was made from Micah Humphries' phone number, utilizing Sage

Humphries' friends' address, Dawn Atkins and Edsall Hilty to falsify that the call

was coming from someone who had a view of Plaintiffs' apartment through their

windows however, that view was blocked by a large cabinet with no view inside

Plaintiffs' apartment, confirming it could not have possibly been any "neighbor"

of Plaintiffs[5].


- Below is the report from the raid of Plaintiffs' apartment from the Somerville

  Police Department, which they did not obtain until 2023.

---

[5] Plaintiffs also received the 911 call associated with the false report in Somerville, MA which was directly
linked back to Micah Humphries' phone number and which they intend to produce to the Court.

39
COMPLAINT AND DEMAND FOR JURY TRIAL

Main Form                                                                 Page 2 of 3

| POLICE | | REQOFF!! | |

## Note(s)

| Note Type | Entered By | | User ID |
|---|---|---|---|
| CALL-TKR | 05/28/2017 21:27:16 | | c249 |
| **Narrative Description** | | | |
| man at abv apt wants to speak to an ofc about a picture he received -sts there is an apt on artisan way that has 30 automatic weapons in apt | | | |

| Note Type | Entered By | | User ID |
|---|---|---|---|
| INVALID | 05/28/2017 21:27:23 | | auto |
| **Narrative Description** | | | |
| ** APT 555 - QUADRIPLEGIC WILL NEED ASSISTANCE ** | | | |

| Note Type | Entered By | | User ID |
|---|---|---|---|
| PAST INC | 05/28/2017 21:27:23 | | auto |
| **Narrative Description** | | | |
| THERE ARE 69 PAST INCIDENTS AT 333 GREAT RIVER RD | | | |

| Note Type | Entered By | | User ID |
|---|---|---|---|
| INFO | 05/28/2017 22:13:34 | | c397 |
| **Narrative Description** | | | |
| everything checks out at this time | | | |

## Officers and Units

**CAD Units**

| Agency Name | Unit ID | Personnel Id | Officer Name |
|---|---|---|---|
| SOM-PD | E1 | 238 | DOTTIN D |
| SOM-PD | E4 | 321 | CLARK S |
| SOM-PD | S8 | 126 | MARINO J |

## Unit Statuses

**CAD Units**

| Unit ID | Status | Date/Time | Avail? | Location | Disp ID |
|---|---|---|---|---|---|
| E1 | RESP | 21:37:01 | N | | e419 |
| E4 | RESP | 21:37:01 | N | | e419 |
| E4 | CLEAR | 21:37:18 | Y | | e419 |
| E4 | RESP | 21:40:53 | N | | e419 |

http://10.9.1.34/QED//cadpartner/cad97/cadincview/main.jsp?agency=SOM-PD&incnum=...   8/10/2017

PL-0001299

152.     In California, as shown below, Michael Humphries knowingly and falsely

lied to officers from the Orange County Sheriff's Department who noted on the

report:

- *"Spoke with informant who stated daughters ex-boyfriend boarded a flight*

   *from boston to his home. Informant believes his daughter is going to be taken*

   *from his home and taken back to boston. Spoke with daughter sage who stated*

COMPLAINT AND DEMAND FOR JURY TRIAL

*there is no validity to the statements made by her father. Sage feels safe and there will be no harm done to her family. sage agreed to travel to sacramento to visit family. no crime committed.*"

- The Orange County Sheriff's Department interviewed S.H away from her father where she stated "*there is no validity to the statements made by her father and she feels safe and that no harm would be done to her family*".

- The report can be seen below, filed by Michael Humphries on May 28th, 2017 as his daughter attempted to escape her parents' imprisonment.

41
COMPLAINT AND DEMAND FOR JURY TRIAL



| 9/13/2023 | Orange County Sheriff Department | 11:33:44AM |
|---|---|---|
| | **Call Detail Information Report** | |
| | Call Number: 170528-0691 | |

Call Number    170528-0691

## Call Detail Information

| Call Number | Class | Taker | Pos | Call Owner | Date – Time Received | Cat |
|---|---|---|---|---|---|---|
| 170528-0691 | G | ROSECL | 10 | | 05/28/2017 18:28:29 | 0 |

| Complaint | | | Ten Code | Priority | Disp Zone | IPA | How Received |
|---|---|---|---|---|---|---|---|
| 415F DISTURBANCE-FAMILY DISPUTE | | | 2 | NO | RO01 | WIRE |

| Incident Location | Apt/Suite | Floor/Bldg | Incident City | Grid |
|---|---|---|---|---|
| 11340 ████████ | | | RO | 796H3 |

| Caller Name | Patrol Zone | Telephone | Tower ID | Jurisdiction | Tract |
|---|---|---|---|---|---|
| HUMPHRIES, MICHAEL | 06 | 562-756-████ | 949-511-0580 | OCSD | RO |

| ☐ Images | ☐ Medical | ☐ Hazard | ☒ Previous | ☐ DR Issued in Error |
|---|---|---|---|---|

| ALI Time | Call Rec'd | Xmit | Dispatch | Enroute | OnScene | Departed | Arrived | Comp | Unit |
|---|---|---|---|---|---|---|---|---|---|
| 18:28:18 | 18:28:29 | 18:30:36 | 18:30:50 | 18:30:50 | 18:46:04 | | | 19:20:26 | 4A08 |

**Narrative**

[05/28/2017 19:20:25 : pos2 :chano]
[Cleared with unit 4A08]

[05/28/2017 19:19:37 : MOB : 4A08]
Spoke with informant who stated daughters ex boyfriend boarded a flight from boston to his home. Informant believes his daughter is going to be taken from his home and taken back to boston. spoke with daughter sage who stated there is no validity to the statements made by her father. Sage feels safe and there will be no harm done to her family. sage agreed to travel to Sacramento to visit family. no crime committed. 10-98

[05/28/2017 19:13:52 : pos2 :chano]
Unit : 4A08
C4

[05/28/2017 19:05:17 : pos2 :chano]
Unit : 4A08
10-6

[05/28/2017 18:48:26 : pos2 :chano]
Unit : 4A08
HAVE CONTACT

[05/28/2017 18:30:36 : pos10 : ROSECL]
Cross streets: SHAKESPEARE DR//CHESNEY DR
NBH: 796H3   90720  33.7986273663148,-118.081774826051
INF VS 19 YO DTR IN A 415V      INF IS UPSET THAT DTRS FRIENDS FROM BOSTON ARE POSS ENRTE TO THE HOUSE FROM BOSTON   PER INF THEY POSS BOARDED A PLANE 8 HRS AGO

**Location Comment**

NBH: 796H3   90720  33.7986273663148,-118.081774826051

## Call Dispositions

| Date – Time | Disposition | Unit |
|---|---|---|
| 05/28/2017 19:19:48 | Assist | 4A08 |
| 05/28/2017 19:20:25 | No Report Needed | 4A08 |

Page 1 of 3

COMPLAINT AND DEMAND FOR JURY TRIAL

153.    The above reports were withheld from the Boston Municipal Court in 2017, 2018 and 2023 to intentionally deceive the Court into believe allegations stated by Ms. Humphries were true without producing the reports which stated otherwise but were later discovered and obtained by Plaintiffs through issued subpoenas to law enforcement issued by the Nevada District Court in 2022.

154.    Simultaneously, and unbeknownst to Michael and Micah Humphries, Sage was using her parents' phones to message Plaintiffs, which she pursued on her own, begging Plaintiffs for help to, "come save her" and "need help", as seen below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



COMPLAINT AND DEMAND FOR JURY TRIAL

155.     On May 29th, 2017, Plaintiffs received an unwarranted message from Sage

Humphries' father who discovered his daughter was sending messages from his

phone and his wife's phone, asking Plaintiffs for help.

156.     Michael Humphries falsely stated that Plaintiffs sent Defendant Hannah

Stolrow to the Humphries' home to "stalk" their home.

157.     Defendant also stated that Plaintiff Dusty Button was fired from the

Birmingham Royal Ballet; Dusty's resignation letter is below however, these are

the false and defamatory lies that the Humphries' spread to innumerable third

parties and the media.



COMPLAINT AND DEMAND FOR JURY TRIAL

158.     Michael Humphries, an attorney, threatened Plaintiffs by stating he will "*expose [Plaintiffs] predatory behavior to ensure there are no other victims, and [they] will prosecute [Plaintiffs] to the full extent of the law*", using his law degree to intimidate and harass Plaintiffs.

159.     Defendants' text message also tellingly reveals a premediated scheme against Plaintiffs by stating that their daughter knows "about ALL" Plaintiffs "previous relationships", conspiring to commit fraud against Plaintiffs by defaming them through the media and making false and defamatory statements to innumerable third parties about presumably negative "previous relationships" alluding to some sort of abuse which previously took place, (it did not).

160.     From May 25th, 2017 – July 18th, 2017 Sage Humphries pursued Plaintiffs and expressed her desire to continue her relationship with them using various forms of communication on her own merit, borrowing strangers' phones, her parents' phones, her therapist's phone, and her younger brother's phone to contact Plaintiffs via Snapchat, (who were in Australia at the time), in order to hide her communication with Plaintiffs from her parents, who continued to keep her phone, driver's license, car keys and funds from her bank account until she agreed to break off her relationship with Plaintiffs.

161.     Ms. Humphries hid her relationship and contact with Plaintiffs from her parents however, after May 25th, 2017, the Buttons *never once* initiated contact with Sage Humphries and only ever responded and communicated with Sage

47
COMPLAINT AND DEMAND FOR JURY TRIAL

when she messaged, as they were still in a relationship and she continuously stated she "needed help".

162.    On June 1st, 2017, Sage Humphries contacted Plaintiffs from a stranger's phone while the Buttons were in the presence of their friend and witness Rich Costa, who heard the entire conversation on speaker phone.

163.    Sage frantically begged Dusty to wait for her and repeated that she loved her, then proceeded to ask if Taylor was there and if she could speak to him. She then repeated the same statements to Taylor and that she had borrowed the phone she was calling on.

164.    She then told Plaintiffs to please answer all calls from *any* California number as she will try to get a phone from anyone she can, but that her parents had shut down her bank account, taken her driver's license and ID and her phone, would not allow her to communicate with anyone outside of the home and most disturbingly, they were forcing her to have exorcisms where her priest would pick her up from the house, drive her to have exorcisms performed and then drive her home.

165.    The rushed phone call concluded when Sage begged the Buttons to send the police because she was being held captive against her will by her parents.

166.    The therapist referred to in the aforementioned statements, who Sage alleged was performing exorcisms on her was Defendant Kathryne Meyer.

COMPLAINT AND DEMAND FOR JURY TRIAL

167.    On June 17th, Plaintiffs, (who were in Australia), received a phone call from Sage Humphries on an unknown California number.

168.    Plaintiffs discovered in 2023 that the phone number was Kathryne Meyer's telephone number.

169.    Defendant, Kathryne Meyer knew that Sage Humphries' desire was to contact and be with Plaintiffs while simultaneously, appeasing Micah and Michael Humphries.

170.    Instead of Sage Humphries getting the "therapy" her parents thought she was getting, her therapist was assisting her in continuing her relationship with Plaintiffs while hiding the relationship from her parents.

171.    Sage Humphries made fun of the therapy sessions with Ms. Meyer and in fact, sent numerous messages and photos to Plaintiffs showing she did not want or need the therapy that Micah and Michael Humphries were forcing her into as seen in the photos below:

COMPLAINT AND DEMAND FOR JURY TRIAL



172.    Micah and Michael Humphries stole money from Sage Humphries' bank account to pay for her therapy that she did not want or need.

173.    Sage wrote and performed multiple love songs for Dusty and Taylor Button while she was in California during the months of June and July 2017.

174.    On one such occasion, Defendants Micah and Michael Humphries discovered that one her of songs was about Plaintiffs and immediately "*took everything away from her*", (depicted in Exhibit A).

175.      When Micah and Michael Humphries discovered their daughter was still

speaking to the Buttons, they became *enraged* and immediately threatened Sage

with her job at Boston Ballet, telling Sage that if she did not "break up" her

relationship with the Buttons that she would not be allowed to go back to Boston

and would not be released from their custody.

176.      In July of 2017, Ms. Humphries' parents gave her an ultimatum; to either

end her dating relationship with Plaintiffs or she would lose everything she ever

loved and worked for, including that they would not pay for her ticket to go back

to Massachusetts to work at the Boston Ballet in August of 2017.

177.      On July 9th, 2017, Sage warned the Buttons that she would be calling to

leave a fake voicemail "breaking up" with the Buttons so that she would be

allowed to go back to Boston and that they could "be together"; she just needed to

"make them think" she was breaking up with them.

178.      Sage Humphries stated to Plaintiffs, "*don't listen to the voicemail*",

"*delete it immediately*" and "*don't believe a word I say*".

•     The following messages were sent by Sage Humphries warning Plaintiffs of

the "fake break up" she would be forced to leave in order to "make her parents

believe" she was out of the relationship (as depicted in Exhibit A).

179.      Once the fake "break up" voicemail was left on July 10th, 2017, Sage

Humphries continued to message the Buttons through July 18th, 2017.

COMPLAINT AND DEMAND FOR JURY TRIAL

180.    On July 14th, 2017, Ms. Humphries contacted Plaintiffs and stated her parents were forcing her to see a lawyer, that she got really upset and left and that her parents were forcing her to sign restraining orders against Plaintiffs or they would not give her back her freedom[6].

181.    On July 18th, 2017 Sage Humphries sent a final message stating "*I want you to know I am no longer your girlfriend, this is over and final*".

182.    Over the course of the summer in 2017, it became clear that Sage Humphries was succumbing to the pressure of Defendants Micah and Michael Humphries, and assisting in their calculated scheme against Plaintiffs while simultaneously portraying to Plaintiffs that she was being forced out of the relationship with them that she wanted to be in; as she played both sides, ultimately deciding the Buttons' lives and reputations were worth destroying by agreeing to and consenting to her parents' fraudulent narrative of sexual assault and abuse that never existed in the time of her relationship with Dusty and Taylor in order to save herself, the relationship with her family and to secure her release back to her privileged life in Boston, MA.

183.    Four days later, on July 22nd, 2017, Sage Humphries and Defendants Micah and Michael Humphries *intentionally* and *knowingly* filed a false police

---

[6] Sage Humphries has admitted that she did not even write her restraining order, that her father did and that Ms. Humphries only provided a signature as she was forced to do so to regain her freedom. Plaintiffs have filed for fraud on the Court in Boston, Massachusetts and will be presenting Oral Argument for their Appeal 2023-cv-1202 in the fall of 2024.

COMPLAINT AND DEMAND FOR JURY TRIAL

report with the Orange County Sheriff's Department in California against

Plaintiffs, reporting sexual assault and threats to do bodily harm, contradicting her

initial statement in her father's false report on May 28th, 2017.

184.    Officers interviewed Sage Humphries privately, away from her parents

viewing any and all messages between Sage Humphries and Plaintiffs on her

phone and the report concluded that the allegations were unfounded based on the

interview, the messages between Sage and Plaintiffs and the prior statements

made to law enforcement by Sage Humphries and her parents were unfounded.

185.    The officer who arrived at the Humphries' home noted they had

previously been called to her parents' home on numerous occasions for the same

matter whereas, every report was unfounded as shown below:

COMPLAINT AND DEMAND FOR JURY TRIAL

| 12/17/2020 | | Orange County Sheriff Department | | 11:21:18AM |
| --- | --- | --- | --- | --- |
| | | **Call Detail Information Report** | | |
| | | Call Number:  170722-0273 | | |

**Call Number**    170722-0273

## Call Detail Information

| Call Number | | Class | Taker | Pos | Call Owner | | Date - Time Received | Cat |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 170722-0273 | | C | CEValdivia | 12 | | | 07/22/2017  11:21:32 | 0 |

| Complaint | | | | Ten Code | Priority | Disp Zone | IRA | How Received |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 422R CRIMINAL THREATS REPORT | | | | | 3 | NO | RO01 | |

| Incident Location | | | | Apt/Suite | Floor/Bldg | Incident City | | Grid |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1134█████████ | | | | | | RO | | 796H3 |

| Caller Name | | Patrol Zone | | Telephone | Tower ID | Jurisdiction | | Tract |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| HUMPHRIES, SAGE | | 06 | | 714█████ | - - | OCSD | | RO |

| ☐ Images | ☐ Medical | ☐ Hazard | ☒ Previous | | ☐ DR Issued in Error |
| --- | --- | --- | --- | --- | --- |

| ALI Time | Call Rec'd | Xmit | Dispatch | Enroute | OnScene | Departed | Arrived | Comp | Unit |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 11:21:32 | 11:22:59 | 11:23:59 | 11:23:59 | 12:27:09 | | | 14:57:52 | 1a06 |

**Narrative**

[07/22/2017 14:57:52 : pos1 : HixsonC]
[Cleared with unit 1A06]

[07/22/2017 14:57:00 : MOB : 1a06]
OTHER DEPUTIES HAVE BEEN DISPATCHED TO THE HOUSE REFERENCE SIMILAR CALLS AND THE CALLS WERE UNFOUNDED.

[07/22/2017 14:54:54 : MOB : 1a06]
INF STATES HER DAD ALLOWS HER TO USE THE PHONE BY PERMISSION ONLY, AND HAS SAVED ALL COMMUNICATIONS ON TE PHONE. INF IS WILLINGLY COMMUNICATING WITH THEM ON HER BROTHERS PHONE WHEN SHE DOES NOT HAVE HER DADS PHONE.

[07/22/2017 14:52:19 : MOB : 1a06]
WHEN SHE RETURNS TO BOSTON. SHE HAS BEEN IN CONSTANT COMMUNICATION WITH THE COUPLE WHILE HERE IN ROSSMOOR. SHE ALLOWED ME TO VIEW HER TEXT MESSAGES WITH THEM AND THE MESSAGES WERE INCONSISTANT WITH THE STATEMENTS SHE MADE IN THE INTERVIEW. THE INF IS 19, INPRESSIONABLE, AND WAS ABLE TO WALK AWAY OR LEAVE THE RELATIONSHIP AT ANY TIME AND CHOSE TO STAY IN IT. TE CRIMES WERE UNFOUNDED AND THE FATHER STATED THEY ARE IN THE PROCESS OF ATTEMPTING TO OBTAIN RESTRAINING ORDERS IN BOSTON.

[07/22/2017 14:48:22 : MOB : 1a06]
FATHER STATED HE CONTACTED BOSTON PD A COUPLE OF MONTHS AGO TO RELAY THE INFORMATION AND THEY ADVISED HIM WHEN THEIR DAUGHTER IS READY TO SPEAK WITH THEM, THEY WILL LOOK INTO IT. INF IS RETURNING TO BOSTON IN A COUPLE OF WEEKS FOR WORK AND WAS PLANNING ON TELLING BOSTON PD ABOUT THE RELATIONSHIP.

[07/22/2017 14:47:11 : MOB : 1a06]
THE 422 WAS UNFOUNDED BASED ON THE INTERVIEW. THE STATEMENTS MADE ON SNAPCHAT WERE INTERPRETED AS SEXUAL IN NATURE AND NOT IMPLIED TO MEAN GREAT BODILY INJURY OR DEATH. THE SEXUAL RELATIONS INCLUDED 'BONDAGE' TYPE ROLE PLAYING AND SHE BELIEVED THE STATEMENT WAS REFERENCE TO 'BONDAGE'

[07/22/2017 14:45:38 : MOB : 1a06]
CONTACTED INF WHO STATED SHE IS A BALLET DANCER IN BOSTON WHO BEFRIENDED A COUPLE ( MITCHELL TAYLOR MOORE AND DUSTY RACHEL BUTTON) ASSOCIATED WITH THE DANCE COMPANY SHE WORKED FOR. SHE WILLINGLY STAYED AT THE APARTMENT MOST OF THE TIME, CONSENTED TO ENGAGING IN AN OPEN ROMANTIC RELATIONSHIP WITH THEM, HAD CONSENSUAL INTIMATE RELATIONS WITH THEM FOR A FEW MONTHS. 261 WAS UNFOUNDED BASED ON  THE INTERVIEW.

Page 1 of 4

COMPLAINT AND DEMAND FOR JURY TRIAL

186.    This specific report *was intentionally withheld* by Sage Humphries and her parents in 2017, 2018 and 2023 and was not obtained by Plaintiffs until 2023 when they subpoenaed the Orange County Sheriff's Department.

187.    On August 14th, 2017, the night before Sage Humphries' abuse prevention order hearing, the Humphries filed *another* false police report, this time with the Boston Police Department against Plaintiffs, stating the same false and fraudulent allegations within that report which the Orange County Sheriff's Department already found to be inconsistent and resulting in an unfounded report. The Humphries' *intentionally* filed this report to state they "filed" a report but never showed the contents of that report with the Court, Plaintiffs, or any other entity which would have seen that the Humphries' perjury to law enforcement was just that, perjury.

188.    Plaintiffs have had no choice but to diligently investigate and obtain documents themselves, which were not "publicly" available due to the "nature" of the reports and the (false) allegations within them; this is just one reason Plaintiffs have been unable to seek legal recourse against Defendants Micah and Michael Humphries as they knew Plaintiffs would not be able to retrieve the documents which proved they had never done any wrong to their daughter but instead, were falsely and fraudulently accused.

189.    Micah and Michael Humphries intentionally withheld these police reports for *over seven years* including in 2017, to ensure their daughter obtained an abuse

COMPLAINT AND DEMAND FOR JURY TRIAL

prevention order against Plaintiffs under false pretenses, as the abuse prevention order was the sole catalyst for the fraud they committed and the criminal acts which they would continue to commit against Plaintiffs for **years to come** including until this very day.

190.    On August 1st, 2017, after succumbing to her parents' plan, Sage Humphries filed for an emergency abuse prevention order against Plaintiffs in Massachusetts.

- The abuse prevention order is provided below whereas; the Court should note that the statements on the abuse prevention order are inconsistent with the lies stated to the police including but not limited to:

  1) The report to the police in Somerville, MA previously stated that Plaintiffs had over thirty automatic weapons, hand grenades and landmines in their apartment. Not only was this false but the report itself, provided supra, proves the allegations to be false and therefore, the Humphries not only fraudulently stated, (even after the unfounded report was provided to them on May 28th, 2017), that Plaintiffs owned firearms but exaggerated the number of weapons owned even after law enforcement stated there were no firearms at all, noted as "*has over fifty guns at home*".

  2) Sage Humphries states in section I that Plaintiffs **did not cause her to engage in sexual relations by force, threat or while under duress** which directly opposes her false police reports and the reports filed by Micah and

COMPLAINT AND DEMAND FOR JURY TRIAL

1   Michael Humphries and later, Sage Humphries' Nevada complaint

2   alleging she was raped, which is not only egregiously false but entirely

3   contradicting to the abuse prevention order which claims she was not

4   forced, threatened or under duress.



57

COMPLAINT AND DEMAND FOR JURY TRIAL

191.    As just one example of the testimony provided by Sage Humphries in 2017 during the Boston Municipal Court hearing, she states just one reason she committed fraud.

- **Sage Humphries 2017 testimony excerpt**



COMPLAINT AND DEMAND FOR JURY TRIAL

192.     On August 14th, 2017 Sage Humphries was granted a one-year extension for her abuse prevention order for one year based on fraudulent allegations, perjured testimony and her father's abuse of power as an attorney as he fraudulently forged documents and presented those documents to the Court.

**D. Defendants' First Campaign of Harassment, Defamation and Fraud Against Plaintiffs in 2017**

193.     Following the 25th of May in 2017 and the events which occurred on that day and following that day, Plaintiffs received an influx of harassment, threats and defamatory statements as a direct and proximate cause of Defendants' conduct.

194.     Defendants used anonymous accounts to leave harassing and disparaging comments on Plaintiffs' social media pages in 2017 including by creating accounts to specifically and repetitively harass Plaintiffs.

195.     Further, Micah and Michael Humphries sent false and fraudulent emails to any and all employers of Plaintiffs including but not limited to influencing and coercing third-parties to follow in their fraudulent footsteps by joining them in reaching out to every company Plaintiffs worked for including any and all sponsors and business affiliates.

196.     Micah and Michael Humphries sent copies of the newly obtained restraining orders against Plaintiffs anonymously to every employer, sponsor and business affiliate of Plaintiffs including but not limited to Red Bull, Discount

Dance, Master Ballet Academy, BLOCH Inc., Bellamoxi Dance, The Dallas Conservatory, Boston Ballet and Volcom, to name just a few examples.

197.    Defendants sent numerous emails to Discount Dance, a massive sponsor of Plaintiff Dusty Button, including copies of the restraining orders obtained in Massachusetts.

198.    Plaintiffs received two phone calls from Red Bull and Volcom stating a Michael and Micah Humphries contacted them and sent copies of restraining orders and stated that Plaintiffs were child predators who sexually abused their daughter and should not be around children.

199.    Edsall Hilty, friend of Sage Humphries, is implicated in Defendants' actions as they coerced him to take part in emailing Red Bull to falsely state that Plaintiff Dusty Button had reached out to his company (which did not exist), a competing company to Red Bull, to work for him and that he was verifying that she worked for Red Bull.

200.    These are just a few examples of the egregious conduct and acts of fraud committed by Defendants Micah and Michael Humphries.

201.    Following Defendants' online harassment campaign against Plaintiffs, Ms. Stolrow continued to spread false and defamatory lies about Plaintiffs to innumerable third parties including but not limited to ballet companies and members of ballet companies associated with Plaintiff Dusty Button.

COMPLAINT AND DEMAND FOR JURY TRIAL

202.     As a direct and proximate cause of Ms. Stolrow's false and defamatory statements, Plaintiff Dusty Button lost work with multiple companies including but not limited to affiliates of Ballet West, Youth America Grand Prix and various other dance studios who relied on her false and defamatory statements as Defendant had direct contact with third parties who were affiliates and business associates with Dusty Button.

203.     As a direct and proximate result of Defendants' conduct, Plaintiffs lost employers and sponsors associated with their respective careers as the false and defamatory statements spread to the industries, they were so well-known in.

204.     As explained further herein, Hannah Stolrow's defamation would serve as the catalyst and foundation of the false and defamatory online harassment campaign led by Sage Humphries, her parents and Madison Breshears on May 13th, 2021.

### E.  The 2018 Events

205.     Following Sage Humphries' and Defendants' attack on Plaintiffs, Plaintiffs moved from Massachusetts to California in the fall of 2017 to get as far away from Sage Humphries as possible, moving to West Hollywood, CA as there was opportunity to continue working for Red Bull and Plaintiff Taylor Button's work in the automotive industry was most profitable and convenient in Los Angeles.

COMPLAINT AND DEMAND FOR JURY TRIAL

206.     On June 11th, 2018, Sage Humphries, in collusion with Defendants Micah and Michael Humphries, filed a fraudulent police report with the Melrose Police Department in Massachusetts stating Plaintiffs hired their personal assistant to stalk Sage Humphries on social media.

207.     Plaintiffs never had a personal assistant and in fact, contacted the woman who Defendants lied about, (Kennedy Brown), who was shocked to hear her name was even mentioned in a false police report and provided testimony contradicting the lies of Defendants.

208.     On August 13th, 2018, the evening before Sage Humphries abuse prevention order renewal hearing, the Humphries' filed another false police stating Plaintiffs were selling illegal firearms in California; the report was unfounded.

209.     On August 14th, 2018 Sage Humphries was granted a permanent 209A against Appellants ex-parte as her attorney lied to the Court multiple times, stated Sage Humphries was "underage", that Plaintiffs "fed her drugs" and that they "violated" her abuse prevention order by "sending a third party to stalk her" and "selling illegal firearms"; all of which were untrue, unfounded and dismissed by law enforcement in the reports however, those reports were intentionally withheld to guarantee the granting of the permanent abuse prevention order under false pretenses.

COMPLAINT AND DEMAND FOR JURY TRIAL

210.    Plaintiffs were not notified of the hearing in 2018 as they had since moved to California in 2017, were not present for the hearing and there was no representation notified or present for Plaintiffs at the 2018 hearing where the abuse prevention order was made permanent; once again, under false and fraudulent pretenses as Sage Humphries' attorney lied to the Court stating the police reports regarding a personal assistant of Plaintiffs stalking Sage Humphries and the false allegations of Plaintiffs selling illegal firearms in California was made known to the Judge but the reports showing those allegations were unfounded were not shown to the Court therefore misleading the Court to believe the allegations to be true and issuing a permanent abuse prevention order against Plaintiffs.

211.    Plaintiffs have since appealed Ms. Humphries' abuse prevention order on the grounds of fraud on the Court after discovering the abundance of evidence which they never knew of and are scheduled for oral argument in the fall of 2024.

### F. Defendants' Second Campaign of Harassment, Defamation and Fraud Against Plaintiffs

212.    Following order being made permanent, Micah and Michael Humphries once again, sent the permanent orders to every employer, business affiliate and sponsor of Plaintiffs only this time, it was much worse.

213.    Once Sage Humphries' abuse prevention order was made permanent, Micah and Michael Humphries attempted to file criminal charges against

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs with the District Attorney in Somerville, MA by further lying to law enforcement and using Michael Humphries' degree in law to manipulate the Court into believing the fraud they were committing.

214.    After a full investigation including consideration of the permanent abuse prevention order, no charges were ever filed or pending against Plaintiffs as all of the evidence against the Humphries' proved that Plaintiffs had never committed any crime at all.

215.    Plaintiffs were not even aware of this investigation until the end of 2022 as they received discovery production from Sage Humphries' attorneys in the Nevada litigation listing the names of the officers involved.

216.    In fact, Plaintiffs took it upon themselves to call every officer and detective associated with any and all investigations to get to the bottom of the fraud committed by Defendants.

217.    Plaintiffs spoke to Detective Devin Schneider in 2023, who was previously assigned as assistant District Attorney in Somerville, for nearly two hours to discuss the Humphries' and the fraud committed against them in 2018 whereas, Plaintiffs will be providing this legally recorded phone call to the Court pending discovery of this litigation or at any time the Court deems necessary.

218.    In the fall of 2018, Defendants created anonymous social media accounts to harass and threaten Plaintiffs during the release of their business collaboration with Discount Dance, (a dancewear manufacturer and athlete sponsor of Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL

Dusty Button's) stating to a mass audience of children and their parents on their public platform that Plaintiffs were predators with restraining orders against them for sexual assault, attaching Sage Humphries' abuse prevention orders to the communications.

219.    In the fall of 2018, Plaintiffs received a phone call from director of Bellamoxi Dance, an employer of both Plaintiffs, stating they received calls from Micah and Michael Humphries regarding abuse prevention orders and that they were calling and emailing innumerable parties in the dance community and spreading false and malicious rumors about Plaintiffs.

220.    The Humphries' intention behind the abuse prevention orders was much deeper than the false and fraudulent allegations stated in Court or to law enforcement.

221.    Sage Humphries has since been deposed, in 2023, whereas, she admitted her restraining order was actually to prevent Plaintiffs from "blackmailing" her with the camera roll she uploaded, (stated above), onto Plaintiffs' hard drive.

222.    The camera roll Sage Humphries uploaded in 2017 consisted of screenshotted text messages in her camera roll between her and Daryl Katz[7], (owner of the Edmonton Oilers hockey team and one of the wealthiest men in the world), proving illegal sexual activities between the two, whereas, Daryl Katz

---

[7] https://thenevadaindependent.com/article/pellicanos-presence-adds-a-new-twist-in-ballerina-sex-exploitation-litigation ; https://variety.com/2022/film/news/anthony-pellicano-daryl-katz-marc-randazza-1235349929/ ; https://www.cbc.ca/news/canada/daryl-katz-ballerina-sex-allegations-1.6526941

COMPLAINT AND DEMAND FOR JURY TRIAL

ordered her to open a Swiss bank account that he could access with UBS in order to send Sage Humphries money, in which he sent her at least $75,000.00 in exchange for sexual favors.

223.    Sage Humphries told Plaintiffs this relationship with Katz began when she was seventeen.

224.    Micah and Michael Humphries forced their daughter to sign a restraining order against Plaintiffs to regain her freedom.

225.    Michael Humphries abused his power by falsifying documents and forcing his daughter to sign them by way of threat and intimidation.

226.    Michael Humphries used his connections to ensure his daughter's restraining order was granted as the Judge refused to look at or accept any evidence against Sage Humphries or her parents provided by Plaintiffs that day when they requested their thousands of files be filed as exhibits.

227.    As seen, *supra*, due to Sage Humphries' false allegations and inconsistencies in her story, at least on *seven different occasions*, law enforcement found her statements to be unfounded and inconsistent with the evidence of her consensual dating relationship with Plaintiffs.

228.    These statements were encouraged and, in some cases, were written by her parents, Micah and Michael Humphries to create a false and fraudulent narrative which never existed.

COMPLAINT AND DEMAND FOR JURY TRIAL

229.     Given Defendants actual knowledge of the relationship between Sage Humphries and Plaintiffs as well as their close personal and professional proximity to Sage Humphries, their repeated statements that Plaintiffs had pending criminal charges, Defendants statements were made with actual malice and/or reckless disregard for the truth which destroyed Plaintiffs' businesses, business relations, careers, and livelihoods.

230.     The importance of Defendants' role prior to their own involvement in Plaintiffs' lives in this destruction was to eliminate Plaintiffs' ability to work, thus assuring that they would be incapable of funding a defense against Sage Humphries' frivolous and malicious lawsuit filed against Plaintiffs with the singular purpose of forcing Plaintiffs to destroy evidence that federally incriminates Sage Humphries and one of the wealthiest and most prominent men in the country, Daryl Katz, (owner of the Edmonton Oilers NHL team), for illegal prostitution, which Sage Humphries verified to be authentic through her own admissions, that her mother did in fact sell herself through sexual acts and favors to Mr. Katz for the sum of $50,000.

231.     While the reasons behind Defendants' defamation remain entirely irrelevant, it remains that Defendant knew that their conspiracy was set in motion as a scheme in order to destroy Plaintiffs' reputations, careers and livelihoods prior to the onset of the Nevada litigation which was filed in 2021, as their

67

COMPLAINT AND DEMAND FOR JURY TRIAL

allegations against Plaintiffs have always been false and malicious in their entirety, and the defamatory statements made in affiliation with those allegations.

232.      Defendants intentionally attacked innocent people, at the pinnacle of their careers, while knowing they would be financially ruined and incapable of defending against the defamation of a powerful and renowned attorneys, backed by one of the most powerful firms in the country.

233.      Defendants were in possession of the evidence proving the aforementioned statements to be true in 2017 and 2018 including that Plaintiffs have never had any "pending criminal charges" against them.

234.      The statements Defendants made were intentional, willful and with actual malice and/or reckless disregard for the truth as they slandered and defamed Plaintiffs to hundreds of third parties, knowing their statements would severely harm Plaintiffs by way of knowingly making defamatory statements which they knew to be false.

235.      Defendants, in concurrence with each other and various third parties, intentionally destroyed Plaintiffs' right to due process by committing fraud and conspiring with Sage Humphries, enabling her to file frivolous and fraudulent allegations in 2017 and 2018 which in turn, provided the fuel to the fire of the Nevada litigation and the false and defamatory statements made to the media, the press and the public including any potential juror.

### G. Madison Breshears' May 13th, 2021 Defamatory and Harassing Online Campaign Against Plaintiffs

236.    As stated previously, Madison Breshears is the best friend of Hannah Stolrow; both of whom grew up with Sage Humphries.

237.    Defendant Hannah Stolrow was the direct source of false and defamatory information received by Madison Breshears who then initiated an entire online harassing and defamatory campaign against Plaintiffs.

238.    On May 13th, 2021, at approximately 6:00pm Eastern Time, Plaintiff Dusty Button was teaching a dance class to hundreds of students for her contracted employer, Braham Logan Crane at the dance convention Artists Simply Human, whereas, the dance class consisted of nearly 300 participants.

239.    Around 9:00pm EST, Dusty received an initial attack of two false and defamatory public comments on her Instagram profile page in response to a video she posted of herself dancing from Defendant's personal Instagram account with the username, @mjbreshears[8] which stated the following: "stop preying on young girls" and "feel like y'all should know she can't keep a ballet job bc she grooms young girls into sex acts with herself and her husband".

---

[8] @mjbreshears is Madison Jane Breshears' personal Instagram account who is the best friend to Defendant in this action Hannah Stolrow and Micah and Michael Humphries' daughter, Sage Humphries, who is currently a Defendant in her own litigation with Plaintiffs, whom Plaintiffs are suing in the Southern District Court of New York – case: 1:24-cv-03757-MKV.



240.    Plaintiffs did not know of, or recognize the username @mjbreshears as her

account was private and Plaintiffs did not know at the time that Ms. Breshears

was working "behind the scenes", conspiring with her best friend, Hannah

Stolrow and Sage Humphries to defame, harass and destroy Plaintiffs' lives.

241.    The verbiage and timing of this post was intentionally malicious as it was

posted at the precise date and time that Plaintiff Dusty Button was teaching

thousands of participants including but not limited to children and young dancers

during the time this defamatory post was shared to hundreds of thousands of

Plaintiffs' followers on social media and who were present in her class or at the

dance convention during that time.

COMPLAINT AND DEMAND FOR JURY TRIAL

242.     At the time of the defamatory publications, Plaintiffs were surrounded by

participants, parents and employers at the dance convention that weekend.

243.     For nearly three hours, the account @mjbreshers continued to harass,

bully and threaten Plaintiffs, repeatedly posting the same comment over and over

again on Dusty Button's profile as Plaintiffs were deleting the unwanted and

defamatory comment, until finally, Plaintiffs were forced to block and report the

account on Instagram for harassing content, limiting the account from being able

to access or comment on Plaintiffs' profiles.

244.     Within seconds of Plaintiffs blocking the account @mjbreshers, a separate

and anonymous account with the username @Real_World_Ballerina posted the

defamatory and despicable posts which led to the downfall and complete

destruction of Plaintiffs' careers, businesses, reputations and livelihoods.

245.     As previously stated, supra, the account @Real_World_Ballerina, (which

Plaintiffs discovered and confirmed in 2023, was owned and controlled by

Madison Breshears), had nearly twenty thousand followers.

246.     Nearly twenty thousand people had access to everything posted on the

account, @Real_World_Ballerina, influencing those twenty thousand followers to

repost and share the defamatory statements to hundreds of thousands of accounts

and users on virtually every social media and communication platform, (i.e.

Instagram, Facebook, Tik Tok, Snapchat, Reddit, text message, email

communication, WhatsApp, and various other platforms).

COMPLAINT AND DEMAND FOR JURY TRIAL

247.    Within seconds of Plaintiffs blocking and reporting, (what Plaintiffs now know to be Defendant's personal account), @mjbreshears, the following false and defamatory statements were posted by Madison Breshears on her anonymous yet famous account, @Real_World_Ballerina:

POST ONE BY DEFENDANT

"PSA: DUSTY BUTTON IS A PREDATOR"



POST TWO BY DEFENDANT

COMPLAINT AND DEMAND FOR JURY TRIAL

"This keeps getting removed. And she blocked me. But if you follow Dusty Button, you

should know she can't keep a ballet job because she grooms young

girls to engage in sex acts with herself and her husband".



COMPLAINT AND DEMAND FOR JURY TRIAL

## POST THREE BY DEFENDANT

"[toxic emoji], if u or someone u know has been victimized by dusty_button, u aren't
alone. She can't keep a ballet job because she grooms young dancers for sex acts with
herself and her husband. This will probably get removed, she has managed to block and
remove my other posts, but I hope at least someone can
see this [toxic emoji]".



### POST FOUR BY DEFENDANT

"I have friends who have personally been victimized, or known someone victimized by
@dusty_button. Don't give her a platform".

74
COMPLAINT AND DEMAND FOR JURY TRIAL

POST FIVE BY DEFENDANT

"I don't expect anyone to take my word on faith! This is a serious accusation, and you are

justified in being skeptical. From my end, knowing what I know (but am unable to

disclose in detail), I feel like the right thing to do is at least warn you guys. If anyone is at

least a little more careful or cautious around her,

it's worth it to me."

248.     Over the course of the next few hours, Madison Breshears continued to

post threatening and harassing statements, commenting back to anyone who

defended Plaintiffs or otherwise advised her that her statements were defamatory

and libelous.

249.    Rather than Ms. Breshears removing the defamatory posts, she stated she had "evidence" and "proof" of her defamatory statements that she would post and for her followers to "keep an eye out", yet she failed to follow through with these claims to date.

250.    Ms. Breshears never had "evidence" or "proof" and in fact, her "evidence" consisted only of Defendant Stolrow's statements made to her as she conspired with the Humphries against Plaintiffs, later described herein, discovered on May 27th, 2024 through a legally recorded phone call between Ms. Breshears and Plaintiffs.

251.    Ms. Breshears knew that her statements were false and defamatory as she intentionally destroyed Plaintiffs and their businesses, as well as their business relationships, causing intentional irreparable harm, knowing her statements were in and of themselves, false and defamatory and that she was in fact, "ruining" Plaintiffs' lives by posting these defamatory statements, (as seen in the forementioned comments and photos) but made them anyway, in conspiracy with her best friend, Hannah Stolrow.

252.    As stated previously, Ms. Breshears' anonymous account with the username, @Real_World_Ballerina, had amassed nearly twenty thousand followers.

253.    Ms. Breshears' personal account, @mjbreshears, had just a tiny portion of those followers at around one thousand.

COMPLAINT AND DEMAND FOR JURY TRIAL

254.      Madison Breshears intentionally used the anonymous account @Real_World_Ballerina as the platform to post harmful, false and defamatory statements as she knew it would "ruin" Plaintiffs' lives, as the damage and destruction would be detrimental to Plaintiffs, rather than posting these defamatory statements from her personal account which had no impact on the dance industry, or any industry for that matter.

255.      Plaintiff Dusty Button had nearly half of a million followers on Instagram, all of whom saw these defamatory statements, whereas employment, which was generated from Plaintiffs' Instagram page, (used for marketing products and services), entirely imploded in the weeks following Madison Breshears' defamatory posts.

256.      Additionally, Dusty Button had over thirty fan pages created by other users who admired and idolized her and who routinely reposted photos of Dusty and events where she would be performing.

257.      Due to Defendants' conduct in conspiracy with Madison Breshears, nearly all of Dusty's fan pages were transitioned and converted to "Dusty Button Hate" pages, reposting the defamatory statements posted by Madison Breshears and additionally, attracting hateful, harassing, defamatory and threatening comments as a direct result of Madison Breshears' defamatory and malicious statements.

258.      Plaintiff Taylor Button had nearly half of a million followers on his Instagram account, all of whom saw these defamatory statements, whereas work,

COMPLAINT AND DEMAND FOR JURY TRIAL

which was generated from Plaintiffs' page, (used for marketing products and

services), entirely imploded in the weeks following Madison Breshears'

defamatory post.

259.     Plaintiffs began receiving death threats, death threats to family members,

family members' communications that they, themselves had received physical

threats of harm and death threats and other threatening and harassing public and

private messages as a direct result of Defendants' conduct.

260.     Ms. Breshears' defamatory statements about Plaintiffs were reposted

hundreds of thousands of times, as the posts went viral, just as Defendants'

conspired and planned.

261.     The defamatory posts were sent to every employer, contractor, sponsor,

co-worker, associate, friend and family member of Plaintiffs including by

Defendants, themselves, in an attempt to spread the defamation across the largest

platform possible.

262.     Plaintiff Dusty Button has never lost work or been unable to "keep a ballet

job" due to "grooming young dancers for sex acts with herself and her husband".

263.     Plaintiff Taylor Button has never lost work or been unable to keep a job

due to "sex acts" with young dancers who were "groomed" by his wife or himself.

264.     The statement made by Madison Breshears from her personal account

@mjbreshears "stop preying on young girls" was deliberately and intentionally

COMPLAINT AND DEMAND FOR JURY TRIAL

meant to harm Plaintiffs, knowing her statement was false and spread further by Defendants via word of mouth, online and print.

265.    Plaintiffs have never preyed on anyone; the defamatory statement which included the words "young girls", in reference to children, were intentionally chosen by Defendant, while she knew her statements were false and defamatory to fit the narrative provided by the Humphries and Ms. Stolrow.

266.    Defendants, in conspiracy with Madison Breshears, intentionally inflicted harm on Plaintiffs by choosing words that would frighten children and the parents of those attending the May 13th dance convention, as Dusty was teaching thousands of participants, including children and "young girls".

267.    The defamatory statements were seen by millions of viewers through the internet, social media platforms and messaging platforms as the post went viral on social media, accumulating more than half a million views including any and all followers of Plaintiffs Dusty and Taylor Button in the dance and automotive industries.

268.    These defamatory posts were reposted and shared hundreds of thousands of times including as attachments to emails and messages sent to Plaintiffs' sponsors, employers, contractors, co-workers, friends and family.

269.    Plaintiffs were prevented from confirming that Defendant's anonymous account, @Real_World_Ballerina, was owned and controlled by her until the fall of 2023.

COMPLAINT AND DEMAND FOR JURY TRIAL

270.     Madison Breshears has since deleted any and all evidence of her

defamatory statements and posts from the anonymous account

@Real_World_Ballerina constituting spoilation of evidence as she knew her

statements were defamatory and libelous when "ruining" Plaintiffs' lives.

271.     Plaintiffs have since filed a lawsuit on May 13th, 2024 against Madison

Breshears in the Southern District Court of New York (1:24-cv-03757-MKV), for

claims of defamation per se, injurious falsehood, civil conspiracy and cyber

harassment amongst others.

### K.  The Aftermath of Madison Breshears' Defamatory Statements and Conspiracy with Defendants in this Action

272.     The impact of Defendants Micah and Michael Humphries' and Ms.

Stolrow's conspiracy to defame and harass Plaintiffs by ensuring defamatory

posts and statements were posted about Plaintiffs to millions of viewers was

*catastrophic* to Plaintiffs' business as they received hundreds of messages directly

following her defamatory post canceling any and all contracted work and

sponsorships for the foreseeable future.

273.     This resulted in millions of dollars lost in revenue, assets and income, as

Plaintiffs' businesses were destroyed.

274.     As seen, *supra*, Plaintiffs themselves, were their business, contracted by

numerous private contractors which immediately ceased working with Plaintiffs

following the May 13th Instagram post, including but not limited to contractors

and sponsors who had not only employed and worked with Plaintiffs for over fifteen years, but who immediately disassociated themselves from Plaintiffs.

275.     Through the night of May 13th, 2021, Plaintiffs alternated sleeping to manage and check each other's phones which were full of notifications from social media, email and messaging platforms.

276.     Plaintiffs were sent death threats and harassing messages, as hundreds of thousands of accounts reposted Defendants' conduct and Madison Breshears' defamatory post.

277.     Following Madison Breshears' defamatory posts, Plaintiffs were harassed so much so, that they received death threats and other extremely distressing comments and messages from various third parties as seen below:

- "Hey Dusty! I hope prison is everything you hope for! Maybe those tilts and competition tricks will come in handy behind bars?! Best of luck!" – Instagram user - @lauramarbs



COMPLAINT AND DEMAND FOR JURY TRIAL

- "@schonraker_foto him and the missus have been too busy BF'n[9] little girls to make social media posts it would appear" – Instagram user @the_mechanicalanimal.



- "Hi! According to a recent post by @real_world_ballerina, dusty button is a predator who is not someone people should be looking up to! Just spreading the word." – Instagram User - @cheryltanxr



_____

[9] *BF'n – abbreviation for "butt fucking" but which means "sodomizing"; in this case, a female child.

• "#dustybutton You child rap1st[10] P#S[11]. You need to be thrown in a wood chipper."

– Instagram User - @dunerooster

• "Child rapist POS[12]. You need to be thrown in a wood chipper." –

Instagram User - @dunerooster



278.    As another example, (as depicted by the screenshot below), following the

initial post, numerous hate pages and accounts were created by Defendants,

Madison Breshears, their followers and various other third parties to bully, harass

and threaten Plaintiffs as a direct result of Madison Breshears' defamatory posts

and remarks and Defendants' conspiracy in posting them.

---

[10]Rap1st = rapist.
[11] P#S = Piece of shit.
[12] POS = piece of shit.



279.    This is just a fraction of the communications, notifications, threats and harassment which Plaintiffs received following Madison Breshears' defamatory post, all of which Plaintiffs have documented and preserved for discovery.

280.    At approximately midnight, Plaintiffs were contacted by the wife of the owner of Artists Simply Human, Brianna Valenti Crane, who immediately stated she was made aware of the post.

281.    At this time, Plaintiffs were completely devastated and distraught that Ms. Breshears had posted such egregious, disgusting and untrue statements, later discovering that it was again, Defendants' Micah and Michael Humphries who were the catalyst just as they were in 2017, 2018 and 2019.

282.    Ms. Crane stated she knew the defamatory statements were entirely false and meant to destroy Plaintiffs but suspected the defamatory statements were stemming from a conspired effort with Plaintiffs' ex-girlfriend from 2017, Sage Humphries, her parents Micah and Michael Humphries and Defendant Hannah Stolrow, who was also Ms. Breshears' best friend and who had previously harassed, threatened and defamed Plaintiffs in 2017 with similar defamatory remarks sent to every employer and sponsor of Plaintiffs, one of which was Ms. Crane herself.

283.    Plaintiff Dusty Button was asked by Ms. Crane to continue with the weekend as scheduled in an attempt to minimize the damage that this online attack would do to harm her company, thus teaching her next dance class at 8am on May 14th.

284.    On May 14th, 2021, the harassment, threats and reposts of Madison Breshears' defamatory post only continued and in fact, worsened as Plaintiffs were forced to endure one of the most difficult days of their lives, walking through a dance convention full of thousands of participants; including parents, dance studio owners, teachers and children, all of whom had seen the defamatory

COMPLAINT AND DEMAND FOR JURY TRIAL

post from the night before which stated Plaintiffs "preyed on young girls and dancers" and that Plaintiff Dusty Button could not "keep a ballet job" because she "grooms young dancers for sex acts with herself and her husband" thus believing that the people they once idolized were criminals.

285.    Madison Breshears' defamatory posts were intentional as she was aware her statements were false and defamatory, knew the consequences of her intentionally harmful statements and that the damage to Plaintiffs' reputations and business would be so catastrophic that it would, (in her own words), ruin their lives through irreparable damage.

286.    At 8am on May 14th, 2021, Plaintiff Dusty Button taught her scheduled ballet class to a senior group of dancers aged fifteen and up, (including adults), whereas, it was one of the most traumatizing experiences Plaintiffs endured, as during the entirety of the class, both Plaintiffs' phones were receiving hundreds of thousands of notifications regarding the defamatory post by Madison Breshears.

287.    On the evening of May 14th, 2021, Plaintiffs met with the owner of Artists Simply Human, away from the chaos of the dance convention created by Madison Breshears, at the restaurant Milkboy, located at 1100 *Chestnut Street in Philadelphia, Pa to discuss the defamatory post which had already circulated and widely spread to hundreds of thousands of people and which had already been emailed to the company.*

COMPLAINT AND DEMAND FOR JURY TRIAL

288.     During the meeting with owner and director, Braham Logan Crane, Plaintiff Dusty Button was informed that she would not be allowed to teach the rest of her scheduled classes for the weekend and was temporarily suspended from the rest of the season to assess how everything "panned out".

289.     Three weeks later, Dusty Button received an email from Braham Logan Crane prematurely terminating her contract indefinitely as a direct result of Madison Breshears' defamatory publications, resulting in a loss of half of a million dollars as a result of her long term contract with Artists Simply Human and the endorsements that revolved around it.

290.     While every statement made by Madison Breshears was false in its entirety, the core facts of Plaintiffs', (whom these statements were made about), were equally inaccurate and false, which Madison Breshears had actual knowledge of including because her sources were Hannah Stolrow, Sage Humphries and Micah and Michael Humphries.

291.     Defendant stated that Plaintiff Taylor Button abused his power in the dance industry when in fact, he was not even involved in the dance industry in any capacity and in fact, was, until this defamation destroyed his business, a leading designer and builder of world-renowned Ferraris, race cars and military vehicles within the motorsport and automotive industry abroad.

292.     Since making such false, malicious, and defamatory statements, numerous media outlets around the world have continued to quote Madison Breshears by

COMPLAINT AND DEMAND FOR JURY TRIAL

wrongfully posting that Plaintiffs raped, groomed, sexually assaulted, drugged and trafficked young girls and dancers including by using these defamatory and egregious statements from 2021 as leverage and grounds for Madison Breshears' friend, Sage Humphries, to gain media attention leading up to the filing of her civil complaint against Plaintiffs on July 28th, 2021.

293.    At the time the events took place, Plaintiffs failed to understand that Ms. Breshears was actually conspiring with Sage Humphries, her parents and Defendant Stolrow to generate public momentum for Sage Humphries' malicious lawsuit which was filed against Plaintiffs three months later, in order for Ms. Humphries to gain media coverage and traction for her case, as well as cripple Plaintiffs finances and business, as it immediately terminated any and all employment for both Plaintiffs, intentionally and severely hindering them from being able to fund a defense against fraud for themselves.

294.    Defendants' defamatory post and the comments which followed were so traumatizing to Plaintiffs that they nearly, strategically took their own lives following the realization that regardless of the egregious, malicious and defamatory nature of the attack they were suffering, their lives and lifelong work would never recover once the world learned the truth, that they were exemplary models for those who idolized them.

295.    Defendants knew that Plaintiffs would suffer extreme mental anguish and destruction to their reputations and business but chose to intentionally harm them

anyway; in such a way that they would not be able to recover mentally, spiritually or financially.

296.    As a direct result of Madison Breshears' defamatory statements and Defendants' conspiracy and defamation, Plaintiffs' business, careers, reputations, livelihood and ability to generate income was completely destroyed.

297.    As one example, Plaintiffs received numerous emails, text messages and other communications from their sponsors, employers and contractors cancelling any and all work as a direct cause of Madison Breshears' defamatory post.

- **The following is a text message from Bree Hafen to Dusty Button, notifying Plaintiff of terminated agreement and negotiations regarding a collaboration.**



COMPLAINT AND DEMAND FOR JURY TRIAL

- **Text message from Shelby Richardson to Dusty Button, notifying Plaintiff of termination of employment.**



- **Text message from Jacqueline Porter, (with the Dallas Conservatory), to Dusty Button, notifying Plaintiff of termination of employment.**

91
COMPLAINT AND DEMAND FOR JURY TRIAL

298.     These messages are just an example and a tiny fraction of what Plaintiffs suffered by way of loss of business and employment.

299.     As another example; as a direct result of Defendants' conspiracy and Madison Breshears' defamatory post, an entire forum discussion was started to additionally defame, harass and threaten Plaintiffs, and additionally update the forum on cancelled business in which third parties were conspiring with Madison Breshears and Sage Humphries to send defamatory messages to Plaintiffs' employers, contractors and sponsors as seen in just a few examples below:



300.     As a direct result of Defendants' conspiracy and collusion with Madison

Breshears' and the defamatory posts which were made, an entire Reddit

discussion was created to further spread this defamation, harass, shame, embarass

and threaten Plaintiffs including defamatory posts from "anonymous" users

associated with Madison Breshears, Cat Cogliandro and Sage Humphries which

further destroyed the reputations of Plaintiffs including but not limited to the

following screenshots below:

COMPLAINT AND DEMAND FOR JURY TRIAL

- "I heard her and her husband had an underage prostitute overdose in their room in
  Vegas" – anonymous user on Reddit known as u/dancerd13.



- Reddit thread created to defame Plaintiffs as a direct result of Madison Breshears'
  false and defamatory statements – Username @scarletdancer.



94
COMPLAINT AND DEMAND FOR JURY TRIAL

301.    Further examples of defamatory and harassing posts as a direct result of Defendants' false and defamatory remarks are below from Defendant Micah Humphries good friend:

- "Now that it's finally public that Dusty Button is a sexual predator, don't you think it's time ya'll stop following her on Instagram? That your children stop following her? That your company stops following her? Who we follow is a reflection of our own values. Do you share the values of a sexual predator?" – Username: Kim Comelek



302.        "Yikes. Who MAKES us set goals that we can ONLY reach with them"

[eye roll emoji]. Yeah, congrats on achieving your abuse goals. Wonder if

sexually assaulting minors was worth your career dissolving over. You're not

enough for him; you never were, never will be. You can not be the missing piece

for a sociopath and pedophile."



- "like not to be crazy but can we tag all her recent gigs and any other dance

    competitions bc she shouldn't be working with children". –Instagram user

    @bae.hamas.

    - *"Pedo" – Instagram user @royalt_xo*



- *"Care to address your partnership with @dusty_button considering the latest accusations against her?" – Instagram user @blossomandbranchfam to Plaintiff's sponsor BLOCH Inc.*



303.    The defamatory posts by Madison Breshears were collectively reposted hundreds of thousands of times and additionally exaggerated and manipulated, constituting further harassment and defamation to Plaintiffs as a direct result of Defendant's malicious conduct.

304.    Importantly, the decisions of those to selectively repost the defamatory statements made by Madison Breshears, explicitly and falsely stating that Plaintiffs preyed on young girls and dancers to groom them for sex acts with each other, further evidences the widespread impact of false information initiated by

Madison Breshears' defamatory remarks and further spread through Defendants' own social media accounts, through email and by word of mouth.

305.    Relying on the defamatory statements made by Defendants, numerous third parties published that Plaintiffs were "child rapists", "pedophiles", "predators", "sexual deviants", "groomers", "dangerous, and "should not be around children", amongst many other egregious and despicable descriptions, as a direct result of Defendant's defamatory remarks.

306.    As another example, Gina Jones, a user on Reddit, falsely stated that Plaintiffs were criminally charged and indicted in the state of Nevada, demanding others to call the owners of one of the largest motorsport events on the planet, (that Plaintiff Taylor Button headlined each year), SEMA, where Plaintiffs were scheduled to make a guest appearance and debut another world-renowned vehicle for the dozens of sponsors and employers that they were contracted to.

307.    Plaintiff Taylor Button's appearance and business at SEMA was cancelled, as a direct result of Defendants' defamation, thus prematurely breaching his contracts to dozens of sponsors resulting in repossessions and accrued debt.

308.    The above-referenced posts, reposts, forum discussions and messages, are only a mere *fraction* of the social media posts and articles that *have surfaced since* the release of Madison Breshears' defamatory post on May 13th, 2021 as a direct and proximate result of Defendants' conspiracy against Plaintiffs.

COMPLAINT AND DEMAND FOR JURY TRIAL

309.      Defendants' false and defamatory statements about Plaintiffs immediately

spread like wildfire, as hundreds of thousands of third parties repeated and

reposted the defamatory statements to countless viewers.

310.      All of the above-referenced defamatory posts and statements have resulted

in damages to Plaintiffs due to the false and misleading statements posted by

Defendant and in subsequent posts and reporting by Defendant and other outlets.

### i. BLOCH INC

311.      BLOCH INC. was one of Plaintiff Dusty Buttons largest sponsors in the

dance industry, whereas Plaintiff was the face of BLOCH INC for many years and

included a fifteen-year relationship from the time Plaintiff was sixteen years old.

312.      On or around July 28th, 2021, Defendant Micah Humphries took to social

media to intentionally embarrass, harass and defame Plaintiffs.

313.      Defendants' comments were not discovered until discovery of the Nevada

litigation was in process in 2022.

314.      Defendant Micah Humphries posted false and defamatory statements with

actual malice, publicly, to over half a million people to intentionally harm

Plaintiffs and to embarrass Plaintiffs by leading the public to believe the

disgusting and defamatory rumors Defendant so proudly boasted on the public

page of one of Plaintiff Dusty Button's biggest sponsors and who held a fifteen-

year relationship with Plaintiff.

COMPLAINT AND DEMAND FOR JURY TRIAL

315.    Defendant knew that her statements were false but made her defamatory and malicious statements anyway.

316.    Defendant conspired with third parties, including her daughter and additionally coerced third parties to post defamatory statements against Plaintiffs.

317.    Micah Humphries posted the following statement on BLOCH INC's largest Instagram account which sponsored and highlighted Plaintiff Dusty Button on a regular basis:

- @micahhumphries stated "While we appreciate your stand and support now .... Just up until a few days ago, You had dusty button on your Instagram account in one of your header pink circles. We had heard, over the last few years, that people had tried to reach out and warn you about her and her husbands deviant behavior, yet, you still chose to continue to give her a platform, not only a platform but opportunity and access to other dancers. I hope that your company will make better choices in the future."

- Micah Humphries exposes her conspiracy and involvement in terminating Plaintiff Dusty Button's relationship with BLOCH INC by stating, "*we had heard, over the last few years, that people had tried to reach out and warn you about her and her husbands deviant behavior, yet, you still chose to continue to give her a platform*".

- Micah Humphries was the direct source of who "reached out" to "warn" BLOCH as Plaintiffs already had proof of Defendants' behavior and defamatory statements

COMPLAINT AND DEMAND FOR JURY TRIAL

made to BLOCH INC. but posed as a third-party who "had heard" about Plaintiffs "behavior", which is precisely the demeanor and verbiage used when Micah and Michael Humphries sent a text message to Plaintiffs "warning them" that they would "expose" their "predatory behavior" to the media and "go public", in 2017.

- Four years later, Micah and Michael Humphries did exactly what was stated in their text message to Plaintiffs so many years prior, after years of no contact, to harass, defame and destroy their lives.

- Plaintiffs already had correspondence with BLOCH INC in 2017 and again in 2018 regarding Ms. Humphries and her parents' conspiracy whereas, BLOCH INC had a lengthy discussion with Plaintiffs regarding the abuse prevention order which was sent to them by "anonymous" third parties, later confirmed to be Defendants and affiliates of Defendants including but not limited to Sage Humphries' mother, Micah Humphries.

- Micah Humphries is directly responsible for recklessness and negligence of her own daughter's claims in addition to her own defamatory, false and malicious statements made online and to innumerable third parties.

- Micah Humphries is **directly responsible** for the termination and disassociation of BLOCH INC with Plaintiffs.

      **i.  Master Ballet Academy**

COMPLAINT AND DEMAND FOR JURY TRIAL

318.     Micah Humphries is directly responsible for the termination and disassociation of Plaintiffs' affiliation, contractual agreements and employment with Master Ballet Academy.

319.     Master Ballet Academy is a dance studio in Arizona whereas, Plaintiff was a former guest teacher for that studio.

320.     Defendants provided copies of their daughter's restraining orders by mail and/or email to all of Plaintiffs' sponsors, employers, business affiliates and various other third parties including but not limited to Slawomir Wozniak, owner of Master Ballet Academy in 2017 and 2018.

321.     Sage Humphries' abuse prevention order from 2017 verifies that she was not threatened, forced or under duress at the time she was in a relationship with Plaintiffs; this abuse prevention order was in the possession of Defendants and was additionally and specifically provided to innumerable sponsors, employers and affiliates of Plaintiffs including but not limited to Master Ballet Academy via email, resulting in the termination of Dusty Button's affiliation and employment with Master Ballet Academy indefinitely.

322.     Slawomir Wozniak, (owner of Master Ballet Academy), sent Plaintiffs an email on February 27th, 2023, confirming Sage Humphries' abuse prevention order was "anonymously" emailed to him from an email account Plaintiffs now know to be associated with Sage Humphries and Defendants, Micah and Michael Humphries.

COMPLAINT AND DEMAND FOR JURY TRIAL

323.     As shown in the email provided, the "anonymous" party intentionally and specifically refers to "children" in the email and included copies of the abuse prevention order Sage Humphries obtained at nearly twenty years of age.

324.     Defendants' mention of Plaintiff Dusty Button's work with children was entirely irrelevant to Plaintiffs' relationship with Sage Humphries years prior but the verbiage of the email planned to intentionally harm Plaintiffs and resulted in the termination of Plaintiff Dusty Button's relationship with Slawomir Wozniak and Master Ballet Academy as they intentionally stated that "children's safety is paramount".

325.     The email which was sent to Plaintiffs from Slawomir Wozniak is shown below and is just one example of the egregious false and defamatory statements made by Defendants and associated third parties as a result of Defendants' conduct:

To: <swballet@gmail.com>

--------- Forwarded message ---------
From: **Dr. Rosen** <internationalballetsociety@gmail.com>
Date: Thu, Sep 7, 2017 at 3:29 AM
Subject: Dusty Button important information
To: littleunicornproductions@gmail.com

Due to the nature of your work with children and a possible affiliation with a Dusty Button and her husband who goes by the alias Mitch Button we wanted to notify you of a restraining order issued against Dusty and Mr. Moore (aka Mitch Button). Children safety is paramount and the seriousness and details of the order of protection were shocking enough for a judge warrant the order and to warn you. Below is a copy of the order of protection against Dusty Button from another young aspiring dancer she and her husband attempted to mentor. The same pattern was evident with another young dancer at the Boston Ballet as well.

326.    Upon the forementioned email being sent to Slawomir Wozniak and as a direct result of Defendants' defamatory statements and conduct, Plaintiff Dusty Button received an email stating they could no longer be associated with Plaintiff Dusty Button and terminated her scheduled teaching engagement at Master Ballet Academy.

327.    The screenshot of the email received by Plaintiff Dusty Button from Master Academy is shown below:

104
COMPLAINT AND DEMAND FOR JURY TRIAL



328.    Not by coincidence, the date of this email terminating Dusty Button's contract and stating "it is in our best interest to make sure your name is not associated with our event this year" is direct proof that Defendants conspired and defamed Plaintiffs to ensure Plaintiffs' careers, reputations, business relations, employment and sponsorships were destroyed.

329.    Not by coincidence, the date of this email terminating Dusty Button's contract and stating "it is in our best interest to make sure your name is not associated with our event this year" is direct proof that Defendants conspired with Sage Humphries to ensure Plaintiffs' careers, reputations, business relations, employment and sponsorships were destroyed.

330.    August 14th, 2018 is the precise date in which Sage Humphries received her permanent abuse prevention order at an ex-parte hearing by lying to the Court and withholding documents which proved she was lying whereas, Plaintiffs were not present to defend themselves and equally had no representation present.

331.    Defendants intentionally, willfully and maliciously harmed Plaintiffs including by manipulating the narrative to encourage any affiliate of Plaintiffs should be afraid of them.

332.    The forementioned statements and emails are just a fraction of what was sent to Master Ballet Academy and which ended the relationship between the studio, Slawomir Wozniak and Plaintiffs.

333.    Defendant Micah Humphries is directly responsible for creating a hate group on Facebook which was directed at Plaintiffs to encourage a mass audience on social media to defame, harass, threaten and disassociate from Plaintiffs.

334.    Defendant knew her conduct was egregious as she continued to eagerly and aggressively pursue Plaintiffs by destroying their reputations, careers and livelihoods through false and defamatory statements.

### H. The 2021 Nevada District Court Matters

335.     On July 28th, 2021, Sage Humphries, (Plaintiffs ex-girlfriend) and Gina Menichino, (former dance student at Centerstage Dance Academy in Florida over fourteen years ago), filed a (frivolous and malicious), civil complaint against Plaintiff in this case, Taylor Button[13].

336.      Plaintiffs discovered through the headlining front-page publishing of The New York Times[14] that this complaint was filed, *prior* to Plaintiff Taylor Button *even being served*[15].

337.     The allegations brought forth by Sage Humphries and Gina Menichino are false in their entirety however, these complaints prove Jane Doe's fraud further, as her false and defamatory allegations and statements about Plaintiffs *are not* supported by their allegations *even if* the allegations were true, (they are not).

338.     On September 23rd, 2021, Plaintiffs were met with an amended complaint which included (false) allegations from Plaintiff Taylor Button's ex-girlfriend Danielle Gutierrez and Rosemarie DeAngelo, (another woman from the same dance studio in 2009), and **a woman they have never met**, Jane Doe.[16]

---

[13] See Nevada District Court Case: 2:21-cv-01412-ART-EJY
[14] Plaintiffs have filed a lawsuit in the Southern District Court of New York against The New York Times Company – see case 1:24-cv-5888-UA which includes claims against the attorneys of Sage Humphries for colluding with the media amongst other claims.
[15] https://www.nytimes.com/2021/07/29/arts/dance/mitchell-button-dusty-button-abuse.html - New York Times article published on July 29th, 2021 prior to Taylor Button ever being served with the complaint.
[16] Sigrid McCawley originally filed Jane Doe 1 as Jane Doe 100 in order to lead the public to believe there were hundreds of victims, sensationalizing the complaint for the media. On February 2nd, 2023, the Court ordered Ms. McCawley to refer to Jane Doe 100 as Jane Doe 1.

COMPLAINT AND DEMAND FOR JURY TRIAL

339.    The allegations brought forth by the litigants in the amended complaint are false in their entirety however, the allegations brought forth by Danielle Dominguez and Rosemarie DeAngelo prove Jane Doe's defamation further, as her false and defamatory allegations and statements about Plaintiffs *are not* supported by either of the other women's allegations *even if* the allegations in the complaint were true, (they are not); and the *significant* difference here is that **Plaintiffs have never met or heard of Jane Doe,** as she is a *total stranger*.

340.    Plaintiff Dusty Button has never met Danielle Gutierrez or Rosemarie DeAngelo.

341.    On December 13th, 2021, Plaintiffs were **again**, met with an amended complaint; "The Second Amended Complaint", whereas two more litigants were added, Plaintiff Taylor Button's ex-girlfriend's best friend, Jane Doe 2[17] and former Plaintiffs, now **Defendant in a separate action[18]**, Juliet Doherty.

342.    On July 8th of 2022, Plaintiffs first filed a Third-Party Complaint and Counterclaims. (ECF No. 54) whereas, they brought civil conspiracy claims against Michael and Micah Humphries.

---

[17] Sigrid McCawley originally filed Jane Doe 2 as Jane Doe 200 in order to lead the public to believe there were hundreds of victims, sensationalizing the complaint for the media. On February 2nd, 2023, the Court ordered Ms. McCawley to refer to Jane Doe 200 as Jane Doe 2.

[18] Plaintiffs are suing former Plaintiff in Nevada after voluntarily dismissal; Juliet Doherty for malicious prosecution amongst other causes of action in the Southern District Court of New York; case: 1:24-cv-05026-JPC.

343.    On February 2nd, 2023, the Nevada District Court heard oral argument on pending issues including Plaintiffs' claims against Micah and Michael Humphries, providing supplementation of their claim with supporting documents which included the July 22nd, 2017 police report, as seen above and the text messages between Sage and her mother, seen above.

344.    The Court ultimately dismissed the claims against Micah and Michael Humphries however, the claims were purely dismissed due to lack of jurisdiction, Micah and Michael Humphries were dismissed, though the Court stated:

"Okay. As to the -- to the Humphries' motion to dismiss the Buttons' third-party Complaint and counterclaim, I am going to grant that motion in part and then defer on the defamation claim. So let me just explain. Claim 1 is the equitable contribution claim, and I'm going to grant the motion to dismiss on that for lack of personal jurisdiction of the Humphries. **I realize to the Buttons that's a frustration**, but I do -- I believe that it's conceded that the Court lacks general jurisdiction over the Humphries because they don't live here in Nevada where they're being sued and that there's just an inadequate basis -- or there's no basis so far to say that there's specific jurisdiction over them. The law requires that there's sort of a factual basis to show that they have availed themselves to suit in Nevada by directing their activities here or availing themselves of the jurisdiction, and that's a fact-intensive analysis, but I don't think that there's a factual

basis to move forward. And I don't actually think that there's a factual

basis to explore that issue more in discovery, given what the record

indicates so far about them and their conduct. So I'm going to dismiss that

equitable contribution claim based on lack of personal jurisdiction, and

because I'm dismissing based on lack of personal jurisdiction […].

And then there's a motion -- the Buttons have a motion to supplement,

which is ECF Number 71, to supplement their response to the motion to

dismiss. In order -- there's good cause to require them to supplement. **I

just want to make clear to you that I actually reviewed the document,

so I know what it says**, but I am going to deny it because I do believe that

it's not -- it's not relevant to my determination in terms of having

additional facts when I'm deciding that the equitable contribution claims

fails as a matter of law. And so I'm going to deny that motion either for

lack of good cause and/or because it's moot given my disposition on the

claim."

345.    Honorable Judge Traum made it clear that the dismissal of Plaintiffs'

claims against the Humphries was in no way due to any other reason aside from

lack of jurisdiction including by stating she "understood [Plaintiffs] frustration

and that she "reviewed the document so [she knew] what it [said].

346.    Plaintiffs attempted seek legal recourse and some sort of relief against

Micah and Michael Humphries in 2022 through a third-party complaint as it was

their only means to do so *during pending litigation* but have been unable to seek the justice they deserve due to the Humphries' continued harassment following the dismissal of their Nevada claims, including that Plaintiffs subpoenaed the Humphries for production of documents during the discovery process but received little to no documents requested as they were immediately represented by their daughter's attorneys from Boies Schiller & Flexner who assisted them in withholding documents from Plaintiffs as they again, concealed their fraud.

347.    On February 24th, 2023, former Plaintiff Juliet Doherty[19] voluntarily dismissed her claims against Dusty and Taylor Button, the day after she received her requests for admissions from Plaintiffs.

348.    The allegations brought forth by Juliet Doherty and Jane Doe 2 are false in their entirety *however,* the complaints from the two women prove Jane Doe's fraud further as her false and malicious allegations *are not* supported by either woman's allegations *even if* the allegations in the complaint were true, (they are not).

349.    Plaintiff Dusty Button has never met Jane Doe 2.

---

[19] Plaintiffs have filed a lawsuit against former Plaintiff Juliet Doherty in the Southern District of New York for sexual assault and malicious prosecution amongst other claims, as well as her mother Krista King-Doherty and dance photographer, Luis Pons on claims of defamation and civil conspiracy including with the Humphries – case 1:24-cv-05026-JPC.

350.    Defendants conspired with Sage Humphries to commit fraud prior to filing her complaint and her continuance in actually committing that fraud which she is continuing today.

351.    Defendants took active steps in aiding and abetting Sage Humphries in contribution to her success in defrauding the Court.

352.    Defendants lied to law enforcement to create a false and defamatory narrative against Plaintiffs on at least seven different occasions that Plaintiffs are aware of.

353.    Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

354.    Allowing Defendants to do so would be **unjust**.

355.    Defendants took active steps to prevent the Buttons from commencing this lawsuit before now, including by withholding imperative documents which were Court ordered and requested via subpoena, concealing evidence of fraud, aiding and abetting fraud, failing to perform duties which would have protected and warned Plaintiffs of the harm intended against them and ultimately resulting in the false allegations, defamatory remarks and media posts which defamed the good names of Plaintiffs in their respective industries whereas, if it were not for Defendants' actions and/or lack thereof, Sage Humphries would have been prevented from causing the severe harm to Plaintiffs, who lost everything due to the false and heinous allegations and who have been in pending litigation with

Sage Humphries for over seven years, but prevented from seeking recourse against the Defendants in this litigation until now as a direct and proximate result of their conduct.

356.    Plaintiffs continue to suffer mental anguish, severe emotional distress, complete loss of income, damage to their reputations and careers and the inability to generate any income as a direct and proximate result of Defendants' egregious conduct including that they are still involved in pending litigation with Sage Humphries as of the date and time of this complaint being filed, August 7th, 2024.

### I.    Kathryne Meyer's Involvement and Fraudulent Actions

357.    Kathryne Meyer knowingly and willingly assisted Sage Humphries in her pursuit of her relationship with Plaintiffs while simultaneously playing the role of a therapist hired to intervene and/or convince Sage Humphries to end a relationship which she initiated with Plaintiffs.

358.    At the time Sage Humphries was forced to see Kathryne Meyer for therapy, Defendant allowed Sage Humphries to use her phone on at least two occasions to contact and talk to Plaintiffs.

359.    Ms. Meyer knew that Ms. Humphries' desire was to be in a relationship with Plaintiffs which is why she allowed Ms. Humphries to use her phone to contact Plaintiffs behind her parents' back, knowing Micah and Michael Humphries were conspiring to commit multiple criminal acts, including lying to law enforcement about their daughter's relationship with Plaintiffs while knowing

COMPLAINT AND DEMAND FOR JURY TRIAL

and allowing their daughter to contact Plaintiffs at the sessions her parents were forcing her to go to.

360.    On at least two occasions, Sage Humphries used Kathryne Meyer's personal phone to call Plaintiffs while they were in Australia; each call was nearly an hour in length, rendering the entirety of her therapy session.

361.    Instead of Sage Humphries receiving the therapy her parents forced her into, she was spending those sessions contacting Plaintiffs and pleading for them to "save her" and to "come get her".

362.    Ms. Meyer knew and assisted both Sage Humphries and her parents, Micah and Michael Humphries with their separate plans.

363.    Once Ms. Meyer knew of Micah and Michael's plans to defame Plaintiffs and file false police reports against them, (thereby committing numerous criminal acts), she had a duty to warn and protect Plaintiffs from the fraud she knew would be or had been committed against Plaintiffs.

364.    During the course of the Nevada litigation, Sage Humphries stated that she later informed Kathryne Meyer that she had been raped by Plaintiffs during her therapy sessions but that Ms. Meyer failed to report it to authorities; and that because so much time has passed, there is no longer any record of Sage Humphries' admission to Ms. Meyer.

COMPLAINT AND DEMAND FOR JURY TRIAL

365.    On October 1st, 2023, Plaintiffs contacted Ms. Meyer by telephone to inquire about the alleged rape that Sage Humphries said she reported to Ms. Meyer and recorded the phone call, (as they are in a one-party consent state).

366.    On the call, Plaintiffs addressed the phone calls from Ms. Meyer's phone in 2017 whereas; Ms. Meyer's lied and said "I have a different number".

367.    Ms. Meyer's response was very odd as the phone number Plaintiffs called her on in 2023 was the very same number Sage Humphries called from in 2017 yet, Ms. Meyer falsely claimed that was not her number, while speaking to Plaintiffs on that phone number on October 1st, 2023, as Plaintiffs stated to her "it is the same phone number I used to call you right now".

368.    Defendant Meyer then made clear that she wanted the questions in writing regarding Sage Humphries and her parents.

369.    Plaintiffs emailed Ms. Meyer to no prevail.

370.    On July 21st, 2024, Plaintiffs again, emailed Ms. Meyer with the relevant questions provided on the phone call but again, Ms. Meyer did not respond.

371.    As a direct and proximate cause of Ms. Meyer aiding and abetting fraud, breaching her duties and conspiring with the Humphries, Plaintiffs were severely harmed.

372.    Plaintiffs did not receive or discover Ms. Meyer's involvement with the Humphries until the fall of 2023 and have therefore, been unable to seek recourse against her until now.

373.     Defendant is equitably estopped from asserting a statute of limitations as a

defense; allowing her to do so would be **unjust**.

374.     Plaintiffs' statutes, *if any*, **must be tolled**.

### *J.   Hannah Stolrow's Involvement and Fraudulent Actions*

375.     As stated, supra, Hannah Stolrow is the best friend of Sage Humphries.

376.     In 2017, Ms. Stolrow was the first person Sage Humphries told she was

"in love" with both Plaintiffs whereas, Hannah Stolrow stated she was "so happy"

for her best friend and later told Plaintiffs that she had never seen Sage "so

happy" as she was in the relationship with Plaintiffs.

377.     On May 27th, 2017 Hannah Stolrow offered to drive to Micah and

Michael's home to check on Sage as she was close to their location.

378.     Upon Hannah Stolrow arriving at their home, she was approached by

Micah Humphries who did not allow Defendant Stolrow to see or talk to Sage.

379.     Following her conversation with Micah Humphries, she immediately

contacted Plaintiffs and stated that they did not tell her the "full story" and

blocked them from contacting her.

380.     On or around May 27th, 2024, Hannah Stolrow and her ex-boyfriend,

Bryce Jackson Lee sent a message on social media to Plaintiffs stating, "see you

in Court" and "lawyer up".

381.     For six years, Plaintiffs were unaware of what occurred at the Humphries'

house that day, however, during that time and the time following, Ms. Stolrow

COMPLAINT AND DEMAND FOR JURY TRIAL

*intentionally* spread false and defamatory lies about Plaintiffs to their business affiliates, friends, co-workers, associates and innumerable other third parties which had a direct effect and greatly, negatively impacted Plaintiffs' livelihoods, careers and reputations.

382.     Many employers, sponsors and business affiliates disassociated themselves from Plaintiffs as a direct and proximate result of Ms. Stolrow's egregious and defamatory statements, including by alluding that Plaintiffs had committed a heinous criminal act against Sage Humphries, knowing that was false.

383.     Ms. Stolrow willfully and intentionally aided and abetted fraud by knowing that Sage Humphries had never been harmed by Plaintiffs but immediately joining forces with Micah Humphries to defame, harass and destroy everything Plaintiffs have worked for.

384.     Ms. Stolrow had actual knowledge of Micah and Michael Humphries' kidnapping of their adult daughter as she was locked in the house and unable to see her friend Hannah, who drove to make sure she was okay.

385.     During the summer of 2017, Sage Humphries was eventually allowed to leave the home of Micah and Michael Humphries but only to teach at the dance studio, go to therapy or to Ms. Stolrow's house.

COMPLAINT AND DEMAND FOR JURY TRIAL

386.    Ms. Stolrow had actual knowledge that Micah and Michael Humphries had confiscated their daughter's phone, driver's license, keys and funds from her bank account.

387.    Ms. Stolrow had actual knowledge of the false police reports filed by Micah and Michael Humphries, and knew that her friend Sage did not file those reports.

388.    Ms. Stolrow had actual knowledge that Sage Humphries' desire was to be in a relationship with Plaintiffs but that her parents did not approve and were creating a false narrative of abuse which she later supported and even spread to innumerable third-parties causing Plaintiffs extreme distress.

389.    Sage Humphries was allowed at least on one occasion to take her phone to Ms. Stolrow's home and messaged Plaintiffs about it on July 7th, 2024 to say:

- "*I don't know if [my parents] will let me take my phone tonight to Hannah's, but I need it for directions SOOOO*".

390.    On May 13th, 2024, Hannah Stolrow's best friend, Madison Breshears initiated an online harassment campaign, (as stated, *supra*), which served as the catalyst for the global defamatory media blitz waged against Plaintiffs, three months prior to the defamatory New York Times[20] article being written and

_____

[20] Plaintiffs filed a lawsuit against the New York Times Company, the journalist responsible for the defamatory story, two attorneys from the New York Times Company and others including two of Sage Humphries' attorneys from Boies Schiller & Flexner LLP – see case 1:24-cv-5888-LTS and additionally filed a lawsuit against Madison Breshears – see case 1:24-cv-03757-MKV; both of which are filed in the Southern District Court of New York.

COMPLAINT AND DEMAND FOR JURY TRIAL

published about Plaintiffs before a summons had even been issued or served on Plaintiffs.

391.    As described further herein, Defendant Hannah Stolrow was equally responsible for the defamation which was published by Madison Breshears, and confirmed by a legally recorded phone call with Madison Breshears on May 27th, 2024.

392.    On October 1st, 2024, Plaintiffs called Bryce Jackson Lee – former ex-boyfriend of Hannah Stolrow at the time in which the events occurred in 2017.

393.    Mr. Lee informed Plaintiffs that Hannah Stolrow stated Plaintiffs drugged and assaulted Sage Humphries and forced her to have sexual relations with them.

394.    Mr. Lee also stated that Defendant Stolrow and Micah and Michael Humphries were spreading false and defamatory rumors about Plaintiffs, intentionally leading the entire dance and automotive industries to believe they had abused Sage Humphries and additionally leading innumerable third-parties to falsely believe Plaintiffs raped and drugged their daughter as a minor; which is entirely and utterly false.

395.    Defendant Stolrow knew of the true nature of Sage Humphries' relationship with Plaintiffs and knew that her best friend was never harmed while in the relationship with Plaintiffs.

396.    Hannah Stolrow owed Plaintiffs a duty as she knew that Micah and Michael Humphries scheme against Plaintiffs was false but instead, colluded and

COMPLAINT AND DEMAND FOR JURY TRIAL

conspired with the Humphries to spread egregious false and defamatory rumors about Plaintiffs and conceal the fraud she knew existed.

397.     On October 1st, 2023, Plaintiffs attempted to call Defendant Stolrow to discuss her involvement in the conspiracy against Plaintiffs however, she rejected the phone call, blocked Plaintiffs and then falsely claimed to Sage Humphries' counsel in Nevada that Plaintiffs were stalking her; which resulted in threats against Plaintiffs by Sage Humphries' counsel, to deter them from speaking to potential witnesses for the case in Nevada.

398.     On May 27th, 2024, Plaintiffs were contacted by Madison Breshears after she was served the complaint which Plaintiffs filed against her in the Southern District Court of New York on May 13th, 2024.

399.     Plaintiffs spoke to Madison Breshears for approximately forty minutes on the phone whereas, Ms. Breshears specifically identified Ms. Stolrow as a third-party conspirator who defamed, slandered and harassed Plaintiffs including but not limited to by making false and defamatory statements to innumerable parties affiliated with Plaintiffs that have now disassociated from Plaintiffs as a direct and proximate result of Hannah Stolrow's conduct.

400.     Ms. Breshears also stated that Hannah Stolrow told her she had proof and evidence and it was a matter of fact and not a matter of opinion, that Sage Humphries was drugged and abused by Plaintiffs, later stating on the call that Hannah Stolrow was her source of factual information including that Ms. Stolrow

told Ms. Breshears when the New York Times article was being published,

months prior to the publishing taking place.

401.        Ms. Breshears also stated to Plaintiffs the following about Hannah Stolrow during their conversation:

- PLAINTIFFS: "Have you talked to anyone in this litigation aside from Sage?"

- MADISON BRESHEARS: "No."

- PLAINTIFF: "So you went on the internet and spoke on all of their behalves?"

- MADISON BRESHEARS: "I trusted my friend Hannah, she's a very good friend of mine since 13 years old."


- PLAINTIFF: "Why are you saying young girls and children on the internet regarding my wife?"

- MADISON BRESHEARS: "I just knew several other dancers were going to be coming forward and that the article was going to be published imminently."

- PLAINTIFF: "Published… as in the New York Times?"

- MADISON BRESHEARS: "Yeah".

- PLAINTIFF: "Which is not a lawsuit. You're basing your facts on the New York Times."

- MADISON BRESHEARS: "No I just knew there were going to be several people coming forward."

COMPLAINT AND DEMAND FOR JURY TRIAL

- PLAINTIFF: "How did you know this?"

- MADISON BRESHEARS: "From Hannah".

- PLAINTIFF: "How did Hannah know this?"

- MADISON BRESHEARS: "From Sage"


- MADISON BRESHERS: "Right, right right. But my post was breaking something that was not going to break, so the circumstances that I had at the time is that I heard from Hannah about what was going on with Sage…."


- MADISON BRESHEARS: "I didn't speak to [Sage] prior to making that post and that's not accurate. Me and Hannah are close friends."

- MADISON BRESHEARS: "I wanna make it clear, I don't want to throw Hannah under the bus".

- PLAINTIFF: "She's under that bus."

- DEFENDANT: "I don't want to be involved in this at all."

- DEFENDANT: "I don't want her to be involved in this at all."

- PLAINTIFF: "She's involved in this."

402.     The above written transcript is just a handful of the statements made about Ms. Stolrow's involvement and conspiracy and fraud committed against Plaintiffs for over seven years.

403.     Plaintiffs intend to file the full recording of the phone call to this Court.

404.     Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of Madison Breshears and other third parties including but not limited to non-party co-conspirator, Hannah Stolrow and Defendants and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery and including because Ms. Breshears made the statements on May 27th, 2024 that she had text messages and direct messages that she could access regarding this instant complaint and the defamatory statements made by Defendants.

K.  *The Aftermath of Defendants' Conspiracy, Harassment and Defamation Against Plaintiffs*

405.     Plaintiffs will **never mentally, spiritually, physically or financially recover** from the consequences of Defendants' conduct which resulted in defamatory, malicious and egregious false allegations and statements made to law enforcement, the Court, the public, the media, the press, employers, sponsors and innumerable third-parties about Plaintiffs.

406.     Defendants *knew* they were committing acts of fraud against Plaintiffs but committed them anyway.

407.     Defendants knew their heinous allegations were false and defamatory including false allegations that Plaintiffs had engaged in criminal activity, intentionally inflicting *severe harm* and trauma upon Plaintiffs.

408.     Defendants *knew* or should have known the fraud committed, and that it would inflict *severe harm* and trauma upon Plaintiffs whereas, there would be no recovery from the false, fraudulent and defamatory statements made about Plaintiffs to a mass audience.

409.     Micah and Michael Humphries told Defendant Hannah Stolrow of their fraudulent scheme against Plaintiffs and that they intended to file false police reports against Plaintiffs in order to force their daughter out of the relationship with them.

410.     Defendant Stolrow knew the Humphries' allegations were false in their entirety as she was an eye witness to the true nature of Sage Humphries' relationship with Plaintiffs including that Sage Humphries continuously told Ms. Stolrow that she was "in love" with Plaintiffs.

411.     Defendant Stolrow knew the Humphries' allegations were false in their entirety as their daughter, Sage, repeatedly told Ms. Stolrow that her parents were "forcing her" out of the relationship with Plaintiffs.

412.     Prior to Ms. Stolrow conspiring with Micah and Michael Humphries, Ms. Stolrow assisted Sage Humphries in her desire to escape her parents' home, allowing her to use her phone after Sage Humphries' parents stole her own.

413.     Defendants had actual knowledge that Micah and Michael Humphries created a false narrative against Plaintiffs in order to force their daughter out of a relationship with Plaintiffs.

414.     Upon learning of Micah and Michael Humphries' plan to defraud, defame and harass Plaintiffs, Ms. Stolrow and Ms. Meyer had a duty to inform Plaintiffs whereas, instead, they aided and abetted Micah and Michael Humphries' fraud against Plaintiffs.

415.     Defendant Kathryne Meyer allowed Micah and Michael Humphries' daughter, Sage, to use her phone to contact Plaintiffs as she had actual knowledge of Sage Humphries' desire to be with Plaintiffs against her parents' wishes.

416.     Defendant Kathryne Meyer knew Micah and Michael Humphries conspired against Plaintiffs as she had actual knowledge of Sage Humphries' relationship with Plaintiffs and assisted her in maintaining her desired relationship with them.

417.     The aftermath of Defendants Stolrow and Meyer's conduct to conceal fraud by aiding and abetting Micah and Michael Humphries was *catastrophic* including by preventing Plaintiffs from being able to properly defend themselves against the false and defamatory allegations which were stated to a mass audience.

418.    Defendants knew the false and defamatory allegations would completely destroy the reputation, careers and livelihoods of Plaintiffs but made their statements anyway.

419.    Defendants' conspiracy to commit fraudulent acts against Plaintiffs, equally encouraging Sage Humphries to harm Plaintiffs resulted in the loss of millions of dollars in revenue, assets and income, as Plaintiffs' businesses, good names and network of professional relationships were all completely destroyed due to the nature of the heinous allegations stated by Defendants.

420.    As seen, *supra,* Plaintiffs themselves, *were* their business, contracted by numerous private contractors which immediately ceased working with Plaintiffs following the defamatory global media campaign waged against them, including but not limited to contractors and sponsors who had employed and worked with Plaintiffs for *over fifteen years,* and who immediately disassociated themselves from Plaintiffs.

421.    Plaintiffs were sent death threats, threats of physical violence if they were to be seen in public and harassing messages, as hundreds of thousands of accounts reposted the defamatory and slanderous statements which were intentionally harmful to Plaintiffs, planned and stated by Defendants to innumerable third parties.

422.    Plaintiffs were sent death threats, threats of physical violence if they were to be seen in public and harassing messages, as hundreds of thousands of accounts

reposted the defamatory and slanderous statements which were intentionally harmful to Plaintiffs, planned and stated by Sage Humphries who was encouraged to make such heinous and false statements to innumerable third parties.

423.    Plaintiffs were physically, forcibly and embarrassingly removed from public events and various restaurants and stores where their names and likenesses were recognized from the media that Defendants orchestrated.

424.    As a direct and proximate result of Defendants' conduct, Plaintiffs no longer work in their respective industries and have been completely unemployed since May of 2021 as Defendants destroyed any and all ability to work in the industries Plaintiffs worked their entire lives to be proficient in.

L.   *Defendants' Destruction of Plaintiffs' Business, Goods and Services*

425.    As stated in the above references, Plaintiffs' names and likeness was their *only business*, which generated the entirety of their revenue, income and business, whereas Plaintiffs, themselves, and what they provided to their respective industries was solely based on what they provided as their name brands known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand and Bravado by Dusty Button.

426.    Plaintiffs' established business, goods and services were directly sourced and provided from their good names, talent, expertise and reputations, which were completely destroyed by Defendants' conduct.

COMPLAINT AND DEMAND FOR JURY TRIAL

427.     As stated in the above referenced facts, Plaintiffs were highly respected, extremely well-known, leaders of the dance industry and the automotive industry, and reliant on their businesses which were well established for over fifteen years, as each Plaintiff was their own business in which they were hired based on their desired skill sets in their industries, which others could not offer.

428.     Plaintiffs had established business with signed negotiated contracts with three companies to manufacture and sell their dancewear line which was in its initial phase and well under way as Plaintiffs were beginning the second wave of these partnerships when Defendants' conspiracy and concealment of fraud resulted in ability to commit acts of fraud against Plaintiffs resulting in false and frivolous statements which derailed all operations.

429.     Plaintiffs lost *any and all* business immediately and for the foreseeable future as a direct result of Defendants' conduct including by Defendants' Stolrow and Meyer's concealment of fraud by aiding and abetting the false allegations of the Humphries resulting in a frivolous and malicious litigation and defamatory statements about Plaintiffs, resulting in injurious falsehood.

430.     Plaintiffs lost any and all business immediately and for the foreseeable future as a direct result of Defendants' conduct including by Defendants' Micah and Michael Humphries intentionally committing fraud against Plaintiffs and knowingly lying to law enforcement which is a criminal act.

COMPLAINT AND DEMAND FOR JURY TRIAL

431.     Defendants *knew* the nature of the false allegations and statements made by Sage Humphries were false in their entirety as she *intentionally* crippled Plaintiffs' business and ability to generate revenue and income as a direct result of Defendants' conduct in either committing fraud themselves or concealing the fraud which they knew was being committed; intentionally breaching their duties by not informing Plaintiffs of the Humphries' intent to commit fraud.

432.     Instead of informing Plaintiffs of the fraud they knew was being committed, Defendants Stolrow and Meyer's chose to assist that fraud against Plaintiffs.

433.     Defendants *knew* Sage Humphries' statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

434.     Defendants *knew* their own statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

COMPLAINT AND DEMAND FOR JURY TRIAL

435.     Defendants knew Sage Humphries' statements were false and intentionally

crippled Plaintiffs' goods and services which included Plaintiff Taylor Buttons'

design work, custom automotive creations, sponsorships, commercial shoots,

events, marketing, advertising and speaking engagements, all of which were

destroyed as Plaintiff Taylor Button was his own goods and services, as his name

and career was his brand and his business.

436.     Defendants *knew* their own statements were false and intentionally

crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons'

teaching, provided choreography, modeling, dancing, guest performing, speaking

engagements, design concepts, marketing and brand ambassadorship, all of which

were destroyed as Plaintiff Dusty Button was her own goods and services, as her

name and career was her brand and her business.

437.     Defendants intentionally made the decision to make false and defamatory

statements which spread like fuel-soaked wildfire throughout the dance industry

and community, automotive industry and community and further, to dance and

automotive forums including but not limited to Facebook, Reddit and TikTok and

was widely spread via communications through various messaging platforms

nationally and internationally, causing **extreme distress and harm** to Plaintiffs.

438.     Defendant Meyer's concealment of fraud allowed Sage Humphries to

make false and defamatory remarks to a mass media audience which were

130
COMPLAINT AND DEMAND FOR JURY TRIAL

Case 8:24-cv-01730-JVS-DFM    Document 1    Filed 08/07/24    Page 131 of 248   Page ID #:131

intentionally dishonest and were stated for an improper motive with the intent to injure Plaintiffs without just cause or excuse.

439.    Defendant Stolrow's concealment of fraud allowed Sage Humphries to make false and defamatory remarks to a mass media audience which were intentionally dishonest and were stated for an improper motive with the intent to injure Plaintiffs without just cause or excuse.

440.    Defendants Micah and Michael Humphries intentionally committed fraud by way of lying to law enforcement, forging documents, coercion and compulsion in order to intentionally harm Plaintiffs and conspire to create a false narrative of abuse against their daughter which did not exist to destroy everything Plaintiffs have ever worked for.

441.    Defendants knew that, as a result of their false statements, Plaintiffs would suffer financial harm and never be capable of generating revenue using their names again.

442.    Plaintiffs suffered complete loss of business and sales including that Plaintiffs income was solely based on a per performance basis whereas, Plaintiffs' income was generated upon completion of work as they were themselves, their business.

443.    For example, Plaintiff Dusty Button's teaching classes and performances were immediately canceled following the defamatory statements and heinous

COMPLAINT AND DEMAND FOR JURY TRIAL

allegations made by Sage Humphries and her parents, Micah and Michael Humphries.

444.     As another example, Plaintiff Dusty Button immediately lost any and all business with all scheduled dance studios, summer intensive courses, and events which she was scheduled to guest teach and choreograph for, including scheduled guest performance appearances nationally and internationally as a direct result of Defendants' malicious conduct.

445.     As another example, Plaintiff Taylor Button immediately lost any and all business related to his brands including his business and brand "Button Built", with all scheduled events in the automotive industry including pre-planned design builds for clients and customers including prominent name brands which were sponsors of Plaintiff Taylor Button, all of whom canceled their builds and design concept work with Plaintiff for the foreseeable future.

446.     Further, Plaintiffs, both immediately lost any and all contracts with sponsors, endorsements and event appearances in their respective industries including but not limited to: BLOCH Inc., Tiger Friday, Capezio, Yumiko, MPG Sport, Fenti, Volcom, Discount Dance, RedBull, Adidas, WeWork,  Rotiform Wheels, Brixton Forged, Momo racing, Bride Racing, Nitto Tires, Toyo tires, Brembo, Ferrari Parts, Tial Concepts, Xona Rotor, Aviva Performance, Impressive Wraps, Inozetek, Tubi Style, Vivid Motorsport, Voodoo Automotive, SEMA Auto Show, Crep Protect, Accuair Suspensions, Currie axels, Pelican

COMPLAINT AND DEMAND FOR JURY TRIAL

LLC, Greyman Tactical, PRP seats, KMC wheels, RAM mounts, Metalcloak suspension and body components, THULE, Rebel Offroad, PPG paint, Morimoto LED lighting solutions, BAJA off-road lighting solutions, Powertank, Maxxtraxx, HP tuners, Emory Motorsports, SABELT and Illest, amongst many others not listed here.

447.    Plaintiffs not only lost their business "Button Brand", suffering the complete destruction of their self-made brand but were forced to refund customers for items sold due to the connection of the false allegations and defamatory statements made by Defendants.

448.    Plaintiffs completely lost and forfeited their brand, Button Brand due to defamatory statements made by Defendants as they knew the allegations were false in their entirety and did not disclose their knowledge of the falsity of the allegations, including by making those defamatory statements themselves.

449.    Plaintiffs had a pre-planned, negotiated contract with dancewear company Tiger Friday whereas, Plaintiffs designed, licensed and would market the line of leotards and dancewear utilizing the Button name and brand to expand their already successful company and image.

450.    Plaintiffs' contract was immediately canceled as a direct result of Defendants' false and defamatory statements.

451.    Plaintiffs' brand, Bravado by Dusty Button was a dancewear and leotard line for dancers in which Plaintiffs had previous negotiated contracts with

sponsored third-party companies and distributors such as Discount Dance, Showstopper and GK Elite, as well as advertised and garnered sales of this line through their own website "bravadodancewear.com" and through Plaintiffs' former social media page on Instagram, @bravado_dancewear and Plaintiffs' personal social media account, @dusty_button.

452.    Bravado by Dusty Button was sold at various dance events for distribution, whereas, sales and contracts were immediately terminated following $100,000.00 of partner investment and nearly a year of travel and planning as a direct result of Defendants' false and defamatory statements.

453.    Defendants' breach of duty, fraud, defamatory statements and concealment of fraud forced the termination of Bravado by Dusty Button as all sales came to a halt and additionally, customers demanded refunds stating the brand was associated with "sexual predators", "perpetrators", "criminal behavior" and "rapists".

454.    Immediately following the false and defamatory statements in the media and the press, Plaintiffs' businesses, Button Brand, Button Built, and Bravado by Dusty Button were completely destroyed, losing hundreds of thousands of dollars in revenue and costs, which were already paid, promised and negotiated with third party companies and distributors which was a direct result of Defendants' negligence, breach of duty, failure to disclose and concealment of fraud.

455.    Any and all marketing for the above reference brands with associated accounts advertising those brands including all sales were terminated as a direct result of Defendants' conduct.

456.    The seriousness of Defendants' conduct proves a clear intention to cause damage to Plaintiffs.

457.    The nature and substance of the false allegations made by Jane Doe were encouraged, concealed and known by Defendants which resulted in the defamatory remarks and false allegations as Defendants had actual knowledge that her statements were untrue and proving that Defendants' conduct was willful, intentional, malicious, reckless and negligent.

458.    Defendants' conduct resulting in the false allegations made by Jane Doe made to a mass audience which she intended to, and did reach, proves without question, the intent to harm Plaintiffs' careers, businesses and reputations as the false statements were aimed *specifically* at Plaintiffs' colleagues, clients and target demographics through these defamatory statements in the global media campaign waged against them including but not limited to published defamatory statements in The New York Times, Cosmopolitan, The Boston Globe, ABC News, The Daily Mail, CNN and other mass media outlets including the press and nearly every major news outlet and social media account that were otherwise outside of Plaintiffs' industries.

COMPLAINT AND DEMAND FOR JURY TRIAL

459.    Defendants' conduct including concealment of fraud, breach of duty and negligence caused the *entire* dance industry to not only turn against Plaintiff Dusty Button, (who had worked her entire life to build the reputation she was known for in her industry and was at the pinnacle of her career), but caused the industry to disassociate from Dusty, repost the defamatory statements and false allegations and cease all communication with her, including halting any and all forms of employment for which she had been in extremely high demand for, for over fifteen years.

460.    Defendants' conduct including concealment of fraud, breach of duty and negligence caused the *entire* automotive industry to not only turn against Plaintiff Taylor Button, (who had worked over thirteen years to build the reputation of the idol he was and that he was known for in his industry and was at the pinnacle of his career), but caused the industry to disassociate from Taylor, repost the defamatory statements and false allegations and cease all communication with him, including halting any and all forms of employment for which he had been in extremely high demand for, for over thirteen years.

461.    The false allegations and defamatory remarks made by Defendants ignited a viral response which spread like wildfire, resulting in a 'grapevine' effect throughout Plaintiffs' industries including to their co-workers, clients, employers, potential employers, parents and children of those Dusty taught in the dance industry, sponsors, potential sponsors, friends and family involved in the

COMPLAINT AND DEMAND FOR JURY TRIAL

industries, customers, former employers, agencies, dance studio owners and other various third parties whereas, Plaintiffs could not defend themselves against such widespread industry gossip which were preventable but instead, were encouraged by Defendants including by neglecting their duties, concealing fraud, failing to disclose pertinent information regarding Jane Doe upon discovery of her false allegations.

462.    Defendants specifically targeted Plaintiffs.

463.    As a direct cause of Defendants' defamatory statements and a global media campaign waged against Plaintiffs, Plaintiffs have been unable to even have a ringtone, vibration or sound on their phones when notifications or calls come in, due to the influx of notifications, messages, harassment, death threats, unwanted threatening calls and the overwhelming immediate responses to the defamatory posts, comments and reposts whereas, Plaintiffs even had to take turns watching for notifications on each other's phones to even sleep just one hour as the harassing, threatening and defamatory remarks continued for months on end.

464.    To this day, Plaintiffs keep their phones on silent as it results in severe trauma and PTSD as a direct result of the harassment, they received following the false allegations and defamatory statements made by Defendants in an effort to conceal fraud.

COMPLAINT AND DEMAND FOR JURY TRIAL

465.      As previously stated herein, Plaintiffs' business, was their names and likeness as they were individually contracted due to their reputations of who they were as a business and as their names were their brands.

466.      Plaintiffs were well-known and prominent figures in their industries and therefore, were contracted, employed and in high-demand because of their names and reputations, as they, themselves were their businesses for over fifteen years.

467.      The shock and confusion from the defamatory statements, coupled with Defendants' negligence resulted in intense threats, harassment, and severe bullying including severe emotional trauma which has taken a tremendous toll of Plaintiffs and their mental health.

468.      Plaintiffs were so traumatized by the actions of Defendants that they both suffered from suicidal thoughts, nearly taking their own lives as a direct result of the false allegations made by Defendants.

469.      Defendants took affirmative steps to ensure Plaintiffs were without the ability to seek recourse against them until now with the intentional harm they inflicted on Plaintiffs by way of forcing them to be unemployed, by aiding and abetting the false allegations made by Sage Humphries, with no ability to generate income, releasing them of any responsibility as they knew it was a possibility for their statutes of limitation to expire before Plaintiffs could take action against them.

470.    Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

471.    Defendants' actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

472.    Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

473.    Allowing Defendants to do so would be unjust.

474.    Defendants took active steps to prevent Dusty and Taylor from commencing **this** lawsuit before now, including by destroying Plaintiffs' ability to work including by aiding and abetting the defamatory global media campaign against Plaintiffs and by using tactical intimidation by way of using their power and influence to suppress and silence Plaintiffs from defending against the false and defamatory posts and remarks through litigation by Sage Humphries and her parents.

475.    Plaintiffs received additional discovery regarding Defendants' conduct during the course of discovery in Nevada whereas, Plaintiffs were not aware of such negligence and concealment of fraud until the years 2022 and 2023 including but not limited to the deposition of Sage Humphries which exposed Defendants' fraud and concealment for over seven years.

COMPLAINT AND DEMAND FOR JURY TRIAL

476.    Plaintiffs have suffered and continue to suffer mental anguish, severe emotional distress and loss of enjoyment of life as a direct and proximate result of Defendants' conduct.

477.    Had Plaintiffs succumbed to the darkness that Defendants cast over their lives, businesses, families and futures, this litigation would be criminal rather than civil, as they are responsible the fraudulent actions that nearly ended two lives that were once the brightest lights of their careers for millions of people abroad.

## CAUSES OF ACTION

## COUNT I – BREACH OF FIDUCIARY DUTY

### *Plaintiffs against Defendants*

478.    Plaintiffs repeat, reallege and incorporate each and every allegation contained above as though fully set forth herein.

479.    Micah and Michael Humphries' relationship with Plaintiffs was confidential and fiduciary in nature.

480.    Plaintiffs in fact, placed trust, confidence and reliance on Micah and Michael Humphries.

481.    Micah and Michael Humphries breached their fiduciary duties, including but not limited to by inflicting intentional emotional distress on Plaintiffs by defaming them through mass media publications and filing false and criminal police reports against them while knowing they were false.

COMPLAINT AND DEMAND FOR JURY TRIAL

482.    Plaintiffs relied on their relationship with Micah and Michael Humphries during the course of their relationship with their daughter.

483.    Defendants Micah and Michael Humphries' actions constitute a breach of duty as their actions compared to those of a reasonable person in the same circumstances fall below the reasonable person standard.

484.    Defendant Hannah Stolrow and Plaintiffs' relationship was confidential and fiduciary in nature.

485.    Plaintiffs in fact, placed trust, confidence, and reliance on Defendant Hannah Stolrow.

486.    Hannah Stolrow owed Plaintiffs fiduciary duties.

487.    Defendant Hannah Stolrow breached her fiduciary duties, including but not limited to inflicting intentional emotional distress by spreading false and defamatory statements about Plaintiffs which she knew were false and would destroy the lives of Plaintiffs.

488.    Defendants Hannah Stolrow and Micah and Michael Humphries' breach of duty was unreasonable as the likelihood and potential severity of harm resulting from their conduct was foreseeable and intentional.

489.    Defendants failed to take reasonable precautions necessary to eliminate or reduce the risk of harm to Plaintiffs and in fact, intentionally harmed Plaintiffs by creating a false narrative against them, coercing others to follow suit and lying to

law enforcement, the public and innumerable third-parties which caused

disassociation from Plaintiffs.

490.    Defendants Micah and Michael Humphries breached their legal duties,

including but not limited to by intentionally filing false police reports about

Plaintiffs while knowing the statements they made to law enforcement were false

statements of fact, therefore committed criminal acts against Plaintiffs.

491.    Defendants Micah and Michael Humphries breached their duties,

including but not limited to by intentionally creating a false narrative against

Plaintiffs to hide the true nature of their daughter's relationship with Plaintiffs

from the public.

492.    Defendant Michael Humphries specifically breached his legal duty,

including but not limited to his duty as an attorney by forging documents against

the Plaintiffs and making false statements to the police and to the Boston

Municipal Court to frame Plaintiffs for multiple acts of violence against his

daughter which they did not commit and which he knew were false.

493.    Defendants Micah and Michael Humphries breached their duties as their

actions and/or omissions are shown to be unreasonable under the circumstances

and can be demonstrated through evidence of what actually happened and

compared to the reasonable person standard.

494.    Defendant Kathryne Meyer breached her ethical duty to protect and warn

Plaintiffs, who she knew were potential victims by notifying law enforcement

COMPLAINT AND DEMAND FOR JURY TRIAL

authorities following her clients' communication of threats by her parents against Plaintiffs which she knew were false statements against them, and which were clearly identified by her client Sage Humphries, and her parents, Micah and Michael Humphries.

495.     Defendant Kathryne Meyer breached her duty to warn and protect as a counselor whereas, she had reason to believe that a specific individual, (such as the Plaintiffs), would be harmed.

496.     Defendant Kathryne Meyer breached her duty including because the legal requirement and law in California (La. Rev. Stat. Ann. §2800.2) requires psychologists, psychiatrists, marriage and family therapists, licensed professional counselor, and social workers to warn potential victims and notify law enforcement authorities when a patient has communicated a threat against a clearly identified victim or victims; in this case, the Plaintiffs.

497.     Defendant Kathryne Meyer had actual knowledge of Micah and Michael Humphries scheme and threats against Plaintiffs through her client but made no effort to communicate the threat to Plaintiffs or to notify law enforcement authorities.

498.     Defendant Kathryne Meyer breached her duty, including but not limited to her duty to protect and warn, as she knew that Sage Humphries' false allegations against the Plaintiffs were false in their entirety including because she assisted Sage Humphries in her desperation to escape her parents' home in California.

COMPLAINT AND DEMAND FOR JURY TRIAL

499.    Defendant Kathryne Meyer willingly assisted Sage Humphries in contacting Plaintiffs at her own peril, while knowing Micah and Michael Humphries' intentions in destroying Plaintiffs' lives, should they have discovered communications were being had with Plaintiffs at her office.

500.    Defendant Kathryne Meyer intentionally and willingly assisted Sage Humphries in her desire to speak to Plaintiffs while knowing Micah and Michael Humphries allegations and false accusations against Plaintiffs were being pursued against the wishes of her client but did not protect or warn Plaintiffs of their plot to destroy their lives through these false allegations.

501.    Defendant Hannah Stolrow's actions constitute a breach of duty as her actions compared to those of a reasonable person in the same circumstances fall below the reasonable person standard.

502.    Plaintiffs in fact, placed trust, confidence, and reliance on Defendant Hannah Stolrow.

503.    Defendant Hannah Stolrow's breach of duty was unreasonable as the likelihood and potential severity of harm resulting from her conduct was foreseeable and intentional.

504.    Defendant failed to take reasonable precautions necessary to eliminate or reduce the risk of harm to Plaintiffs and in fact, intentionally harmed Plaintiffs by creating a false narrative against them, coercing others to follow suit and lying to

law enforcement, the public and innumerable third-parties which caused

disassociation from Plaintiffs.

505.    Defendant Hannah Stolrow breached her duties including but not limited

to the act of intentionally and knowingly assisting Micah and Michael Humphries

commit acts of fraud against Plaintiffs even after knowing Micah and Michael

Humphries' false allegations harmed the Plaintiffs.

506.    Defendants' conduct proximately caused Plaintiffs to suffer severe mental

and emotional distress, pain and suffering, mental anguish and loss of enjoyment

of life.

507.    Defendants' unlawful actions were intentional, done with malice, and/or

showed a deliberate, willful, wanton, and reckless indifference to Plaintiffs'

rights.

508.    Defendants took active steps in preventing Dusty and Taylor to prevent

the Buttons from commencing this lawsuit before now, including by immediately

slandering the good names of Plaintiffs in their respective industries and making

salacious statements to third parties, lying to law enforcement to gain an

advantage and create a false narrative against Plaintiffs to use as grounds for

commencement of a vexatious lawsuit under false pretenses.

509.    Accordingly, any statute of limitations applicable to Dusty and Taylor's

claims, if any, is tolled including because Plaintiffs have been involved in pending

litigation regarding the same allegations in nature for three years.

COMPLAINT AND DEMAND FOR JURY TRIAL

510.      California provides the delayed discovery rule whereas, in this case Plaintiffs did not know or could not have known of the Defendants' connections to their wrongdoing, made a reasonable investigation but still did not discover the injury or its cause until the discovery in pending litigation in Nevada began in 2022 and 2023.

511.      In the event any applicable statutes apply, Plaintiffs' claims must be tolled for the following reasons including but not limited to:

1)   "During the pendency of a related lawsuit or arbitration related to the same defamatory statements" whereas, Defendant's defamatory posts and statements are at issue in four other pending lawsuits[21] and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*".

2)   Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as Micahel Humphries being a licensed attorney who threatened Plaintiffs on innumerable occasions in 2017, leading Plaintiffs to believe they could not seek legal recourse against them or associated third-parties.

3)   A continuing wrong

---

[21] Case 1:24-cv-05026-JPC – Southern District Court of New York; Button et al v. Doherty et al / Case 1:24-cv-03757-MKV – Southern District Court of New York; Button et al. v Breshears / Case 0:24-cv-60911-DSL Southern District Court of Florida and Case 1:24-cv-5888-LTS; Button et al v. The New York Times Company et al.

COMPLAINT AND DEMAND FOR JURY TRIAL

And;

4) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse and continuing to defame and harass Plaintiffs in the media.

512.    Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of Defendants and other third parties including but not limited to non-parties, Defendants' agents and other third-parties, which will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

513.    Defendants prevented Plaintiffs from bringing forth claims against them in a timely manner for the reasons listed, *supra*.

514.    Defendants' actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now, including by committing multiple acts of fraud against them for seven years

515.    Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

516.    Allowing Defendants to do so would be **unjust.**

517.    WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT II

## AIDING AND ABETTING FRAUD AND A VEXACIOUS LITIGATION

### *Plaintiffs against Defendants*

518.     Plaintiffs repeat, reallege and incorporate each and every allegation contained above as though fully set forth herein.

519.     Defendants Micah and Michael Humphries, Kathryne Meyer and Hannah Stolrow each knew that Sage Humphries committed fraud, coerced her to commit fraud or intended to commit fraud resulting in the direct and proximate irreparable harm to Plaintiffs.

520.     Defendants knew that they were aiding and abetting a vexatious litigation and in fact, encouraged that litigation by assisting the litigant in filing the fraudulent lawsuit against Plaintiffs.

521.     Defendants knew that they were aiding and abetting fraud and failed to take reasonable steps to prevent or stop Sage Humphries' frivolous claims and in fact, assisted her in creating and continuing them.

522.     Defendants knew the existence of an underlying fraud whereas, the fraud occurred and each Defendant either had knowledge of its existence, or discovered its existence in which they did not prevent or stop but rather, encouraged and continued to aid that fraud including at the time and date the events took place beginning in 2017 and until the time of this complaint being filed.

523.    Defendants had actual knowledge of the crimes being committed by Sage Humphries and/or had actual knowledge of the crimes which they were committing themselves against Plaintiffs which were part of a calculated scheme which they planned and/or committed and which is still being committed as of the time and date of this complaint being filed.

524.    Defendants' intended to provide help, aid, and/or encouragement to commit the crime and in did in fact, assist and/or encourage their friend, child and/or client in committing the crime in which Defendants continue to help, aid and/or encourage to continue committing as of the time and date of this complaint being filed.

525.    Defendants intentionally assistance and/or encouragement of a frivolous lawsuit, knowing harm would result against Plaintiffs.

526.    Defendants Micah and Michael Humphries provided financial support to Sage Humphries, forcing her into therapy and threatening her to end her relationship or she would not be allowed to return to Boston, as they would not pay for her flight.

527.    Defendants provided substantial assistance to their friend, adult child and/or client or friend in achieving the fraud against Plaintiffs whereas, their actions and inactions significantly contributed to the success of the fraud against Plaintiffs in which their adult child and/or client or friend is continuing to commit as of the time and date of this complaint being filed.

COMPLAINT AND DEMAND FOR JURY TRIAL

528.    Defendants' actions and/or encouragement actually provided aid to the perpetrator whereas their actions and/or encouragement helped the perpetrator in committing the crime of fraud against Plaintiffs including but not limited to causing irreparable harm to Plaintiffs in which their friend, adult child and/or client or friend is committing as of the time and date of this complaint being filed.

529.    Defendants provided financial support and/or resources to their friend, adult child and/or client who planned to commit a crime against Plaintiffs and who is continuing to commit such a crime against Plaintiffs as of the time and date of this complaint being filed.

530.    Defendants knowingly filed false police reports and fraudulently obtained abuse prevention orders by forging documents for their adult daughter in Boston MA.

531.    In the event any applicable statutes apply, Plaintiffs' claims must be tolled for the following reasons including but not limited to:

1)    "During the pendency of a related lawsuit or arbitration related to the same defamatory statements" whereas, Defendant's defamatory posts and statements are at issue in four other pending lawsuits[22] and, "*the*

---

[22] Case 1:24-cv-05026-JPC – Southern District Court of New York; Button et al v. Doherty et al / Case 1:24-cv-03757-MKV – Southern District Court of New York; Button et al. v Breshears / Case 0:24-cv-60911-DSL Southern District Court of Florida and Case 1:24-cv-5888-LTS; Button et al v. The New York Times Company et al.

COMPLAINT AND DEMAND FOR JURY TRIAL

*pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*".

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as Michael Humphries being a licensed attorney who threated Plaintiffs on innumerable occasions in 2017, leading Plaintiffs to believe they could not seek legal recourse against them or associated third-parties.

3) A continuing wrong

And;

4) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse and continuing to defame and harass Plaintiffs in the media.

532.    Defendants helped to conceal or cover up evidence of a crime being committed by their child and/or their client whereas all Defendants were in direct contact with Plaintiffs regarding the perpetrators crimes and intentionally withheld and/or concealed information regarding their friend, child and/or clients' actions of fraud against Plaintiffs including but not limited to lying to the police and to the District Court of Nevada which is a Federal agency to protect the fraudulent actions of the perpetrator therefore, irreparably harming Plaintiffs in which continues as of the time and date of this complaint.

COMPLAINT AND DEMAND FOR JURY TRIAL

533.     Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

534.     Allowing Defendants to do so would be **unjust.**

535.     Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of Defendants and other third parties including but not limited to non-parties, Defendants' agents and other third-parties, which will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

536.     Defendants failed to report their friend, child's and/or clients' fraud and in fact, aided and abetted that fraud, and did not take action to stop it from happening including by encouraging, enforcing and/or aiding the perpetrator to commit and continue to fraud against Plaintiffs, causing irreparable harm which is continuing as of the time and date of this complaint being filed.

        WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## <u>COUNT III – CIVIL CONSPIRACY</u>

### *Plaintiffs against Defendants*

537.     Plaintiffs repeat, reallege and incorporate each and every allegation contained above as though fully set forth herein. Defendants owed Plaintiffs a duty.

538.    Defendants entered into an agreement to commit an unlawful or tortious act against Plaintiffs including by knowing Sage Humphries was never abused by Plaintiffs in each of their individual relationships but chose to conspire, using Plaintiffs as the scapegoat for the false narrative created by Micah and Michael Humphries.

539.    The agreement was made with the intent to commit a tort or to achieve an unlawful objective including by conspiring and defaming Plaintiffs to achieve the goal of destroying Plaintiffs ability to seek legal recourse against them and causing complete destruction to their finances in order to cripple Plaintiffs' defense in an effort to gain an advantage in the media and in the civil litigation filed by Sage Humphries.

540.    Defendants made an overt act towards carrying out the agreement by committing criminal acts against Plaintiffs such as knowingly filing false police reports against Plaintiffs.

541.    As a direct and proximate result of Defendants' conspiracy, Defendants lost any and all contracts, employment, sponsors, associated business relations, and career opportunities including because Defendants led any and all viewers or readers of their defamatory statements believe they had committed a criminal act.[23]

---

[23] "One who, with knowledge of the intention of another to commit a tort, and with intent to promote or facilitate that tort, aids or abets the commission of the tort, is subject to liability for the consequences of the tort." (Restatement of Torts § 876).

COMPLAINT AND DEMAND FOR JURY TRIAL

542.     Kathryne Meyer had actual knowledge that her client caused Plaintiffs harm by filing a frivolous lawsuit against them which alleged heinous and egregious crimes about them and did nothing to protect and warn as required by her duties as a therapist and instead, assisted her client in continuing to commit fraud against Plaintiffs after providing resources for her client to contact the very people she knew did not harm her.

543.     Defendants colluded to commit an unlawful and unethical act such as defamation and invasion of Plaintiffs' privacy in order to coordinate coverage and mutual influence to cripple Plaintiffs' defense and destroy Plaintiffs' right to due process including but not limited to publishing and disclosing a lawsuit prior to even serving the complaint on Plaintiffs.

544.     Defendant colluded with others to gain an advantage, preventing Plaintiffs from seeking recourse until now, to cripple Plaintiffs defense against the lawsuit which would be filed three months following Defendant with others including but not limited to Sage Humphries, Madison Breshears, Julia Jacobs and Sigrid McCawley as they knew of the New York Times article months prior to the article being published, and colluded to commit an unlawful and unethical act such as defamation and invasion of Plaintiffs' privacy in order to coordinate coverage and mutual influence to cripple Plaintiffs' defense and destroy Plaintiffs' right to due process including but not limited to publishing and disclosing a lawsuit prior to even serving the complaint on Plaintiffs.

545.    Defendants' conduct proximately caused Plaintiffs to suffer severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

546.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiffs' rights.

547.    Defendant made an express agreement, as admitted by non-party co-conspirator on the May 27th, 2024 phone call with another, including but not limited to Sage Humphries, to commit a wrong whereas, Defendant conspired to cyber-harass, bully, threaten, defame and criminalize Plaintiffs in a joint effort to destroy their business, reputations, careers, ability to work and financial ability to defend prior to Sage Humphries' lawsuit which was filed three months after Madison Breshears' and Micah Humphries posted the defamatory statements online to intentionally deprive Plaintiffs in an Overt Act in Furtherance causing economic loss.

548.    Defendants' actions resulted in "Unfair Competition" by way of coordinating efforts to spread false information about Plaintiffs, (whose names and likeness were their business), to gain an advantage, months prior to Sage Humphries filing her civil litigation which Defendant admittedly, did not even know was imminent, as to destroy Plaintiffs' reputations, careers, business, ability

to work and defend themselves against the defamatory statements and litigation itself.

549.    Defendants proof of conspiracy lies within their pattern to continue conspiring and unethically colluding with each other and the media to gain an unlawful advantage.

550.    In the event any applicable statutes apply, Plaintiffs' claims must be tolled for the following reasons including but not limited to:

1)  "During the pendency of a related lawsuit or arbitration related to the same defamatory statements" whereas, Defendant's defamatory posts and statements are at issue in four other pending lawsuits[24] and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*".

2)  Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as Michael Humphries being a licensed attorney who threatened Plaintiffs on innumerable occasions in 2017, leading Plaintiffs to believe they could not seek legal recourse against them or associated third-parties.

3)  A continuing wrong

---

[24] Case 1:24-cv-05026-JPC – Southern District Court of New York; Button et al v. Doherty et al / Case 1:24-cv-03757-MKV – Southern District Court of New York; Button et al. v Breshears / Case 0:24-cv-60911-DSL Southern District Court of Florida and Case 1:24-cv-5888-LTS; Button et al v. The New York Times Company et al.

COMPLAINT AND DEMAND FOR JURY TRIAL

And;

4)  Defendants' online misconduct, remaining anonymous to avoid consequence and recourse and continuing to defame and harass Plaintiffs in the media.

551.    Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of Defendants and other third parties including but not limited to non-parties, Defendants' agents and other third-parties, which will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

552.    Plaintiffs are entitled to punitive damages because Defendants' defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm and because Defendants' conduct constitutes intentional acts of conspiracy which were made with actual malice towards Plaintiffs whereas, the conduct is part of a pattern of similar conduct directed at the public generally, indicating a reckless disregard for civil obligations, Plaintiffs seek an award for punitive damages.

553.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute Civil Conspiracy.

554.    Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

555.    Defendants' actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

556.    Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

557.    Allowing Defendants to do so would be **unjust.**

558.    WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *Plaintiffs against Defendants*

559.    Plaintiffs repeat, reallege and incorporate each and every allegation contained above as though fully set forth herein.

560.    Defendants acted intentionally and/or recklessly when either aiding and abetting their daughter's and/or client's crimes against Plaintiffs including by neglecting to protect and warn upon discovery of their daughter's, friend's and/or client's fraud and egregious acts of harm against Plaintiffs which they equally encouraged and concealed together knowing it would harm Plaintiffs.

561.    Defendants' conduct was a direct and proximate cause of harm to Plaintiffs resulting in severe emotion distress due to the actions and/or inactions of Defendants' willful and/or reckless behavior.

562.    Defendants were actively involved in assisting Sage Humphries in commencing and continuing a frivolous lawsuit against Plaintiffs with false allegations of sexual abuse, sex trafficking, forced labor, involuntary servitude, battery, assault, false imprisonment, intentional infliction of emotional distress, breach of fiduciary duty and sexual exploitation of a minor whereas, Defendants either knew or later discovered that their daughter's and/or client's allegations were fraudulent and would undoubtedly and severely bring harm on Plaintiffs.

563.    Defendants filing of over seven false police reports caused severe emotion distress as it forced Plaintiffs to contact any and all law enforcement to discover the reports years later after they already damaged their reputation with the defamatory statements made within those false police reports.

564.    No reasonable person in Sage Humphries' circumstances would have believed that there were reasonable grounds to bring the lawsuit against Plaintiffs including because upon Sage Humphries' own admissions, Defendants all had *actual* knowledge and encouraged her to commit fraud against Plaintiffs while in some cases, assisting that fraud.

565.    Plaintiffs were *severely* and irreparably harmed by Defendants' fraudulent actions and Sage Humphries' complaint against them whereas, Plaintiffs have not

been able to work a single job due to the false and defamatory allegations and

their names being globally recognized in the media as Sage Humphries, her

parents, therapist and best friend including other non-parties, and her counsel

waged a **global defamatory media campaign against Plaintiffs**.

566.    Defendant engaged in extreme and outrageous conduct with the intention

of causing Plaintiffs severe emotional distress by first making false, derogatory,

defamatory and fraudulent statements of fact to a mass audience about Plaintiffs.

567.    Defendants' conduct was a substantial factor in causing harm on Plaintiffs

as Defendants' actions and/or inactions in aiding and abetting their daughter,

friend and/or client in committing fraud against Plaintiffs, including the salacious

and defamatory statements to third parties which were a direct and proximate

cause of Defendants' conduct entirely disseminated any and all employment,

sponsorships and relationships with employers, sponsors, clients or businesses

which previously respected and employed or sponsored Plaintiffs including

defamatory statements which were not only made in person but on social media

and in the news.

568.    Defendants' conduct was extreme and outrageous whereas; Defendants

Micah and Michael Humphries withheld pertinent information from a Court

Ordered subpoena issued and served by Plaintiffs in regard to their daughter;

including therapy records, communications and documents which verified the

fraud and perjury which was committed against Plaintiffs and the many illegal acts committed by the Humphries family against Plaintiffs.

569.     Defendants' conduct was extreme and outrageous whereas; Defendants lied to law enforcement on over seven different occasions.

570.     Defendants participated in attorney-media collusion and interference, compromising the fairness and integrity of the lawsuit which Plaintiffs were not yet served with and thereby, strategically disrupting the normal course of litigation and intentionally causing extreme harm to Plaintiffs including by influencing public perception and any potential juror prior to Plaintiffs having the ability to prepare a defense.

571.     Defendants possessed information and had access to information which showed that the statements within the lawsuit and later, the article were false but for which she posted her own false and defamatory statements.

572.     Defendant made statements for which they had no factual basis.

573.     Defendant suggested Plaintiffs were involved in a serious crime involving moral turpitude or a felony, exposing Plaintiffs to ridicule in which reflected negatively on Plaintiffs' characters, morality and integrity whereas, the defamatory statements impaired Plaintiffs' financial well-being including by publishing those suggested statements prior to Plaintiffs ever being served.

574.     Defendants intentionally induced innumerable third parties to break their contracts with Plaintiffs including because Defendants' defamatory statements

and false statements to a mass media and to law enforcement intentionally interfered with the Plaintiffs' ability to defend themselves or settle the lawsuit which came after and therefore, Defendant's actions constitute a tortious interference with Plaintiffs' legal rights.

575.    In the event any applicable statutes apply, Plaintiffs' claims must be tolled for the following reasons including but not limited to:

1) "During the pendency of a related lawsuit or arbitration related to the same defamatory statements" whereas, Defendant's defamatory posts and statements are at issue in four other pending lawsuits[25] and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*".

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as Michael Humphries being a licensed attorney who threated Plaintiffs on innumerable occasions in 2017, leading Plaintiffs to believe they could not seek legal recourse against them or associated third-parties.

3) A continuing wrong

And;

_____

[25] Case 1:24-cv-05026-JPC – Southern District Court of New York; Button et al v. Doherty et al / Case 1:24-cv-03757-MKV – Southern District Court of New York; Button et al. v Breshears / Case 0:24-cv-60911-DSL Southern District Court of Florida and Case 1:24-cv-5888-LTS; Button et al v. The New York Times Company et al.

COMPLAINT AND DEMAND FOR JURY TRIAL

4)  Defendants' online misconduct, remaining anonymous to avoid

consequence and recourse and continuing to defame and harass

Plaintiffs in the media.

576.      Defendants' actions were a direct and proximate cause of harm against

Plaintiffs.

577.      Plaintiffs have actual knowledge that substantial additional evidentiary

support, which is in the exclusive possession of Defendants and other third parties

including but not limited to non-parties, Defendants' agents and other third-

parties, which will exist for the allegations and claims set forth above after a

reasonable opportunity for discovery.

578.      Defendants acted intentionally and/or recklessly whereas, the Defendant's

conduct was extreme and outrageous and was the direct cause of Plaintiff's severe

emotional distress in which Plaintiffs continue to suffer today.

579.      Defendant is equitably estopped from asserting a statute of limitations as a

defense and allowing her to do so would be **unjust.**

580.      Plaintiffs' statutes, if any, must be tolled.

581.      Defendants are equitably estopped from asserting a statute of limitations

defense as to Plaintiffs' claims.

582.      Allowing Defendants to do so would be **unjust**.

COMPLAINT AND DEMAND FOR JURY TRIAL

583.     WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT V – DEFAMATION PER SE

### *Plaintiffs against Defendants*

584.     Plaintiffs repeat, reallege and incorporate each and every allegation contained above as though fully set forth herein.

585.     The unprivileged statements made by Defendants to others about Plaintiffs were false and defamatory.

586.     The unprivileged statements made by Defendants to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct and recently unethical misconduct.

587.     Defendant published such statements with actual malice, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

588.     At the time such statements were made by Defendants, they knew or should have known that they were false and defamatory.

589.     Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

590.      The statements were not privileged.

591.      Defendant's statements are so bad they immediately subject a person or a company to hatred, distrust, ridicule, disgrace and contempt, constituting defamation per se.

592.      The statements were published by Defendant with actual malice, oppression, and/or reckless disregard for the truth in that she was aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

593.      Defendant possessed information and had access to information that showed their statements were false.

594.      Defendant also made statements for which they had no factual basis including but not limited to by admitting a recorded call that she never spoke to anyone that *would be involved in the New York Times article or later, the Nevada litigation aside from Sage Humphries and her best friend and non-party, Hannah Stolrow, verifying that there was no truth, evidence or verification to her defamatory allegations.*

595.      *Defendant suggested Plaintiffs were involved in a serious crime involving moral turpitude or a felony, exposing Plaintiffs to ridicule in which reflected negatively on Plaintiffs' characters, morality and integrity whereas, the defamatory statements impaired Plaintiffs' financial well-being.*

596.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute defamation per se.

597.     Defendants made false and defamatory statements to a mass audience in which were so widely understood to be harmful that they are presumed to be defamatory as Defendants made statements which accused Plaintiffs of committing crimes against children, particularly, ("young girls") and "predatory behavior".

598.     Defendants' defamatory statements were intentionally and specifically timed to prevent Plaintiffs from seeking recourse against them as Plaintiffs could not afford to file claims against Defendants, as their defamatory statements immediately destroyed Plaintiffs' ability to work and to generate income; this was an additional and intentional act so that Plaintiffs could not seek recourse against Defendants until now.

599.     Defendants are equitably estopped from asserting a statute of limitations as a defense; allowing them to do so would be unjust.

600.     Plaintiffs' statutes, if any, must be tolled.

601.     In the event any applicable statutes apply, Plaintiffs' claims must be tolled for the following reasons including but not limited to:

1) "During the pendency of a related lawsuit or arbitration related to the same defamatory statements" whereas, Defendant's defamatory posts and statements are at issue in four other pending lawsuits[26] and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*".

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as Michael Humphries being a licensed attorney who threated Plaintiffs on innumerable occasions in 2017, leading Plaintiffs to believe they could not seek legal recourse against them or associated third-parties.

3) A continuing wrong

And;

4) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse and continuing to defame and harass Plaintiffs in the media.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

---

[26] Case 1:24-cv-05026-JPC – Southern District Court of New York; Button et al v. Doherty et al / Case 1:24-cv-03757-MKV – Southern District Court of New York; Button et al. v Breshears / Case 0:24-cv-60911-DSL Southern District Court of Florida and Case 1:24-cv-5888-LTS; Button et al v. The New York Times Company et al.

COMPLAINT AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendants, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial, including but not limited to:

    A.  Entering judgment against the Defendants on all claims made against them in this Complaint;

    B.  Entering an Order directing that Defendants pay Plaintiffs reasonable fees and costs pursuant to any applicable law;

    C.  For actual damages in an amount to be proven at trial;

    D.  For punitive damages in an amount to be proven at trial;

    E.  For costs of suit;

    F.  For pre-judgment and post-judgment interest on the foregoing sums;

    G.  For such other and further relief as the Court deems proper.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

### DEMAND FOR JURY TRIAL

2      Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby request a

3

4    trial by jury on all causes of action asserted within this pleading.

5

6      Respectfully dated this 7th day of August, 2024,

7

8    _____

9    Dusty Button and Mitchell Taylor Button (*Pro se*)
     101 Ocean Sands Ct.

10   Myrtle Beach, SC 29579
     Email: worldofdusty@gmail.com

11   Phone: 310-499-8930
     Phone: 310-499-8702

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                169

27

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was filed through the District Court of Central California's electronic filing system on August 7th, 2024.

Dated this 7th day of August, 2024,

/s/_____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/_____

Signature of Plaintiff Mitchell Taylor Button (*Pro  se*)

170
COMPLAINT AND DEMAND FOR JURY TRIAL

# APPENDIX OF EXHIBITS

1. Attached hereto as Exhibit A is a true and correct copy of the May 28th, 2017 Orange County Sheriff's Department report filed by Sage Humphries' father where Sage Humphries stated there was no validity to his statements.

2. Attached hereto as Exhibit B is a true and correct copy of the July 22nd, 2017 Orange County Sheriff's Department report filed by Sage Humphries and her parents whereas; the report was unfounded based on her interview and the viewed text messages from Sage Humphries to Plaintiffs.

3. Attached hereto as Exhibit C is a true and correct copy of text messages between Sage Humphries and her mother as stated in the complaint from 2017.

4. Attached hereto as Exhibit D are true and correct copies of various text messages and messages through Snapchat from Sage Humphries during the course of their relationship in 2017 and during the events which took place in 2017.

5. Attached hereto as Exhibit E is a true and correct copy of messages sent to Plaintiffs by Sage Humphries regarding a "fake break up" in 2017.

6. Attached hereto as Exhibit F is a true and correct copy of text messages between Sage Humphries and Plaintiffs in 2017.

7. Attached hereto as Exhibit G is a true and correct copy of the Order of the Nevada District Court denying Sage Humphries' Motion to Dismiss Plaintiffs Counterclaim of Defamation against her on February 2nd, 2023.

8. Attached hereto as Exhibit H is a true and correct copy of text messages between Sage Humphries and Plaintiffs in 2017.

9. Attached hereto as Exhibit I is a true and correct copy of a letter sent from Plaintiffs previous attorney, Marc Randazza to Daryl Katz' attorney regarding the text messages expose Defendants' friend Sage Humphries and billionaire Daryl Katz, (owner of the Edmonton Oilers NHL team), for the illegal prostitution that the Nevada litigation was initiated to cover up as well as Plaintiffs' declarations of support from the Nevada District Court – case 2:21-cv-01412-ART-EJY.

10. Attached hereto as Exhibit J is a true and correct copy of Defendants' post with non-party co-conspirator Hannah Stolrow on her anonymous account @real_world_ballerina.

11. Attached hereto as Exhibit K is a true and correct copy of a message sent from Sage Humphries to Plaintiffs in 2017.

12. Attached hereto as Exhibit L is a true and correct copy of a police report filed with the Bedford, New Hampshire Police Department by Plaintiffs against Jane Doe after reaching out to law enforcement for help, as they have never met Jane Doe 1.

13. Attached hereto as Exhibit M is a true and correct copy of various text messages sent to Plaintiffs by Sage Humphries in 2017 via Snapchat.

# EXHIBIT A

| 9/13/2023 | **Orange County Sheriff Department** | 11:33:44AM |
|---|---|---|
| | **Call Detail Information Report** | |
| | Call Number:  170528-0691 | |

| Call Number | 170528-0691 |
|---|---|

## Call Detail Information

| Call Number | Class | Taker | Pos | Call Owner | | Date - Time Received | Cat |
|---|---|---|---|---|---|---|---|
| 170528-0691 | G | ROSECL | 10 | | | 05/28/2017  18:28:29 | 0 |

| Complaint | | | Ten Code | Priority | Disp Zone | IRA | How Received |
|---|---|---|---|---|---|---|---|
| 415F DISTURBANCE-FAMILY DISPUTE | | | | 2 | NO | RO01 | WIRE |

| Incident Location | Apt/Suite | Floor/Bldg | Incident City | Grid |
|---|---|---|---|---|
| 11340 WEMBLEY RD | | | RO | 796H3 |

| Caller Name | Patrol Zone | Telephone | Tower ID | Jurisdiction | Tract |
|---|---|---|---|---|---|
| HUMPHRIES, MICHAEL | 06 | 562-756-2693 | 949-511-0580 | OCSD | RO |

| ☐ Images | ☐ Medical | ☐ Hazard | ☒ Previous | | ☐ DR Issued in Error |
|---|---|---|---|---|---|

| ALI Time | Call Rec'd | Xmit | Dispatch | Enroute | OnScene | Departed | Arrived | Comp | Unit |
|---|---|---|---|---|---|---|---|---|---|
| 18:28:18 | 18:28:29 | 18:30:36 | 18:30:50 | 18:30:50 | 18:46:04 | | | 19:20:26 | 4a08 |

| Narrative |
|---|

[05/28/2017 19:20:25 : pos2 : chano]
[Cleared with unit 4A08]

[05/28/2017 19:19:37 : MOB : 4A08]
Spoke with informant who stated daughters ex boyfriend boarded a flight from boston to his home. informant believes his daughter is going to be taken from his home and taken back to boston. spoke with daughter sage who stated there is no validity to the statements made by her father. Sage feels safe and there will be no harm done to her family. sage agreed to travel to Sacramento to visit family. no crime committed. 10-98

[05/28/2017 19:13:52 : pos2 : chano]
Unit : 4A08
C4

[05/28/2017 19:05:17 : pos2 : chano]
Unit : 4A08
10-6

[05/28/2017 18:48:26 : pos2 : chano]
Unit : 4A08
HAVE CONTACT

[05/28/2017 18:30:36 : pos10 : ROSECL]
Cross streets: SHAKESPEARE DR//CHESNEY DR
NBH: 796H3   90720  33.7986273663148,-118.081774826051
INF VS 19 YO DTR IN A 415V      INF IS UPSET THAT DTRS FRIENDS FROM BOSTON ARE POSS ENRTE TO THE HOUSE
FROM BOSTON   PER INF THEY POSS BOARDED A PLANE 8 HRS AGO

| Location Comment |
|---|

NBH: 796H3    90720  33.7986273663148,-118.081774826051

## Call Dispositions

| Date - Time | Disposition | Unit |
|---|---|---|
| 05/28/2017  19:19:48 | Assist | 4A08 |
| 05/28/2017  19:20:25 | No Report Needed | 4A08 |

# EXHIBIT B

| 12/17/2020 | Orange County Sheriff Department | 11:21:18AM |
|---|---|---|

**Call Detail Information Report**

Call Number: 170722-0273

**Call Number** 170722-0273

## Call Detail Information

| Call Number | Class | Taker | Pos | Call Owner | Date - Time Received | Cat |
|---|---|---|---|---|---|---|
| 170722-0273 | C | CEValdivia | 12 | | 07/22/2017 11:21:32 | 0 |

| Complaint | | Ten Code | Priority | Disp Zone | IRA | How Received |
|---|---|---|---|---|---|---|
| 422R CRIMINAL THREATS REPORT | | | 3 | NO | RO01 | |

| Incident Location | | Apt/Suite | Floor/Bldg | Incident City | Grid |
|---|---|---|---|---|---|
| 11340 WEMBLEY RD | | | | RO | 796H3 |

| Caller Name | Patrol Zone | Telephone | Tower ID | Jurisdiction | Tract |
|---|---|---|---|---|---|
| HUMPHRIES, SAGE | 06 | 714-287-2693 | - - | OCSD | RO |

☐ Images     ☐ Medical     ☐ Hazard     ☒ Previous     ☐ DR Issued in Error

| ALI Time | Call Rec'd | Xmit | Dispatch | Enroute | OnScene | Departed | Arrived | Comp | Unit |
|---|---|---|---|---|---|---|---|---|---|
| | 11:21:32 | 11:22:59 | 11:23:59 | 11:23:59 | 12:27:09 | | | 14:57:52 | 1a06 |

**Narrative**

[07/22/2017 14:57:52 : pos1 : HixsonC]
[Cleared with unit 1A06]

[07/22/2017 14:57:00 : MOB : 1a06]
OTHER DEPUTIES HAVE BEEN DISPATCHED TO THE HOUSE REFERENCE SIMILAR CALLS AND THE CALLS WERE UNFOUNDED.

[07/22/2017 14:54:54 : MOB : 1a06]
INF STATES HER DAD ALLOWS HER TO USE THE PHONE BY PERMISSION ONLY, AND HAS SAVED ALL COMMUNICATIONS ON TE PHONE. INF IS WILLINGLY COMMUNICATING WITH THEM ON HER BROTHERS PHONE WHEN SHE DOES NOT HAVE HER DADS PHONE.

[07/22/2017 14:52:19 : MOB : 1a06]
WHEN SHE RETURNS TO BOSTON. SHE HAS BEEN IN CONSTANT COMMUNICATION WITH THE COUPLE WHILE HERE IN ROSSMOOR. SHE ALLOWED ME TO VIEW HER TEXT MESSAGES WITH THEM AND THE MESSAGES WERE INCONSISTANT WITH THE STATEMENTS SHE MADE IN THE INTERVIEW. THE INF IS 19, INPRESSIONABLE, AND WAS ABLE TO WALK AWAY OR LEAVE THE RELATIONSHIP AT ANY TIME AND CHOSE TO STAY IN IT. TE CRIMES WERE UNFOUNDED AND THE FATHER STATED THEY ARE IN THE PROCESS OF ATTEMPTING TO OBTAIN RESTRAINING ORDERS IN BOSTON.

[07/22/2017 14:48:22 : MOB : 1a06]
FATHER STATED HE CONTACTED BOSTON PD A COUPLE OF MONTHS AGO TO RELAY THE INFORMATION AND THEY ADVISED HIM WHEN THEIR DAUGHTER IS READY TO SPEAK WITH THEM, THEY WILL LOOK INTO IT. INF IS RETURNING TO BOSTON IN A COUPLE OF WEEKS FOR WORK AND WAS PLANNING ON TELLING BOSTON PD ABOUT THE RELATIONSHIP.

[07/22/2017 14:47:11 : MOB : 1a06]
THE 422 WAS UNFOUNDED BASED ON THE INTERVIEW. THE STATEMENTS MADE ON SNAPCHAT WERE INTERPRETED AS SEXUAL IN NATURE AND NOT IMPLIED TO MEAN GREAT BODILY INJURY OR DEATH. THE SEXUAL RELATIONS INCLUDED 'BONDAGE' TYPE ROLE PLAYING AND SHE BELIEVED THE STATEMENT WAS REFERENCE TO 'BONDAGE'

[07/22/2017 14:45:38 : MOB : 1a06]
CONTACTED INF WHO STATED SHE IS A BALLET DANCER IN BOSTON WHO BEFRIENDED A COUPLE ( MITCHELL TAYLOR MOORE AND DUSTY RACHEL BUTTON) ASSOCIATED WITH THE DANCE COMPANY SHE WORKED FOR. SHE WILLINGLY STAYED AT THERE APARTMENT MOST OF THE TIME, CONSENTED TO ENGAGING IN AN OPEN ROMANTIC RELATIONSHIP WITH THEM, HAD CONSENSUAL INTIMATE RELATIONS WITH THEM FOR A FEW MONTHS. 261 WAS UNFOUNDED BASED ON THE INTERVIEW.

Page 1 of 4

# EXHIBIT C



+17147███████Mom ☐ — May 17, 2017 08:07:08

They are not your masters

+1714█████Mom ☐ — May 17, 2017 08:08:16

I don't know what control

+1714█████Mom ☐ — May 17, 2017 08:08:32

I'm pretty sure this is a threesome

+17147██████Mom ☐ — May 17, 2017 08:08:41

And I'm completely weirded out by all of it

+1714█████Mom ☐ — May 17, 2017 08:10:48

You've known them 3 months

+1714█████Mom ☐ — May 17, 2017 08:14:02

I love you sage but this situation is destructive to you

+17142█████Mom ☐ — May 17, 2017 08:14:12

And not healthy

+1562████████Sage Nicole Humphries — May 17, 2017 08:15:18

1) dusty is texting you regarding what you said about her to dr k



+1562 ███████ Sage Nicole Humphries — May 17, 2017 08:15:37

2) you are paranoid and sound crazy regarding this relationship

+1714 ███████ Mom ☐ — May 17, 2017 08:15:44

It is weird sage

+1562 ███████ Sage Nicole Humphries — May 17, 2017 08:15:47

3) this is my choice

+1714 ███████ Mom ☐ — May 17, 2017 08:15:55

Sage

+1562 ███████ Sage Nicole Humphries — May 17, 2017 08:15:58

4) my life my summer

+1714 ███████ Mom ☐ — May 17, 2017 08:16:02

I love you with all my heart

+1562 ███████ Sage Nicole Humphries — May 17, 2017 08:16:28

Nobody is controlling my life, you are the only person trying to do so

# EXHIBIT D



To: Dussy Burr, +1 (562)

5/5/17, 5:51 AM

+1 (562)

To the loves of my life,
I'm finally in bed. I cleaned up all of everything and am ready for her to come in now.
I just want you both to know, that leaving this morning felt like torture.
I know with all of my heart where I'm supposed to be, and it's with you. I want to show you how dedicated I am, and I want to show you that I can be trusted. You have given me so much, and have selflessly poured your hearts into me. I am forever grateful for that love, for the time, and for your two amazing people. I am lucky, and I want you both to feel how much I value this relationship. I won't leave you, I won't compromise. I am yours.

For you two ***

Thank you for everything. Your patience, graciousness, and sacrifice is not unnoticed. I won't let you down anymore

I love you taylor, and I love you Dusty

Hannah Storlowe          5/27/17
HS   Are you okay? I apologize it it
     caused / causes you any grief

Dussy Burr & +1 (56...   5/25/17
We love you. We are here every
second of the day when you a...

+1 (562)                 5/25/17
You need to see that right,
proof of it - And when it was b...

+1 (714)                 5/16/17
Just sent you package - should
be there Friday or sat ... tracki...

+1 (562)                 5/6/17
It take long time

+1 (714)                 5/5/17
Attachment: 1 Image

+1 (                     7/13/17
Attachment: 1 Audio File

+1                       7/2/17
Attachment: 1 Audio File

+1                       6/6/17

+1                       5/29/17
I'm glad to hear it. Sage is one
of best friends and all I want f...

2 Accounts
Offline

iMessage

Details

Ex. pg. 008

To: +1 (562)

I have been since the beginning too Tay. I'm sorry I haven't given you what you deserve. I'm so far in love with you I could never go back

This is exactly what I need

That that you are doing

I'm yours

I know what you need

I am capable of giving you everything you need

And want to be that person forever

I love you

I'm yours baby

All yours

I am so in love with you Taylor

Thank you for showing me grace and mercy and what love really means

I will do this for you

Thats why I am so in love with you. thank you for this

You have all of me still I promise

Always will

I know and I believe you

Everything is feeling super equal now... so it makes me ask... do you feel weird touching or kissing me when she's not there?

?

I understand that clearly now and don't want it with anyone but you. I need it too and am running on empty

Not at all I need that, I need that privacy - I am just not down with you having it with anyone else

Coming right up then

5/18/17, 4:37 PM

iMessage

---

**Contacts sidebar:**

- +1 (562) — 7/13/17 — Attachment: 1 Audio File
- +1 (714) — 7/2/17 — Attachment: 1 Audio File
- +1 — 6/5/17
- +1 (760) — 5/29/17 — I'm glad to hear it. Sage is one of best friends and all I want I...
- **Hannah Storlowe** — 5/27/17 — Are you okay? I apologize if it caused / causes you any grief
- **Dussy Burr & +1 (56...** — 5/25/17 — We love you. We are here every second of the day when you a...
- +1 (562) — 5/25/17 — You need to see that right ... proof of it - And when it was b...
- +1 (714) — 5/18/17 — Just sent you package - should be there Friday or sat ...(track)...
- +1 (562) — 5/6/17 — It take long time
- +1 (714) — 5/5/17 — Attachment: 1 Image

2 Accounts
Offline

Details



Details

To: +1 (562)

**+1 (562)**     7/13/17
Attachment: 1 Audio File

**+1 (714)**     7/2/17
Attachment: 1 Audio File

**+1 (909)**     6/5/17

**+1 (760)**     5/29/17
I'm glad to hear it. Sage is one
of best friends and all I want f...

**Hannah Stordowe**     5/27/17
Are you okay? I apologize if it
caused / causes you any grief

**Dussy Burr & +1 (56...**   5/25/17
We love you. We are here every
second of the day when you a...

**+1 (562)**     6/28/17
You need to see that fight.
proof of it - And when it was b...

**+1 (714)**     5/16/17
Just sent you package - should
be there Friday or sat - track...

**+1 (562)**     5/6/17
It take long time

**+1 (714)**     5/5/17
Attachment: 1 Image

This is it.. like really.. for me I know in my heart

You are mine

I can't lose the other half of me

You literally complete my heart

I want that

Thank you

I need you like that

I can't go backwards

I'm so sorry for the pain I've caused you

I won't... but I can't be ok because I want your heart to be ok

I love you more than anything/ anyone

I want you to remember the girl who ran down to the basement to be with you

I will be yours

That is who I am

You are who I love

Every time I touch you under the table

Ever glance

*every

You never will

I'm yours

YOURS ALONE

Dont then

Its okay I love you

I will never forget her

I know she is you and you are her

Be mine

I love you

2 Accounts
Offline

Ex. pg. 011

To: Dussy Burr, +1 (562)

Walking away from you was so hard

We love you so much and in the morning will have a long message of feelings for you to read at work

Dussy Burr
We are so in love with you

+1 (562)
I'm so in love with you both

Sitting across from you staring at you both

Ugh

We will put everything into one to send you in the morning but before you can't message we want to make sure that you know Sunday, we want to hold you all day and night

Always our girl?

+1 (562)

Always your girl

I'm yours

Forever

We are yours, I am and Dussy is. Forever

We want to take care of you. Sunday

+1 (562)
I can't picture a life without you both

+1 (562)
I want us to have kids

Like I'm not joking

I can see it's

Those eyes though - we were both saying...you are so beautiful

Dussy Burr

Seeing you exit the building tonight without being able to be open was so hard, and we want the same

Kids, would be lucky to have the love that the 3 of us could offer them

+1 (562)

*it

iMessage

**Sidebar conversation list:**

+1 (562) — 7/13/17
Attachment 1 Audio File

+1 (714) — 7/2/17
Attachment 1 Audio File

+1 (909) — 6/6/17

+1 (760) — 5/29/17
I'm glad to hear it. Sage is one of best friends and all I want I...

HS  Hannah Stortowe — 5/27/17
Are you okay? I apologize if it caused / causes you any grief

Dussy Burr & +1 (56... — 5/25/17
We love you. We are here every second of the day when you a...

+1 (562) — 5/25/17
You need to see that light, proof of it – And when it was b...

+1 (714) — 5/16/17
Just sent you package – should be there Friday or sat... tracki...

+1 (562) — 5/6/17
It take long time

+1 (714) & +... — 5/6/17
Attachment 1 Image

2 Accounts
Offline

Ex. pg. 012

Details

To: Dussy Burr,  +1 (562)

I'm doing this for Sage

Okay

didn't get a call?

Me going to your house gives you anxiety?

Okay well it's my job to make you guys happy, so whatever it takes

It is actually upsetting to feel like I have to convince someone - and do so on a weekend where I felt shut out

Dussy Burr
Oh boy that's fun lol
She loves you

Dussy Burr
I'm sorry baby
Sorry one sec I'm taking dogs

+1 (562)
Sorry didn't mean to call I know you're working

+1 (562)
I started and then hung up
I don't know why this gives me anxiety
But it's the one trigger that stresses me out more than anything
But you're the best boyfriend
I don't know how to thank you and dusty for being so good to me and caring
Because I hate throwing this on you
Knowing it makes you upset

+1 (562)
I hate it and I'm sorry... but at the same time makes me love you so much
No not you actually going to my house; but my family

+1 (562)
You lift stresses off of my shoulders, care more than anyone else, and make me feel so loved and happy

Message

**Contact list (left sidebar):**

+1 (562)  7/13/17
Attachment: 1 Audio File

+1 (714)  7/2/17
Attachment 1 Audio File

+1 (909)  6/5/17

+1 (760)  5/29/17
I'm glad ... message is one of best friends and all I want I...

Hannah Storlowe  5/27/17
Are you okay? I apologize if it caused / causes you any grief

Dussy Burr & +1156...  5/25/17
We love you. We are here every second of the day when you a...

+1 (562)  5/25/17
You need to see that flight, proof of it – And when it was b...

+1 (714) ...  5/16/17
Just sent you package - should be there Friday or sat... tracks...

+1 (562)  5/6/17
It take long one

+1 (714)  8...  5/5/17
Attachment: 1 image

2 Accounts
Offline

# EXHIBIT E



























# EXHIBIT F









+1563█████ Sage Nicole Humphries    May 23, 2017 13:12:29

Celso just said this movie is basically us and we should watch it stoned

+1562█████ Sage Nicole Humphries    May 23, 2017 13:12:34

He said we would love it

+1563█████ Sage Nicole Humphries    May 23, 2017 13:12:36

Hahahahaha

+1617█████ Dusty    May 23, 2017 13:13:39

I said that before

+1563█████ Sage Nicole Humphries    May 23, 2017 13:13:49

Really??

+1563█████ Sage Nicole Humphries    May 23, 2017 13:13:57

I never heard of this movie before

+1617█████ Dusty    May 23, 2017 13:13:58

Yea



# EXHIBIT G

# Humphries et al v. Button Order on Motion to Dismiss

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## United States District Court

### District of Nevada

## Notice of Electronic Filing

The following transaction was entered on 2/17/2023 at 12:08 PM PST and filed on 2/17/2023

**Case Name:** Humphries et al v. Button

**Case Number:** 2:21-cv-01412-ART-EJY

**Filer:**

**Document Number:** 131

**Docket Text:**
ORDER re ECF No. [69] - Based on the details herein and in light of the record as a whole, the Court denies Sage Humphries' Motion to Dismiss the counterclaim of defamation per se. Signed by District Judge Anne R. Traum on 2/17/2023. (Copies have been distributed pursuant to the NEF - CJS)

# EXHIBIT H

✈    5:08 PM    53% 🔋

+1 (714) 2 ███████

And btw .. dr Kesten knows Sage smokes weed.  She helped her with that when she came back from New York and was a mess!    7:10 AM

Sun, May 28, 12:48 PM

It's me    12:48 PM

I don't know what to do    12:49 PM

Going to Sacramento    12:49 PM

Need help    12:50 PM

I will try to call    12:50 PM

At airport    12:50 PM

Tay?    12:51 PM

Dusty?    12:52 PM

Hello    12:59 PM

❤️    12:59 PM

😊    12:59 PM

    

Text Message

31
Ex. pg. 021



Ex. pg. 022



# EXHIBIT I

# RANDAZZA
## LEGAL GROUP

**Marc J. Randazza, JD, MAMC, LLM**
Licensed in AZ, CA, FL, MA, NV

**29 July 2022**

<u>Via Email Only</u>
<rklieger@hueston.com>

Robert N. Klieger
Hueston Hennigan LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014

*Re:    Humphries v. Button | Daryl Katz*

Dear Mr. Klieger:

I am writing in response to your letter dated July 14, 2022, the phone call we had on Sunday, July 17, 2022, and your letter dated July 24, 2022. I appreciate the time you have taken to discuss this matter.

First, I want to reiterate that we regret needing to bring Mr. Katz into this dispute, but this firm's duty to our clients requires that we pursue all options to defend our clients' interests. To that end, the Buttons' contribution claim against Mr. Katz remains both viable and necessary. In your letter, you point out that Nevada law does not recognize the sort of contribution claim that is brought in the Buttons' Third Party Complaint. We concede that this is true. However, this claim is brought under Massachusetts law, and not Nevada law.

Under Massachusetts law, there is no similar bar against a contribution claim arising from an intentional tort. *See* Mass. Gen. Laws ch. 231B; *see also Thomas v. EDI Specialists, Inc.*, 437 Mass. 536, 538-39 (2002). Specifically, Massachusetts's contribution statute states:

> Except as otherwise provided in this chapter, where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them.

Mass. Gen. Laws ch. 231B § 1(a); see also *Thomas*, 437 Mass. at 538-39 (noting that "[t]he language of the statute does not distinguish between intentional torts and negligence" and that this statutory right of contribution "is not limited to those causes of action that existed when the statute became effective"). Additionally, the Third Party Complaint for contribution against Katz is timely:



> (a) Whether or not judgment has been entered in an action against two or more tortfeasors for the same injury, contribution may be enforced by separate action. …
>
> (d) If there is no judgment for the injury against the tortfeasor seeking contribution, his right of contribution shall be barred unless he has either (1) discharged by payment the common liability within the statute of limitations period applicable to claimant's right of action against him and has commenced his action for contribution within one year after payment, or (2) agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution.

Mass. Gen. Laws ch. 231B § 3.

I have reviewed your research on Massachusetts law, and I respectfully disagree with your legal conclusions.  Please consider:

*Callahan v. A. J. Welch Equip. Corp.*, 36 Mass. App. Ct. 608, 609 (1994):

> The worker broke his leg and brought an action against the contractor and the excavator. The contractor filed claims for indemnity against the subcontractor and the excavator, which then cross-claimed for contribution. After the worker settled his claim against the contractor and the excavator, all that remained were the indemnity and contribution claims. Based on the jury's findings that the contractor was negligent and its negligence was the proximate cause of the accident and that both the subcontractor and the excavator "caused" the accident, the trial court ruled in part that the contractor was entitled to indemnification and that the excavator was entitled to contribution from the subcontractor. The subcontractor appealed.

Also, consider *Hopper Feeds, Inc. v. Cincinnati Milacron, Inc.*, 411 Mass. 273, 277 (1991):

> Where two or more persons become jointly liable in tort, Mass. Gen. Laws ch. 231B, § 1, creates a right of contribution among them. Mass. Gen. Laws ch. 231B, § 3, sets forth two alternative methods by which a party entitled to contribution can enforce that right. First, Mass. Gen. Laws ch. 231B, § 3(a) provides: Whether or not judgment is entered in an action against two or more tortfeasors for the same injury, contribution may be enforced by separate action. Section



> 3(a) creates a separate cause of action for contribution, enabling a party to seek contribution from other alleged joint tortfeasors who were not joined as defendants in the original action. Alternatively, Mass. Gen. Laws ch. 231B § 3(b) provides: Where a judgment is entered in an action against two or more tortfeasors for the same injury, contribution may be enforced in that action by judgment in favor of one against other judgment defendants by motion upon notice to all parties to the action. This section sets forth a simpler procedure by which a party can assert its contribution claims by motion against parties who were joined as defendants in the original action and against whom judgment has already been entered.

In other words, it seems that we are **compelled** to bring our cross claims now – as a jury would need to find that the two parties are jointly liable. It makes no sense to interpret this as meaning that first there must be a trial on the Buttons' liability, and then the Buttons bring a whole new claim against joint tortfeasors.  In order for a party to be liable for a cross-claim for contribution, a jury must find that the two parties are jointly liable. *MacIsaac v. Magic World Balloonary Inc.*, No. WOCV2011-00848A, 2013 Mass. Super. LEXIS 1734, *15 (Dec. 2, 2013). In *Rush v. Norfolk Elec. Co.*, 70 Mass. App. Ct. 373 (2007) there was a *fourth party* complaint by a third party defendant seeking contribution – before there was payment or adjudication.

The defendants are convinced that **perhaps** Ms. Humphries is emotionally damaged by her unconventional sexual relationships. However, to whatever extent her relationship with the Buttons caused her damage, it is inconceivable that the relationship she had with Katz (and the other cross-defendants) did not contribute to, if not entirely create, that emotional damage. Thus, they should be considered to be joint tortfeasors, and a cross claim for contribution is valid under Massachusetts law. *See Sanderson v. Benedetto*, No. 91-2483-D, 1993 Mass. Super. LEXIS 64, *22-23, 1993 WL 818656 (Oct. 14, 1993).

Here, Ms. Humphries and the Buttons were residents of Massachusetts both during Ms. Humphries's relationship with Mr. Katz and during the time period in which Ms. Humphries claims that the Buttons abused her. For those reasons, Massachusetts law applies to the Buttons' contribution claim.

Aside from the validity of the claim, the factual allegations likewise seem true based upon the credible testimony of my clients and the evidence that I have reviewed. By way of explanation, the Buttons possess a trove of evidence compiled from an iPhone backup that Sage Humphries left on one of their hard drives. These documents include extensive text messages between Sage Humphries and Mr. Katz, and seem to disprove Mr. Katz's contention that his

RANDAZZA
LEGAL GROUP

relationship with Sage was platonic and that he was only giving Sage money to fund a film that she was producing.

First and foremost, the text messages appear to be authentic. They were taken from a backup of Sage's iPhone, and the contact for Mr. Katz displays the telephone number (780) 498-0411. It should be relatively simple for you to verify whether or not that telephone number was in fact used by Mr. Katz during that period. Additionally, the text messages we have in our possession make it clear that the other party is Daryl Katz. In various messages, Mr. Katz refers to attending "NHL meetings" and discusses the sale of his Rexall business.

> Let me give u my for sure dates and maybe we can coordinate. I have NHL meetings....I'll pick u up in Boston if u like. Or send my plane back for you.

> Very tense. I sold Rexall to a big US company. We are dealing with regulators which is very painful and frustrating. They have unlimited power and are not accountable to anyone. We need approval by end of this week to close the deal this year which is imperative for tax purposes. I want to come see you dance etc...

We additionally find Mr. Katz's explanation as to his relationship with Sage unavailing. First, the money was clearly not for any film, but instead intended for Sage to use on herself. When discussing the money he was sending Sage, he repeatedly told her that she should use it on herself, for "clothes, jewelry, etc." and that she should "spoil" herself with it.

> I try to be but...I think u good person and u should spoil yourself a bit.

> What about money? Are u ok? Would like u to buy stuff for yourself. IE clothes, jewelry, etc...or whatever you need/want.

> If my guys send u funds will u spend it on/keep it for yourself?

> If u send me your wire instructions I will have my guys send some cash.



In fact, when Sage herself indicated that she wanted to use the money to further her career, Mr. Katz responded suggesting that she should use the money on herself personally, telling her again to "have some fun" and "spoil" herself with it.

> Your acct is open at UBS. The guys wil put 25K in. I also told them to get you debit card and put some cash on it OR you won't buy yourself anything....which I want you to do.

Aside from the money aspect, it seems clear that Katz was not interested in a business relationship with Sage; he was interested in sex. Katz made that clear in his text messages, where he told Sage that he found her attractive and wanted physical intimacy with her. He told her that he felt that she was "dangerous" for him, that he was willing to ply her with money to get what he wanted from her, and that he wanted to take her out on his boat.

> Good observation. You need to be tough...as I told you. How do I ever see you...and are u even interested? I need intimacy/passion/honesty/truth....and I demand nothing....I am honest...not jealous of anyone or anything...and searching for the meaning of life...that's it...I'd like to take you on my boat and just hang...but I don't even really know you...and vice versa.

> Daryl,
> I cannot begin to tell you how grateful I am. Your guidance and belief in me has meant the world.
> I am going to use this gift wisely, and learn all that I can from Michael and Anthony (who are wonderful by the way). I realize that this is an incredible opportunity to build myself as a brand, and invest in my future and career. Thank you so for giving me this chance. I can't wait to show you what I can accomplish!

> Look...obviously I find u attractive and want intimacy with you...BUT...physical and mental "intimacy"....To be perfectly honest...I can have pretty much any woman I want...yet... I find them all the same...boring. You seem different...If I didn't think so...I would not have bothered. I understand what is important to you...and I admire it...and it attracts me to you. I feel you are "dangerous" for me...which is good. I need danger. I would not go to this extent if all I wanted to do was sleep with you. For it to work... we need to have a mutual attraction and appreciate our respective wants/needs. I will never manipulate you with money. At some point it would be my preference to take money off the table all together...so you have enough so that u don't need me...and never have to worry. Then all u will need is my mind:)

Tue, Aug 30, 7:46 PM

> Relax. Have some fun. Spoil yourself.

Additionally, if the evidence presented in these text messages is insufficient for you or Mr. Katz, I have enclosed declarations from both Dusty and Mitchell Button wherein they attest under penalty of perjury as to their knowledge of statements made by Ms. Humphries herself which support the facts alleged.

The representations you made in your letter and repeatedly in the press alleging that Sage and Katz were solely in some sort of business relationship are false. I do not necessarily attribute this to you, however; it is possible that you were simply misinformed by your client. However, should you present these false allegations in court, we will have no choice but to litigate the truth of this matter. In contrast to the evidence-free denials that you have given to the press, our clients have the proof to back up their claims.

As an additional fact, we do not agree with your assessment that Sage's date of birth is October 3, 1997. Instead, the Buttons understand that Sage was born in 1998, supporting the allegations that she was underage when she met Katz. If you have supporting documentation to dispute this assertion, we will certainly take that under advisement and will absolutely correct our pleading with respect to this fact. However, our clients had no reason to doubt Ms. Humphries when she attested to the fact that she was born in 1998. Nevertheless, this seems like an easily-provable fact, and should Sage have lied to our clients about her age, that should not be Mr. Katz' problem – and we will correct that.

I would like to address your comments to the press on this matter. We have no desire to harm Mr. Katz' reputation. In fact, to the contrary, our statements to the press have been "we are not trying this matter in the press." I also note that you have referred to this as a "shakedown" – but perhaps we assign different meanings to that word. I would perhaps agree that it is a "shakedown" if the Buttons had asked for any money from Mr. Katz – for themselves. But here, the only intent is to ensure that if Ms. Humphries is, indeed, emotionally damaged from her lifestyle choices, and that her partners in those choices are therefore liable, that the cost of the relative damage be fairly apportioned to all who participated in it.

We understand that Mr. Katz denies having a sexual relationship with Ms. Humphries. We believe that the evidence we have discovered thus far tells a different story. While we realize that Ms. Humphries may not have the most intact integrity, it is a fact that she told the Buttons that she was sleeping with Mr. Katz, and that is what the money was for. We applied some skepticism to this, until we saw the text messages. Further, we are aware that there is at least one other pay-for-sex allegation in the press, and while we did not give that the same weight as actual evidence, it certainly contributed to our reasonable belief that the story is true. I will also report that I personally received a mysterious phone call from a very nervous individual who claimed to have information about "dozens" of other

women with the same story. I am obviously giving that the weight it currently deserves – as it could be someone with a vendetta against Katz, or it could even be someone with a vendetta against me, who is trying to set me up for failure. In fact, it could be an agent of Katz who is trying to set me up to be discredited. Accordingly, I will be chasing that thread further, but I am telling you this in the interest of full disclosure. Mr. Katz knows better than anyone if this call was clearly someone spreading falsehoods, or if the allegations this caller made have any weight at all.

I sincerely respect that you are a strong and unwavering advocate for your client. However, I believe that the consistent threats are not helpful. In fact, if you are going to back us into a corner, what would you have us do? Do you think that based on the facts reported to you here (and further developing as we go through the data we have)and our legal position, that this was truly beneath the requirements of Rule 11?

I further respect how you have tried to change the press narrative on this matter. Again, you have a client to defend, both in court and in the court of public opinion. However, I hope you have also seen that we have not said a single thing to smear Mr. Katz, and in looking at the texts we gave you in this letter, I hope that you see that we only filed what we felt was necessary to automatically refute a Rule 11 motion. We found no need to do a full data dump. What you should take from that is perhaps to find a desire to work a little more collaboratively with us, and not to attack us at every juncture.

Despite all of the above, we are not rejecting out of hand any resolution to this matter – and we continue to entertain your request that we drop the matter without prejudice, with a tolling agreement. We remain concerned that doing so would unreasonably prejudice our clients. But, the channels of communication are open for you to persuade us otherwise.

The thing that may close these channels of communication will be the continued threats of unreasonable claims against our clients or our firm.  We brought this cross claim in good faith, to serve our clients' interests – as we are bound to do. We conducted a more-than-good-faith investigation into the facts and the law. We further required our clients to swear to all of this under penalty of perjury. We did not ask for a dime from Mr. Katz, for our clients or ourselves. We did not seek the limelight that this case attracted.  In fact, we would very much like the press attention on it to go away – just as much as you do. There seems to be only one person involved in this who is enjoying the public's gaze upon the matter – and we have no control over her.

Humphries v. Button | Daryl Katz
Page 8 of 8



We remain open to speaking with you about this matter further and trying to find a creative solution to it. But, I do suggest that Mr. Katz re-evaluate his mistaken belief that he is involved in this for a bad-faith reason. I'm a lawyer doing my job, just like you. And I believe my clients' stories, just like you believe your client's denials. At some point, the truth (which is always somewhere in the middle) may need to be adjudicated by a trier of fact.

We appreciate your attention to this matter, and I look forward to another call with you, at your convenience.

Sincerely,

Marc J. Randazza

cc:     Clients (via separate email)

encl:   Declarations

1  Marc J. Randazza, NV Bar No. 12265
   Ronald D. Green, NV Bar No. 7360
2  Alex J. Shepard, NV Bar No. 13582
3  RANDAZZA LEGAL GROUP, PLLC
   2764 Lake Sahara Drive, Suite 109
4  Las Vegas, Nevada 89117
   Telephone: 702-420-2001
5  Email: ecf@randazza.com

6  Attorneys for Defendants
   Mitchell Taylor Button and Dusty Button

7

8              UNITED STATES DISTRICT COURT

9                  DISTRICT OF NEVADA

10

11  SAGE HUMPHRIES, GINA MENICHINO,         Case No. 2:21-cv-01412-ART-EJY
    ROSEMARIE DeANGELO, DANIELLE
12  GUTIERREZ, and JANE DOE 100, JULIET
    DOHERTY, and JANE DOE 200
13
                                            DECLARATION OF
           Plaintiffs/                      DUSTY BUTTON
14         Counterclaim Defendants,

15      v.

16  MITCHELL TAYLOR BUTTON and
    DUSTY BUTTON
17
           Defendants/
18         Counterclaim Plaintiffs /
           Third Party Plaintiffs,
19
20      v.

21  MICHAEL S. HUMPHRIES, MICAH L.
    HUMPHRIES, ANTHONY GIOVANNI
22  DEANE, DARYL ALLAN KATZ, and
    CHASE FINLAY,
23
           Third Party Defendants.
24

25

26

27



                        - 1 -
                Declaration of Dusty Button
                2:21-cv-01412-APG-EJY

Doc ID: 4b44a897f28348eaac9e51cea953af40aec4cb1f

**DECLARATION OF DUSTY BUTTON**

I, Dusty Button, declare:

1.      I am over 18 years of age and have never been convicted of a crime involving fraud or dishonesty. I have first-hand knowledge of the facts set forth herein, and if called as a witness could and would testify competently thereto.

2.      I am a Defendant, Counterclaim Plaintiff, and Third Party Plaintiff in the above-captioned proceeding.

3.      I make this declaration to clarify my understanding of Daryl Katz's relationship with Sage Humphries, a Plaintiff and Counterclaim Defendant in this action.

4.      Based on my conversations with Sage Humphries, a review of text messages between Katz and Sage, and my knowledge of public accusations against Katz by third parties, I fully believe that Katz and Sage were in a sexual relationship, and that Katz was paying Sage for sex, whether explicitly or implicitly.

5.      Sage told me that she had been seeing a billionaire and did not disclose his name.

6.      The first time Sage mentioned the "billionaire," she told me that she was seeing someone, although she was then already engaged in a separate relationship.

7.      Sage told me that she had met Katz at a modeling party when she was invited along with other models as entertainment, where he had taken a liking to her and informed her of his vast network of celebrity and industry friends, one of which she boasted about the most to be Leonardo DiCaprio. She also stated Katz told her that he could introduce her to Leo and that he could do a lot to benefit her career.

8.      I eventually came to understand that Sage was not romantically interested in this Katz, and that she was only interested in how he promised to further her career, whether that was by giving her money, introducing her to his wealthy and famous contacts, or by placing her in movies.

9.      From what Sage had explicitly told me, I understand that Sage was frequently traveling from Boston to New York City to spend time with Katz.

- 2 -
Declaration of Dusty Button
2:21-cv-01412-APG-EJY

Doc ID: 4b44a897f28348eaac9e51cea953af40aec4cb1f

10. At various times, Sage told me explicitly that she was sleeping with this un-named billionaire.

11. On one occasion, Sage admitted to me that she had "fucked" a billionaire. Specifically, I was playing a game of "Never Have I Ever" with Sage, and the prompt "never have I ever fucked a billionaire" arose. Sage made a show of lowering one of her fingers in response, signaling that she had indeed "fucked" a billionaire.

12. During the course of their relationship, to the best of my knowledge and according to Sage's own statements, she was 17 years old. However, when Sage was asked by Katz to confirm that she was 18 years old, she said yes, and then also claimed in a separate text that she was 19.

13. Sage would tell me that she had to do "favors" to appease the 'billionaire' so he would continue to give her the money to produce her own movie, a movie that she said he would set up for her because he had connections.

14. She referred to the money Katz gave her as "donations."

15. On at least one occasion, in reference to her relationship with Katz, Sage told me: "sometimes you have to do favors to get what you want." I understood this very clearly to mean that Sage was performing sexual favors on Katz in exchange for money.

16. In the course of preparing documents in this case, my husband and I discovered that we had in our possession an iPhone backup of Sage Humphries's phone that she uploaded to our personal hard drive in order to preserve the content from her phone before she returned it to her service provider upon receiving her upgrade. She was 7 days late returning her old device, causing the service provider to charge her account over $1,000. It became urgent, then, for her to save her data and return the old phone to remedy the charge on the account.

17. Upon discovering that this folder was Sage's backup on our hard drive, we then discovered text messages between Sage and Daryl Katz, wherein Katz discussed his feelings for Sage, and meeting up with Sage, and paying Sage large sums of money.

Doc ID: 4b44a897f28348eaac9e51cea953af40aec4cb1f

18.    Seeing these text messages as well as his contact information that she uploaded, I understood that the "billionaire" Sage had repeatedly referred to was Katz.

19.    After researching Katz, I discovered that an actress, Greice Santo, had publicly alleged that Katz offered her money and movie roles in exchange for companionship and sex, leading me to the concrete belief that this was a pattern that Katz was engaged in.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  07 / 19 / 2022        .

_____
Dusty Button

Doc ID: 4b44a897f28348eaac9e51cea953af40aec4cb1f

Ex. pg. 096

1 | Marc J. Randazza, NV Bar No. 12265
2 | Ronald D. Green, NV Bar No. 7360
Alex J. Shepard, NV Bar No. 13582
3 | RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
4 | Las Vegas, Nevada 89117
Telephone: 702-420-2001
5 | Email: ecf@randazza.com

6 | Attorneys for Defendants
Mitchell Taylor Button and Dusty Button

7

8 | **UNITED STATES DISTRICT COURT**

9 | **DISTRICT OF NEVADA**

| | |
|---|---|
| SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DeANGELO, DANIELLE GUTIERREZ, and JANE DOE 100, JULIET DOHERTY, and JANE DOE 200 | Case No. 2:21-cv-01412-ART-EJY |
| Plaintiffs/ Counterclaim Defendants, | **DECLARATION OF MITCHELL TAYLOR BUTTON** |
| v. | |
| MITCHELL TAYLOR BUTTON and DUSTY BUTTON | |
| Defendants/ Counterclaim Plaintiffs / Third Party Plaintiffs, | |
| v. | |
| MICHAEL S. HUMPHRIES, MICAH L. HUMPHRIES, ANTHONY GIOVANNI DEANE, DARYL ALLAN KATZ, and CHASE FINLAY, | |
| Third Party Defendants. | |

- 1 -
Declaration of Mitchell Taylor Button
2:21-cv-01412-APG-EJY

Doc ID: da5cfb4b6dd95fe132bfb0f2320c85ed74289592

Ex. pg. 097

**<u>DECLARATION OF MITCHELL TAYLOR BUTTON</u>**

I, Mitchell Taylor Button, declare:

1.      I am over 18 years of age and have never been convicted of a crime involving fraud or dishonesty. I have first-hand knowledge of the facts set forth herein, and if called as a witness could and would testify competently thereto.

2.      I am a Defendant, Counterclaim Plaintiff, and Third Party Plaintiff in the above-captioned proceeding.

3.      I make this declaration to clarify my understanding of Daryl Katz's relationship with Sage Humphries, a Plaintiff and Counterclaim Defendant in this action.

4.      Based on my conversations with Sage Humphries, a review of text messages between Katz and Sage, and my knowledge of public accusations against Katz by third parties, I fully believe that Katz and Sage were in a sexual relationship, and that Katz was paying Sage for sex, whether explicitly or implicitly.

5.      Sage told me that she had been seeing a billionaire and did not disclose his name.

6.      The first time Sage mentioned the "billionaire," she told me that she was seeing someone, although she was then already engaged in a separate relationship.

7.      Sage told me that she had met Katz at a modeling party when she was invited along with other models as entertainment, where he had taken a liking to her and informed her of his vast network of celebrity and industry friends, one of which she boasted about the most to be Leonardo DiCaprio. She also stated Katz told her that he could introduce her to Leo and that he could do a lot to benefit her career.

8.      I eventually came to understand that Sage was not romantically interested in this Katz, and that she was only interested in how he promised to further her career, whether that was by giving her money, introducing her to his wealthy and famous contacts, or by placing her in movies.

9.      From what Sage had explicitly told me, I understand that Sage was frequently traveling from Boston to New York City to spend time with Katz.

- 2 -
Declaration of Mitchell Taylor Button
2:21-cv-01412-APG-EJY

Doc ID: da5cfb4b6dd95fe132bfb0f2320c85ed74289592

10.    At various times, Sage told me explicitly that she was sleeping with this un-named billionaire.

11.    On one occasion, Sage admitted to me that she had "fucked" a billionaire. Specifically, I was playing a game of "Never Have I Ever" with Sage, and the prompt "never have I ever fucked a billionaire" arose. Sage made a show of lowering one of her fingers in response, signaling that she had indeed "fucked" a billionaire.

12.    During the course of their relationship, to the best of my knowledge and according to Sage's own statements, she was 17 years old. However, when Sage was asked by Katz to confirm that she was 18 years old, she said yes, and then also claimed in a separate text that she was 19.

13.    She referred to the money Katz gave her as "donations."

14.    On at least one occasion, in reference to her relationship with Katz, Sage told me: "sometimes you have to do favors to get what you want." I understood this very clearly to mean that Sage was performing sexual favors on Katz in exchange for money.

15.    In the course of preparing documents in this case, my wife and I discovered that we had in our possession an iPhone backup of Sage Humphries's phone that she uploaded to our personal hard drive in order to preserve the content from her phone before she returned it to her service provider upon receiving her upgrade. She was 7 days late returning her old device, causing the service provider to charge her account over $1,000. It became urgent, then, for her to save her data and return the old phone to remedy the charge on the account.

16.    Upon discovering that this folder was Sage's backup on our hard drive, we then discovered text messages between Sage and Daryl Katz, wherein Katz discussed his feelings for Sage, and meeting up with Sage, and paying Sage large sums of money.

17.    Seeing these text messages as well as his contact information that she uploaded, I understood that the "billionaire" Sage had repeatedly referred to was Katz.

Doc ID: da5cfb4b6dd95fe132bfb0f2320c85ed74289592

18.   After researching Katz, I discovered that an actress, Greice Santo, had publicly alleged that Katz offered her money and movie roles in exchange for companionship and sex, leading me to the concrete belief that this was a pattern that Katz was engaged in.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 07 / 19 / 2022             .

_____
Mitchell Taylor Button

RANDAZZA | LEGAL GROUP

- 4 -
Declaration of Mitchell Taylor Button
2:21-cv-01412-APG-EJY

Doc ID: da5cfb4b6dd95fe132bfb0f2320c85ed74289592

# EXHIBIT J

4:48



REAL_WORLD_BALLERINA

**Posts**

Follow



real_world_ballerina
Columbia University in the City of New York

• • •

    

Liked by **_sacha.martin** and **966 others**

**real_world_ballerina** My friend Hannah and I left high school when we were 16 in pursuit of a professional ballet career. Together we shared the sugar plum role, and helped one another pass our junior year of home schooling. As u know, I ended up quitting and going to college, eventually graduating from Cal. Hannah danced professionally for Colorado Ballet for a few years. She now majors in biology at Columbia University with plans for med school. There's life after

    

# EXHIBIT K



# EXHIBIT L





Case No. 2023-018418

**BEDFORD POLICE DEPARTMENT**
**CONTINUATION PAGE REPORT**

NARRATIVE

**Report Narrative:**
On Monday, July 24, 2023, at approximately 0930 hours, I was forwarded and email from the following individual,

Amara Adee
Communications Supervisor
Manchester Police Department
The Mich/AEl Briggs Safety Complex
405 Valley Street
Manchester, NH 03103

labeled as, *Police Report for* ██████████ from the following individuals,

Dusty and Taylor Button
Boston, Massachusetts

The Buttons reported that an individual who they identified as,

██████████
Bedford, NH 03110

and/or of

██████████
Boston, MA

who they deposed as part of an ongoing federal civil case, disclosed to her therapist,

██████████ Thonis
Clinical Social Worker
Mills Creek Counseling

that ██████████ was a minor at the time of her disclosure. The Buttons also reported that ██████████

The Buttons alleged that ██████████ could have provided false testimony under oath but noted that they felt an obligation to report the allegation as it would warrant an investigation.

The Buttons stated that ██████████ reported to have been residing at the Bedford, NH address at the time of ██████████ had did not reside in any way that it occurred at that location. It appeared to me that they were requesting an investigation be conducted by the Manchester Police Department regarding Thonis'

Case No. 2023-018418



Case No. 2023-018418

| OCA Event Number | CR No. | Phone Number | Other Agency Case # | Department Case Number |
|---|---|---|---|---|
| 23-19733 | N400006600 | 469-472-9713 | | 2023-018418 |

[if what] testified under oath was true:

While reviewing the email it occurred to me that the Button surname was something that I had previously researched at the request of the following,

Evan Picariello
Special Agent
Homeland Security Investigations (HSI)
Boston, MA

On Tuesday, January 18, 2022, at approximately 1553 hours, I corresponded with Special Agent Picariello who explained that he was assigned to the [redacted] and investigating several reports

Dusty Rachelle Button

Mitchell Taylor Moore, aka Mitchell Taylor Button, aka Taylor Button ( )

Special Agent Picariello stated that he was looking to identify a potential victim only known to him as Jane Doe

I conducted a search through the Bedford Police Department's Record Management System with negative results. I provided that information to Special Agent Picariello and that ended our contact.

Fast- forward to the present complaint, I recognized the connection and contacted Special Agent Picariello. He confirmed that the email I received was the result of the investigation he was involved in when he previously reached out to me. [redacted] He stated that although the criminal investigation did not result in charges, there is an ongoing civil litigation, and it appears that the Buttons are seeking any information pertaining to the plaintiffs in an effort to clear their names.

No crime occurred in Bedford.

**Follow-up:**
None.

| Print/Supervisor's Name | Page No | Report Date | Reviewed By |
|---|---|---|---|
| DETECTIVE AMY CHAMPAGNE/0980 | 2 of 2 | 06/06/2023 | D3 KEVIN SUTTER, 0989 |

Ex. pg. 083

# EXHIBIT M

**IMG_5408.MOV Info**

**IMG_5408.MOV** — 2.9 MB
Modified: Friday, July 14, 2017 at 11:34 PM

Add Tags...

▼ General:
Kind: QuickTime movie
Size: 2,945,667 bytes (2.9 MB on disk)
Where: NO NAME ▸ PROOF ▸ DUSTY & TAYLOR ▸ VIDEO ▸
SNAPCHAT VIDEO
Created: Friday, July 14, 2017 at 11:34 PM
Modified: Friday, July 14, 2017 at 11:34 PM
☐ Stationery pad
☐ Locked

▶ More Info:
▶ Name & Extension:
▶ Comments:
▶ Open with:
▶ Preview:

**Sage Nicole Humphries**

SAGE
Thank you baby, I like talking to you first thing...
all is fine. I'm sorry I couldn't talk sooner
yesterday
I had to go to therapy
They had me talk to this lawyer
And I got really upset and left
Also; it's 6:30 so I don't know when anyone will
wake up

ME
About what and why?



IMG_5155.MOV Info

3.7 MB

**IMG_5155.MOV**
Modified: Monday, July 3, 2017 at 9:19 PM

Add Tags...

▼ General:
   Kind: QuickTime movie
   Size: 3,697,949 bytes (3.7 MB on disk)
   Where: NO NAME ▸ PROOF ▸ DUSTY & TAYLOR ▸ VIDEO ▸
          SNAPCHAT VIDEO
   Created: Monday, July 3, 2017 at 9:19 PM
   Modified: Monday, July 3, 2017 at 9:19 PM
   ☐ Stationery pad
   ☐ Locked

▶ More Info:
▶ Name & Extension:
▶ Comments:
▶ Open with:
▶ Preview:

Sage Nicole Humphries

9:19 PM
TODAY

SAGE ❤️
Hi
I don't know if you will be able to respond before
I can't talk anymore
But know I love you so much Taylor
I hope you got my song today
I wrote it because you called me angel
And it's stayed in my mind
Stay beautiful darling. miss your voice, face,
everything
You constantly inspire my every day life
And missing you is torture











